# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| RUBY FREEMAN, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 21-3354 (BAH) |
| RUDOLPH W. GIULIANI., | Judge Beryl A. Howell |
| Defendant. | |

**MEMORANDUM OPINION**

The Federal Rules of Civil Procedure authorize "[l]iberal discovery" for the "sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes," *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984), with "the only express limitations [ ] that the information sought is not privileged, and is relevant to the subject matter of the pending action[,]" but without "differentiat[ing] between information that is private or intimate and that to which no privacy interests attach," *id*. at 30. As such, "the Rules often allow extensive intrusion into the affairs of both litigants and third parties." *Id*. Crucial to fulfilling this central purpose of civil discovery is that parties "comply fully and timely with their discovery obligations . . . to supply relevant testimony and documents for a fair appraisal of the facts and a 'just' determination." *Freeman v. Giuliani*, No. CV 21-3354 (BAH), 2023 WL 4750552, at *1 (D.D.C. July 13, 2023) (quoting FED. R. CIV. P. 1). Obviously, only extant documents and data are producible, so parties must also take reasonable efforts to preserve potentially relevant evidence, including electronically stored information ("ESI"), when litigation is "reasonably foreseeable." *Gerlich v. U.S. Dep't of Just.*, 711 F.3d 161, 170–71 (D.C. Cir. 2013). To incentivize and enforce compliance with these

1

procedural rules, sanctions may be imposed when ESI should have been preserved "in the anticipation or conduct of litigation" but "is lost because a party failed to take reasonable steps to preserve it[.]"  FED. R. CIV. P. 37(e).

Defendant Rudolph W. Giuliani is taken at his word that he understands these obligations. He assured this Court directly that he "understand[s] the obligations" because he has "been doing this for 50 years[.]"  Transcript of May 19, 2023 Mot. Hearing ("May 19 Hrg. Tr.") at 67:21–68:6, ECF No. 75.  In this case, however, Giuliani has given only lip service to compliance with his discovery obligations and this Court's orders by failing to take reasonable steps to preserve or produce his ESI.  Instead, Giuliani has submitted declarations with concessions turned slippery on scrutiny and excuses designed to shroud the insufficiency of his discovery compliance.  The bottom line is that Giuliani has refused to comply with his discovery obligations and thwarted plaintiffs Ruby Freeman and Wandrea' ArShaye Moss's procedural rights to obtain any meaningful discovery in this case.

Rather than simply play by the rules designed to promote a discovery process necessary to reach a fair decision on the merits of plaintiffs' claims, Giuliani has bemoaned plaintiffs' efforts to secure his compliance as "punishment by process."  *Id.* at 75:12.  Donning a cloak of victimization may play well on a public stage to certain audiences, but in a court of law this performance has served only to subvert the normal process of discovery in a straight-forward defamation case, with the concomitant necessity of repeated court intervention.  Due to Giuliani's discovery conduct, plaintiffs have filed two motions to compel production from Giuliani and his eponymous businesses, Giuliani Communications LLC and Giuliani Partners LLC (collectively, the "Giuliani Businesses"), *see* Pls.' Mot. Compel ("Pls.' MTC"), ECF No. 44; Pls.' Revised Mot. Compel Giuliani Partners & Giuliani Communications ("Pls.' Giuliani Businesses Motion"), ECF

No. 70, resulting in two discovery hearings, Minute Entries (Mar. 21, 2023; May 19, 2023), the issuance of multiple orders seeking his discovery compliance or otherwise sanctioning him for noncompliance, *see, e.g.,* Minute Orders (Mar. 21, 2023; May 19, 2023; May 31, 2023; June 22, 2023; June 23, 2023; July 13, 2023; July 26, 2023). Along the way, Giuliani has been afforded several extensions of time to comply with court orders and his discovery obligations. *See, e.g.,* Minute Order (Aug. 31, 2022) (extending close of fact discovery from November 22, 2022 to May 22, 2023); Minute Order (June 16, 2023) (extending compliance with May 31, 2023 Minute Order Order compelling discovery by two weeks); Minute Order (July 13, 2023) (providing Giuliani with an additional 35 days to comply with the May 31, 2023 Minute Order). As the discussion below reveals, however, the result of these efforts to obtain discovery from Giuliani, aside from his initial production of 193 documents, is largely a single page of communications, blobs of indecipherable data, a sliver of the financial documents required to be produced, and a declaration and two stipulations from Giuliani, who indicates in the latter stipulations his preference to concede plaintiffs' claims rather than produce discovery in this case.[1]

Giuliani's preference may be due to the fact, about which he has made no secret, that he faces liability, both civil and criminal, in other investigations and civil lawsuits. *See* Mar. 21, 2023

---

[1]    In addition to Giuliani's recalcitrant discovery conduct, plaintiffs have also faced challenges in obtaining relevant information from his associates, who were part of the effort by Giuliani, and others, to sow doubt in the fairness and legitimacy of the 2020 presidential election, further necessitating judicial intervention. *See, e.g.,* Minute Order (Dec. 20, 2022) (authorizing plaintiffs to serve Katherine Friess with a subpoena, issued pursuant to Federal Rule of Civil Procedure 45 ("Rule 45 Subpoena"), via alternate means, after plaintiffs spent considerable resources to serve Freiss "ten times over four months at six different addresses in three different states"); Minute Order (May 10, 2023) (authorizing plaintiffs to serve Jenna Ellis with Rule 45 Subpoena, via alternate means, after plaintiffs spent considerable resources to "serve her three times at an address where she is believed to have recently resided and where her mother currently resides"); *Freeman,* 2023 WL 4750552 at *2 (detailing Bernard Kerik's failure to comply with a Rule 45 Subpoena and granting, in part, plaintiffs' motion to compel compliance). As to Kerik, plaintiffs recently advised that they contest Kerik's withholding of responsive records as privileged, and request *in camera* review, of 318 withheld documents, Pls.' Status Report Re Bernard Kerik Discovery at 2–3, ECF No. 87, but given resolution of the instant motion by entry of default judgment on liability against Giuliani, plaintiffs' request for *in camera* review is denied as moot since plaintiffs have provided no information to suggest that such documents would be relevant to the quantification of damages. As a result, plaintiffs have been denied access to discovery from Giuliani and his associates both to support their claims and to defeat any defenses proffered at a trial on the merits.

Transcript of Discovery Hearing ("Mar. 21 Hrg. Tr.") at 22:6–12, ECF No. 41 (Giuliani stating that he has "seven or eight cases that had pending requests for discovery" including "not just civil but criminal investigations"); *see also infra* n.8 (describing submission in this case of declaration by Giuliani's defense attorney's in prior criminal investigation). Perhaps, he has made the calculation that his overall litigation risks are minimized by not complying with his discovery obligations in this case. Whatever the reason, obligations are case specific and withholding required discovery in this case has consequences.

Giuliani's willful discovery misconduct has now led, inexorably, to plaintiffs' pending motion for sanctions due to his "Failure To Preserve Electronic Evidence," seeking, *inter alia*, the entry of default judgment against Giuliani. *See* Pls.' Mot. for Discovery Sanctions Against Def. Giuliani ("Pls.' Mot."), ECF No. 81. Giuliani has also not complied with two other court orders requiring him both to produce certain requested, routine financial documents relevant to plaintiffs' claims for punitive damages, and to reimburse plaintiffs for attorneys' fees and costs associated with their first motion to compel, failures for which plaintiffs request additional sanctions. Updated Joint Status Report ("Aug. 4 JSR") at 5–6, 18, ECF No. 89. Additionally, plaintiffs' have sought sanctions due to noncompliance by Giuliani's eponymous businesses with document and deposition requests, after their motion to compel compliance was granted as conceded. *See infra* Part 1.C (outlining procedural history and status of plaintiffs' Giuliani Businesses Motion).

Facing court orders compelling his discovery compliance and potential default judgment as a sanction for failing to preserve ESI, Giuliani filed two personally executed, but unsworn, "stipulations" admitting, for the purposes of this litigation, liability on the factual elements of plaintiffs' claims and their entitlement to punitive damages. *See* Def.'s Resp. Pls.' Mot. ("Def.'s Mot. Resp."), "Nolo Contendre [sic]" Stipulation ("Giuliani Stip."), ECF No. 84-2; "Superseding

Nolo Contendre [sic]" Stipulation ("Giuliani Superseding Stip."), ECF No. 90. Giuliani's stipulations hold more holes than Swiss cheese, with his latest stipulation expressly reserving "his arguments that the statements complained of are protected and non-actionable opinion for purposes of appeal[,]" Giuliani Superseding Stip. ¶¶ 5-6, which arguments were previously rejected in this Court's decision denying defendant's motion to dismiss, *see Freeman v. Giuliani*, No. CV 21-3354 (BAH), 2022 WL 16551323, at *8 (D.D.C. Oct. 31, 2022). The reservations in Giuliani's stipulations make clear his goal to bypass the discovery process and a merits trial—at which his defenses may be fully scrutinized and tested in our judicial system's time-honored adversarial process—and to delay such a fair reckoning by taking his chances on appeal, based on the abbreviated record he forced on plaintiffs. Yet, just as taking shortcuts to win an election carries risks—even potential criminal liability—bypassing the discovery process carries serious sanctions, no matter what reservations a noncompliant party may try artificially to preserve for appeal.

The downside risk of turning the discovery process into what this Court has previously described as a "murky mess," May 19 Hrg. Tr. at 105:22, is that Rule 37 provides a remedy: sanctions, including entry of default judgment, against Giuliani. *See* Fed. R. Civ. P. 37(e)(2)(C); 37(b)(2)(a)(vi). Given the willful shirking of his discovery obligations in anticipation of and during this litigation, Giuliani leaves little other choice. For the reasons set out below, the pending motion is granted. Default judgment will be entered against Giuliani as a discovery sanction pursuant to Rules 37(e)(2)(C) and 37(b)(2)(a)(vi), holding him civilly liable on plaintiffs' defamation, intentional infliction of emotional distress, civil conspiracy, and punitive damage claims, and Giuliani is directed to reimburse plaintiffs for attorneys' fees and costs associated with their instant motion.

In addition, as this case now heads to trial to determine any damages due on plaintiffs' claims, Giuliani will be given a final opportunity to comply with discovery relevant to the determination of damages, both compensatory and punitive, or face imposition of additional discovery-related sanctions, under Rule 37(b)(2), in the form of adverse instructions and exclusion of evidence at trial, as outlined in more detail below.   Specifically, Giuliani is directed, by September 20, 2023, to do the following:

a.   produce complete responses to plaintiffs' requests for financial documents, set out in plaintiffs' Requests for Production ("RFP") Numbers 40 and 41, which he was previously ordered to produce by June 30, 2023, *see* Minute Order (June 22, 2023);

b.   ensure the Giuliani Businesses produce complete responses to plaintiffs' requests for financial documents and viewership metrics, including RFP Numbers 19 and 35, seeking records sufficient to show how his podcast, called *Common Sense*, generates revenue, including through advertising agreements and distribution contracts, and records sufficient to summarize viewer and listener metrics for Giuliani's statements on social media and *Common Sens*e from the date of original publication through the present, including reach, count, page visits, posts, shares, time spent, impressions, and listener numbers, and the number of online views and/or impressions of any statements Giuliani made about plaintiffs, as described in the Amended Complaint ¶¶ 57-101, ECF No. 22, as well as designate one or more corporate representatives to sit for depositions on those businesses' behalf; and

c.   reimburse plaintiffs' attorneys' fees and costs associated with their successful first motion to compel discovery from Giuliani, in the amount totaling $89,172.50, with interest on that

amount from July 25, 2023, which is when this reimbursement payment was originally due, *see* Minute Order (July 13, 2023); and

d. ensure the Giuliani Businesses reimburse plaintiffs' attorneys fees associated with their successful motion to compel discovery from the Businesses, in the amount totaling $43,684, with interest on that amount to accrue from September 20, 2023 until the date of final judgment against Giuliani personally if his eponymous businesses fail to comply.

## I.    BACKGROUND

The factual background of this case has been detailed previously in this Court's decision denying Giuliani's motion to dismiss plaintiffs' Complaint. *See Freeman*, 2022 WL 16551323. Summarized below is the factual and procedural history leading to plaintiffs' pending motion for sanctions, including entry of default judgment on their claims, which relief plaintiffs seek after two discovery hearings, two motions to compel production filed by plaintiffs, and multiple court orders requiring Giuliani to explain his discovery conduct and comply with applicable procedural rules.  Giuliani has exploited these opportunities for delay, resulting in the extension of the fact discovery period by six months, unaccompanied by production of any meaningful discovery in response, all of which adds up to Giuliani's failure to comply with his basic preservation and production discovery obligations for both himself and his two businesses.

### A.  Discovery Issues Leading to March 21, 2023 Hearing and Order

Following Giuliani's answer to the Complaint, a Scheduling Order was entered adopting the parties' proposal that initial discovery disclosures, as required under Federal Rule of Civil Procedure 26(a)(1), be exchanged by May 18, 2022, and that all fact discovery close by November 22, 2022.  *See* Minute Order (April 26, 2022) (granting parties' "Joint Motion for Order Approving the Schedule Propose in the Concurrently Filed Joint Meet and Confer Report").  This seven-

month discovery period proved insufficient, prompting the parties' joint request for additional time to complete discovery until May 22, 2023, a full seventeen months after the filing of the lawsuit. *See* Minute Order (Aug. 31, 2022) (granting parties' "Joint Motion to Extend Discovery").

After plaintiffs propounded their first set of discovery requests, in May 2022, Giuliani, through his counsel, advised plaintiffs that the Federal Bureau of Investigation ("FBI") had seized his electronic devices in April 2021. Pls.' MTC, Decl. of Meryl C. Governski ("Governski Decl."), Ex. 2 at 2–3, Aug. 5, 2022 Email from Def.'s Counsel to Pls.' Counsel ("Def.'s Counsel's Aug. 5, 2022 Email"), ECF No. 44-4. Though his devices were returned no later than August 19, 2022, Giuliani claimed he "lost access to some of these accounts after the seizure[,]" and he and his counsel would "need to assess the status" of those accounts, *id.*, Ex. 3 at 4, Aug. 19, 2022 Email from Def.'s Counsel to Pls.' Counsel, ECF No. 44-5. Despite Giuliani's repeated reliance on the FBI's seizure of his electronic devices to excuse his discovery preservation and production failings, responsive information held in his email and other communications-related accounts could and should have been preserved since the contents of these accounts presumably remained accessible online and through alternative devices. As to Giuliani's preservation obligations, Giuliani's counsel pointed to a dataset held by TrustPoint One ("TrustPoint"), with assurances that this dataset contained "all the data" collected by the FBI from Giuliani's seized devices. *See id.*, Ex. 4 at 10, Sept. 30, 2022 Email from Def.'s Counsel to Pls.' Counsel, ECF No. 44-6. Between July 12 and November 1, 2022, Giuliani produced to plaintiffs a total of 193 "documents[,]" all of which were sourced to the TrustPoint dataset. Pls.' MTC at 7–8.

Given the meager number of documents produced over seven months of discovery, *see* Mar. 21 Hrg. Tr. at 8:18-21 (observation by Court that the number of documents produced were "fairly small" "based on the length of time, the amount of public statements that were made . . . in

connection with the claims in this case"), plaintiffs requested, on December 21, 2022, confirmation from Giuliani's counsel that Giuliani had taken reasonable steps to preserve his electronic evidence, Governski Decl., Ex. 5 at 2, Dec. 22, 2022 Email from Pls.' Counsel to Def.'s Counsel, ECF No. 44-7, but the response was not encouraging.  Giuliani's counsel replied, "I am not aware of his preservation efforts."  *Id.*, Dec. 27, 2022 Email from Def.'s Counsel to Pls.' Counsel. Plaintiffs reiterated, on February 6, 2023, the request that Giuliani's counsel confirm that Giuliani preserved, searched, and produced ESI on his "e-mail accounts, devices, social media accounts, messaging applications, or other electronic devices for documents responsive to" plaintiffs' Requests for Production ("RFPs"), but received no response.  *See generally* Pls.' Mot., Declaration of Michael J. Gottlieb ("Gottlieb Decl."), Ex. 1, Jan. 31 to Feb. 6, 2023 Email Chain between Pls.' Counsel and Def.'s Counsel, ECF No. 81-2.

Plaintiffs had the opportunity to query Giuliani directly about his preservation and search efforts at his deposition, on March 1, 2023.  Giuliani testified under oath that he used multiple phones, email addresses, and messaging applications in the months following the 2020 presidential election.  Gottlieb Decl., Ex. 4, Mar. 1, 2023 Dep. Tr. of Rudolph W. Giuliani ("Giuliani Dep. Tr.") at 17:4–19, 21:5–25, 22:24–25:6, ECF No. 81-5 (Giuliani testifying that he "[t]ypically . . . had two phones" and has "a bunch of inoperative phones[,]" though, "[r]ight now," he "really [has] officially one phone[,]" he had "a Gmail account and then . . . several offshoot accounts, like RudyGiuliani@me.com," and a "ProtonMail account[,]" and he sent messages on "Twitter . . . Signal, Telegram, [and] Whatsapp" "around the time of the 2020 election").  Giuliani described his search effort as taking "a quick look" for responsive material on messaging platforms and some of his devices, without providing any detail as to whether that "quick" search was tailored to the instant case or whether he ever reached out to any of the companies he used for messaging

applications to ask that his data be preserved. *Id.* at 25:19–26:8, 26:9–27:7, 28:9–16. Compounding this preservation failure, Giuliani claimed that his devices seized by the FBI in April 2021 were found to be "wiped out" when returned to him. *Id.* at 391:23–392:11.[2]

In accordance with the procedure set out by this Court's Standing Order, ¶ 8, ECF No. 4, to address discovery disputes promptly, plaintiffs alerted the Court about concerns over Giuliani's apparent failure to comply with his discovery obligations, and a hearing regarding the parties' dispute was set for March 21, 2023. *See* Minute Entry (Mar. 16, 2023). At that hearing, in response to the Court's question whether Giuliani had "locked down—put a litigation hold on—all of his records given the pendency of this litigation," Mar. 21, 2023 Hrg. Tr. at 10:22–11:2, Giuliani's counsel stated, "Well, Your Honor, I think the answer is yes. I don't know . . . [b]ut, certainly, the documents were taken by the [Department of Justice ("DOJ")] were locked—in April of 2021. So all of those documents are fixed, so that's certainly locked in." *Id.* at 11:3–8. Giuliani's counsel also indicated that the TrustPoint dataset contained complete images of all data on Giuliani's devices seized by the FBI in April 2021. *Id.* at 18:9–21 ("[A]ll of the files that were extracted were put onto one server, which we then got a copy of from the DOJ, and that's—with an electronic discovery vendor called Trustpoint.One, and so that's what we searched.").[3] This left unclear

---

[2]      On June 29, 2023, Giuliani's counsel provided plaintiffs with an unsealed motion filed by Giuliani's criminal counsel in *In re Search Warrant Dated April 21, 2021,* 21-MJ-4335 (S.D.N.Y.), which motion makes clear that the records collected in the TrustPoint database were collected as part of an investigation into a possible Foreign Agents Registration Act ("FARA") violation "involving Ukrainian individuals, Ambassador Maria Yovanovitch and the office of the U.S. Ambassador to the Ukraine; a trip by Giuliani to Poland in 2019 and issues involving Franklin Templeton and funds misappropriated from the Ukraine." Gottlieb Decl. ¶ 7 (citation omitted from original). This motion also contains Giuliani's "criminal defense counsel request[] that the New York court order the Government to suppress and destroy the majority of records contained in the TrustPoint database, and limit any remaining records to a time period between 2018 and 2019." *Id.*

[3]      At the March 21 Hearing, Giuliani and his counsel could not provide clear answers when pressed for details about the TrustPoint dataset, including when they got access to this dataset or the specific device number or sources for, or types of, ESI in the dataset. *See, e.g.,* Mar. 21 Hrg. Tr. at 18:5–19:5 (Giuliani's counsel stating that his "understanding" was that "all of the files that were extracted were put onto" TrustPoint, without knowing for certain what types of ESI were on the server and over what date range); *id.* at 21:23–22:5 (Giuliani stating that he was "not sure of" when he "first [got] access to the Trustpoint" dataset); *id.* at 20:8–15 (Giuliani stating that the FBI "seized

whether the TrustPoint dataset contained data from any of Giuliani's social media accounts or email or other messaging accounts.

Given the lack of clarity at the March 21 hearing in responses to queries about what precisely had been preserved, or not, and searched, or not, Giuliani was directed, *inter alia*, to: "(a) submit notice to the Court describing in specific terms the data on the 'TrustPoint' database that were searched in response to Plaintiffs' [RFPs], including date range and contents . . . ; and (b) what locations and data sources remain for searches to be completed to respond fully to plaintiffs RFPs." Minute Order (March 21, 2023) ("March 21 Order"). In response, Giuliani filed, through his counsel, a two-page "report" on March 24, 2023, which did not describe in specific terms the data sources located on TrustPoint or what locations and data sources remained to be searched. *See generally* Def.'s Report to the Court Re March 21, 2023 Minute Order, ECF No. 40 (stating that the TrustPoint server contained "all files . . . that existed as of the time they were taken in April 2021 all the way back (for some of the devices) to February 24, 1995," including "email files, pdfs, images, word files, as well as text and messenger files from messaging applications," without identifying which specific devices' (i.e. computers, tablets, and phones) and data sources (i.e., which messaging platforms (iMessage, Signal, Whatsapp) and email accounts) that the TrustPoint database's ESI encompassed, or whether TrustPoint held Giuliani's ESI for both his

---

every single electronic device, both in [his] home and in [his] law office" without explaining what data from each of those devices were stored on TrustPoint); *see also id.* at 19:6–15 (The Court instructing Giuliani's counsel "to get a much better definition of what documents were put on" TrustPoint because his answers to questions concerning TrustPoint were "all way too vague" and suggested Giuliani and his counsel do not "know what's been put up on that database"). Even almost three months after this hearing, Giuliani remained unclear as to what data was in the TrustPoint dataset, attesting in his declaration, filed on May 30, 2023, that "I am not sure whether data from my social media accounts of YouTube, Facebook, Instagram, and Twitter were extracted from these devices because I do not recall whether I used website access on my devices for these accounts or whether I accessed them from social media apps." Decl. of Rudolph Giuliani In Compliance with Court Minute Order, dated May 30, 2023 ¶ 5, ECF No. 60. He went on to note that "If the access was via the web, no data from social media would have been extracted from the devices," *id.*, meaning the contents of his social media accounts would not be stored in the TrustPoint dataset.

eponymous businesses and his personal files).  The March 21 Order also directed Giuliani to "complete searches and production of responsive records to plaintiffs' RFPs," and further directed the parties to file a joint status report "by April 10, 2023, . . . apprising the Court on their progress in resolving their discovery disputes, [and] clarifying whether plaintiffs intend to file any motion to compel[.]"

On April 10, 2023, the parties filed a joint status report, in which plaintiffs explained that "the Parties are at an impasse" with respect to "Giuliani's document productions to date" and requested leave to file a motion to compel.  Apr. 10, 2023 Joint Status Report at 1, ECF No. 42. Plaintiffs explained that, while Giuliani provided them with a "supplemental production . . . that consisted of a single page with images of what appear[ed] to be five direct messages from Sidney Powell on Twitter" and claimed privilege over "an additional eight documents," his production was still plainly insufficient since Giuliani was relying on "undefined manual search[es] . . . of an unknown set of social media accounts," an "undefined manual search . . . of an unknown set of 'new devices,'" productions "in response to discovery requests from a voting machine company in another [civil] case . . . [that had] almost no overlap with Plaintiffs' discovery requests," and "a subset of files in the TrustPoint database[.]"  *Id.* at 5–6 (emphasis omitted).  Plaintiffs also raised questions about the universe of files in the TrustPoint database, explaining that Giuliani had "never represented that all electronic devices he possessed at the time were seized by the DOJ in April 2021, or that all of the files from all of the devices seized are captured in the TrustPoint database as opposed to some subset of documents responsive to a warrant and not minimized."  *Id.* at 6–7 (emphasis omitted).  Plaintiffs were granted leave to file a motion to compel, Minute Order (Apr. 11, 2023), with a schedule set for the filing of the motion and briefing to be complete by May 8, 2023.

**B.  Plaintiffs' First Motion to Compel Leading to May 19, 2023 Hearing and Order**

Due to Giuliani's failure to articulate any specific steps he had taken to preserve his ESI—
other than relying on the FBI's seizure of his devices—and the vague descriptions of the TrustPoint
dataset and the searches conducted thus far, plaintiffs moved, on April 17, 2023, to compel Giuliani
to produce or justify "the withholding of all materials in his possession, custody, or control
responsive to Plaintiffs' requests for production," provide "a sworn declaration regarding the
preservation efforts he has taken, all locations and data that he used to communicate about relevant
topics, the specific 'data' that is housed in [TrustPoint], and the searches he has conducted to locate
responsive documents[,]" and reimburse plaintiffs attorneys' fees for the costs of their motion.
Pls.' MTC at 6.

In response, Giuliani submitted his personal declaration about his efforts to preserve and
search for records responsive to plaintiffs' RFPs.  *See* Def.'s Resp. to Pls.' MTC ("Def.'s MTC
Resp."), Decl. of Rudolph Giuliani Supp. Def.'s Resp. ("Giuliani Decl.") ECF No. 51-1.  Giuliani
reiterated that the "TrustPoint One documents consisted of all documents that were extracted from
[his] electronic devices taken by the DOJ in April 2021[,]" *id.* ¶ 4, still failing to describe whether
his electronic devices contained all responsive contents of his social media and messaging accounts
and thus whether those account contents were in the TrustPoint dataset.  He further stated that he
had used "Plaintiffs' search terms" to search "email files" in that dataset, *id.* ¶ 3.  Likewise, he
used "the search terms provided by the Plaintiffs to conduct" searches "manually" of "all of [his]
electronic devices obtained after the April 2021 DOJ seizure for text messages, emails, and other
documents" and "all of [his] social media messaging accounts[,]" and he separately also "pulled
. . . everything related to any 2020 Election issues" from his "paper files" and files provided by
Christina Bobb and Christiane Allen.  *Id.* ¶¶ 2-3.  Giuliani's description of his searches raised more

questions, prompting the need for another hearing to clarify, among other matters, how the so-called "manual[]" searches were conducted and confirmed as thorough and accurate, whether the TrustPoint dataset encompassed all of his pre-April 2021 ESI on his email, social media, and messaging applications not specifically stored on his seized devices, or whether that data was lost. Giuliani also, for the first time, claimed that any further searches of the TrustPoint dataset would not be possible because those "documents have now been archived[,]" and "[i]t would cost [him] over $320,000.00 to become current on [his] arrearage with TrustPoint One and to have access to the documents as well costs [sic] incurred in searching the documents again for additional files[,]" but he did "not have funds to pay [that] amount at this time." *Id.* ¶ 5. No information was provided explaining when or why this data became inaccessibly "archived," or whether the cost to obtain access to all the archived data could be less to examine only a subset of the data in a timeframe responsive to plaintiffs' discovery requests.

At a several-hour hearing, on May 19, 2023, regarding plaintiffs' motion to compel, Giuliani acknowledged his obligation to preserve documents related to this litigation and that this obligation arose before plaintiffs filed this action, stating, "I have been doing this for 50 years; I understand the obligations." May 19 Hrg. Tr. at 67:21–68:6. When asked for the steps taken to preserve electronic evidence, Giuliani's counsel stated that Giuliani "has not deleted any documents[,]" *id*. at 65:20–25, even though, as the Court explained, "not deleting documents is not the same as preserving the information in a manner that can be retrieved and searched." *Id*. at 66:1–20. Giuliani repeated his excuse for failure to preserve responsive data, blaming the government's seizure of his devices in April 2021, for his purported loss of access to data created before that date. *See id.* at 53:4–8, 67:11–18, 95:17–97:8.

Following the May 19 hearing, the Court granted plaintiffs' motion to compel, in part, and directed that, by May 30, 2023, Giuliani describe, subject to penalty of perjury, "a) All efforts taken to preserve, collect, and search potentially responsive data and locations that may contain responsive materials to all of plaintiffs' [RFPs]; b) A complete list of all 'locations and data' that [Giuliani] used to communicate about any materials responsive to any of plaintiffs' RFPs . . . ; [and] c) The specific 'data' located in the TrustPoint database . . . ." Minute Order (May 19, 2023) ("the May 19 Order"). Furthermore, "in order to evaluate [Giuliani's] claim of an inability to afford the cost of access to, and search of, the TrustPoint dataset or to use a professional vendor," Giuliani was also directed to produce to plaintiffs, by May 30, 2023, "a) full and complete responses to plaintiffs' requests for financial information in RFP Nos. 40 and 41; and b) documentation to support his estimated costs for further searches on the TrustPoint dataset." *Id.*[4]

Giuliani timely filed a declaration. Decl. of Rudolph Giuliani in Compliance with Court Minute Order, dated May 30, 2023 ("Second Giuliani Decl.") ¶ 3, ECF No. 60. This declaration summarized six different data sources as likely to contain or having contained at some point, responsive information, including: (1) three personal email accounts (Gmail, iCloud, and ProtonMail); (2) an iCloud account; (3) three phone numbers that he used to send messages via

---

[4]     Plaintiffs' RFP 40 asked for "Documents sufficient to show Your yearly income since 2018 and Your current net worth, including but not limited to Your tax returns for the years 2018 through 2021, all periodic statements from January 1, 2018 to the present date for all Your checking accounts, and all Your other accounts, including but not limited to savings accounts, money market funds, mutual fund accounts, hedge fund accounts and certificates of deposit, regardless of whether or not the account has been closed, including those held jointly with another person or entity, all insurance policies on Your life which are presently in force whether owned by you or any corporation in which You are an officer, director or stockholder or employee, copies of all applications for credit or loans from any bank, credit union, lending institution, issuer of credit cards and any related financial statements prepared by or on Your behalf since January 2018, copies of any corporate tax returns for all corporations in which You were or are a stockholder during any part of the years 2018 through present, copies of any partnership tax returns filed by You or on Your behalf since December 2018, and financial statements." Governski Decl., Ex. 1, Chart Summarizing Pls.' Requests for Production ("Pls.' RFP Chart") at 7, ECF No. 44-3. Plaintiffs' RFP 41 asked for "All filings in Judith S. Giuliani v. Rudolph Giuliani, Docket No. 350019/2018 (N.Y. Sup Ct. Aug 31, 2018) and all filings related to the enforcement of the terms of the settlement agreement reached in Judith S. Giuliani v. Rudolph Giuliani, Docket No. 350019/2018 (N.Y. Sup Ct. Aug 31, 2018), including, but not limited to, Judith S. Giuliani's lawsuit filed in the Supreme Court of the State of New York in or around August 2022." *Id.*

text and messaging applications; (4) three messaging applications (Signal, WhatsApp, Telegram); (5) five social media handles ("Giuliani Social Media Accounts"; collectively, data sources (1) through (5),  "Giuliani Communications Accounts"); (6) and nine devices, two of which were not seized by the FBI (collectively, "Giuliani Devices"; "Seized Devices" as to the seven seized; "Unseized Devices" as to the two unseized).  *Id.* ¶ 3.  He also confirmed that his only step to preserve evidence on his Devices and Communications Accounts was to turn off the auto-delete function sometime "in late 2020 or early 2021" on his "email, messaging, communication, or other document storage platforms" and that he did not manually delete "any electronic documents or dispose[] of any paper files[.]"  *Id*. ¶ 2.  Finally, while reiterating that the TrustPoint dataset contained "all documents that were extracted from the electronic devices taken by the DOJ in April 2021," *id*. ¶ 4, Giuliani was notably silent as to whether that dataset contained all data from the Giuliani Communications Accounts and Seized Devices, only some subset of the contents of those sources, or no data from any of those accounts and applications, and what steps he took to preserve ESI on the Unseized Devices, no data from which would be in the TrustPoint dataset because those devices were not seized by the FBI.

Giuliani was also required to produce, by May 30, 2023, financial information responsive to plaintiffs' RFPs 40 and 41, but he sought reconsideration of this aspect of the May 19 Order, explaining that "he has obtained funding to pay the arrearage with TrustPoint to allow for full and complete searches responsive to Plaintiffs' RFPs."  Def.'s Mot. Reconsider. Court's May 19 Minute Order ("Def.'s Mot.") at 1, ECF No. 61.  While Giuliani's obligation to respond to plaintiffs' RFPs 40 and 41, was stayed, pending completion of briefing on his motion for reconsideration and in light of his "representation that he has obtained adequate funds to 'cure[] the arrearage with TrustPoint and the data is in the process of being unarchived,'" the Court

directed him, by June 16, 2023, to "search and produce all materials responsive to plaintiffs' RFPs, with the exception of RFPs Nos. 40 and 41, within the date ranges agreed to by the parties, with the assistance of a professional vendor, and produce a privilege log specifically tailored to the searches he has performed for materials responsive to plaintiffs' RFPs."  Minute Order (May 31, 2023) ("May 31 Order"); *see also* Minute Order (June 16, 2023) (granting Giuliani's unopposed motion for extension of time to produce all materials responsive to plaintiffs' RFPs, other than RFPs 40 and 41, by June 30, 2023).[5]

Plaintiffs filed their combined opposition to Giuliani's Motion for Reconsideration and response to Giuliani's Second Declaration on June 14, 2023.  *See* Pls.' Combined Opp'n Def.'s Mot. & Resp. Def.'s Decl. ("Pls.' Opp'n"), ECF No. 64.  In opposition to Giuliani's Motion, plaintiffs argued, *inter alia*, that Giuliani's financial materials were relevant to both liability and punitive damages to show "whether he earned any additional income or increased viewership or followers" by making false statements against plaintiffs, which "is directly relevant to fault."  *Id.* at 9–11.  With respect to the Second Giuliani Declaration, plaintiffs raised serious questions about Giuliani's preservation efforts, explaining that the Declaration failed "sufficiently [to] describe his efforts to *preserve* potentially responsive data and sources, and instead relies on whatever the

---

[5]       The May 31 Order's directive to Giuliani to produce all materials responsive to plaintiffs' RFPs encompassed Giuliani's obligation to search for and produce responsive materials from the Giuliani Businesses.  *See* Minute Order (June 22, 2023) (directing Giuliani to file a declaration, subject to penalty of perjury, that, *inter alia*, "[c]onfirms that" Giuliani "is collecting searching, and producing responsive materials from the Giuliani Businesses").  Giuliani filed a declaration, on June 26, 2023, confirming that he was "collecting, searching, and producing responsive materials from [the Giuliani Businesses] that are in [his] possession, custody, or control."  Decl. of Rudolph Giuliani, dated June 26, 2023 ("Third Giuliani Decl.") ¶ 12, ECF No. 73.  Giuliani also confirmed that he was the sole owner of his eponymous businesses.  *Id.* ¶¶ 2-3 (attesting that he is the owner of Giuliani Partners LLC, which, in turn, is the owner of Giuliani Communications LLC); *see also id.* ¶¶ 10-11 (further attesting that Giuliani Partners LLC "has No assets," while Giuliani Communications LLC "has media equipment in assets").  The May 31 Order also directed that, by June 30, 2023, the parties "jointly submit a status report on discovery compliance and any outstanding issues" with respect to discovery compliance, inclusive of Giuliani's compliance with producing responsive records from the Giuliani Businesses.  Plaintiffs also separately filed a motion to compel discovery from the Giuliani Businesses, which motion was granted as conceded by Giuliani, with relief reserved pending the resolution of the instant motion for sanctions. *See infra* Section I.C.

government did with the devices seized in April 2021, which Defendant Giuliani does not know and cannot describe." *Id.* at 12 (emphasis in original). Plaintiffs also argued that Giuliani did not provide "sufficient information for this Court (or Plaintiffs) to know what is and is not in the TrustPoint database" and that "any explanation about any efforts taken to preserve any of Defendant Giuliani's professional files" and any ESI on his "Unseized Devices." *Id.* at 15–19. Due to these continuing discovery compliance gaps, plaintiffs sought leave to file a motion for sanctions for Giuliani's failure to preserve ESI, *id.* at 18, which request was granted, *see* Minute Order (June 23, 2023) (granting plaintiffs' request for leave to file instant motion and setting briefing schedule).

In addition to the May 19 Order, three successive orders (collectively, including the March 21 and May 19 Orders, the "Discovery Orders"), granted plaintiffs' requested relief in nearly all respects. First, upon consideration of the completed briefing on Giuliani's motion for reconsideration of the May 19 Order, reconsideration was denied, Minute Order (June 22, 2023) ("June 22 Order"), and Giuliani was directed "to produce responses to plaintiffs' [RFP] Nos. 40 and 41 by June 30, 2023." *Id.* Second, plaintiffs' request for attorneys' fees and costs associated with the filing of their motion to compel was granted, and Giuliani was directed to pay those costs and fees by July 25, 2023, subject to a filing by plaintiffs detailing the costs and fees incurred. Minute Order (June 23, 2023) ("June 23 Order"). Plaintiffs timely detailed their costs and fees, explaining that the total costs incurred in preparation for their motion to compel amounted to $89,172.50. Pls.' Submission Detailing Costs & Fees Incurred at 11, ECF No. 78. Giuliani neither contested the reasonableness of plaintiffs' costs and fees, nor filed any objection and, accordingly, he was directed to reimburse plaintiffs $89,172.50 in attorneys' fees incurred for plaintiffs' MTC by July 25, 2023. *See* Minute Order (July 13, 2023) ("July 13 Order"). As of the parties' most

recent joint status report, Giuliani has not reimbursed plaintiffs the court-ordered $89,172.50 in attorneys' fees and costs, let alone by the due date in July, 2023.  Aug. 4 JSR at 17.

As required by the May 31 Order, the parties submitted a joint status report on June 30, 2023, which report indicated that, despite repeated court interventions, Giuliani was not taking the Discovery Orders seriously.  Specifically, the status report stated that Giuliani had "taken no steps to collect and search repositories outside of TrustPoint[,]" had produced no materials from the Giuliani Businesses—notwithstanding his statement, subject to penalty of perjury, in his Third Declaration that he was searching for and collecting responsive materials from his eponymous businesses, *see supra* n.5—and only produced documents from TrustPoint that "appear to consist almost exclusively of non-usable, non-readable raw data[.]"  Joint Status Rep. at 9, 13 ("June 30 JSR"), ECF No. 77.  Notably, Giuliani did not contest these discovery shortcomings and failures to comply with the Discovery Orders as described in the June 30 JSR.  *See id.* at 17 ("Defendant generally agrees with Plaintiffs' recitation of events[.]").  In view of these generally undisputed, continuing discovery failures, Giuliani was given another opportunity to comply with his discovery obligations and cautioned that a failure to comply with the May 31 Order "may result in severe discovery sanctions."  July 13 Order (directing the parties to "submit an updated status report on discovery compliance and any outstanding issues" by August 4, 2023 and cautioning that default judgment and contempt of court could be issued as potential sanctions under Rule 37(b)(2)(A)).

This caution was not heeded.  Plaintiffs reported, in the next Joint Status Report, that Giuliani failed to produce "full and complete responses to plaintiffs' requests for financial information in RFP Nos. 40 and 41[,]" even though the June 22 Order directed him to produce all responsive documents to those requests by June 30, 2023.  Aug. 4 JSR at 4–5.[6]  According to

---

[6]      According to plaintiffs, Giuliani produced only the following two financial records to plaintiffs: "(1) his 2018 tax returns (federal and New York), and (2) the stipulation of settlement in *Giuliani v. Giuliani*, 350019/2018 (N.Y.

plaintiffs, and undisputed by Giuliani, *see id.* at 10 (Giuliani merely stating that "this point is moot" because he "conceded all aspects of liability on which discovery from him would be necessary"), Giuliani's completed TrustPoint production of 7,949 records consists "almost entirely [of] non-usable, nonresponsive materials," consisting of "approximately 4,142—or more than half—as indecipherable blobs," *id.* at 13.  Out of the remaining 3,807 documents, plaintiffs identified only "188 documents that might be relevant to [their] claims" but "63 of those documents consist[ed] of texts with what appear to be wiped bodies," leaving just 124 potentially relevant documents. *Id.* at 13–14.  Yet, plaintiffs' counsel identified only "50 or fewer documents" out of those 124 records that were "directly relevant to Plaintiffs' claims," and the majority of those were "unremarkable documents," such as meeting emails querying the location of zoom links or copies of publicly available documents.  *Id.* at 14.  Giuliani's compliance with the May 31 Order also remained deficient: apart from his 2018 tax returns and the stipulation of settlement from his divorce proceeding in 2019, *see supra* n.6, and the additional documents from 7,949 records from TrustPoint noted above, Giuliani failed to produce *any* additional records responsive to plaintiffs' RFPs since the May 31 Order was entered, including any documents from his electronic devices and sources of discoverable information after April 2021, nor any responsive records from the Giuliani Businesses.  *Id.* at 7.  Plaintiffs urged that "[t]he Court should sanction . . . [d]efendant Giuliani (including by finding him in contempt of Court) for failure to comply[.]" *Id.* at 5–6; *accord id.* at 8–9, 18, 20.

### C.  Plaintiffs' Motion to Compel Discovery from the Giuliani Businesses

Though Giuliani attested that he was separately producing his eponymous businesses' records responsive to plaintiffs' RFPs, *see supra* n.5, plaintiffs concomitantly sought discovery

---

Sup. Ct. Dec. 10, 2019)."  Aug. 4 JSR at 5.  Giuliani's meager production is plainly deficient given the scope of financial documents responsive to RFP Nos. 40 and 41.  *See supra* n.4.

directly from the Giuliani Businesses, but without any response, *see* July 13 Order (making this observation). Consequently, on June 22, 2023, plaintiffs moved to compel the Giuliani Businesses to respond to plaintiffs' properly noticed and served subpoenas for records and testimony, pursuant to Federal Rules of Civil Procedure 45(c)(2)(A) and 30(b)(6). *See* Pls.' Giuliani Businesses Mot. at 1–2. Giuliani and his businesses failed to respond to plaintiffs' Giuliani Businesses Motion. Giuliani, on his businesses' behalf, was given another opportunity to submit a response and directed to show cause why plaintiffs' motion to compel discovery responses from the Giuliani Businesses should not be granted as conceded. *See* July 13 Order. In response, Giuliani stated that he "does not oppose the court's show cause order as to why" plaintiffs' Giuliani Businesses Motion "should not be granted." *See* Def.'s Resp. to July 13, 2023 Show Cause Order at 1, ECF No. 85. Accordingly, plaintiffs' Giuliani Businesses Motion was granted as conceded. *See* Minute Order (July 26, 2023) ("July 26 Order"). Given that he was the sole owner of the Businesses, Third Giuliani Decl. ¶¶ 2-3, and had otherwise failed to secure the Businesses' compliance with plaintiffs' Rule 45 and Rule 30(b)(6) subpoenas or respond to plaintiffs' Businesses Motion, Giuliani was directed personally to pay plaintiffs' their reasonable costs and attorneys' fees incurred in preparing and filing the motion, with the remainder of plaintiffs' requested relief reserved pending resolution of plaintiffs' instant motion for sanctions. July 26 Order.

Even with the requested entry of default against Giuliani, plaintiffs still seek discovery from the Giuliani Businesses "showing metrics and income generated from [Giuliani's show,] *Common Sense*, particularly those episodes that contain" false statements made by Giuliani against plaintiffs, "because such evidence 'is probative of . . . the quantification of damages[,]'" as well as Rule 30(b)(6) depositions from the Businesses, for which "to date Defendant Giuliani has failed to identify a corporate representative." Aug. 4 JSR at 20 (second alteration in original) (quoting

Pls.' Businesses Mot. at 9); *see also* Pls.' Businesses Mot. at 1–2 (noting that plaintiffs served the Giuliani Businesses via their registered agents with Rule 45 subpoenas to produce documents relevant to the litigation and meet and confer to designate corporate representatives for each Business's respective Rule 30(b)(6) deposition, but received no reply).[7]

Plaintiffs timely filed their response to the July 26 Order on August 4, 2023, calculating their total attorneys' fees incurred for the Giuliani Businesses Motion to be $43,684. Pls.' Submission Detailing Costs & Fees Incurred Preparing & Filing Giuliani Businesses Mot. at 9 ("Pls.' Submission"), ECF No. 88. Giuliani raised no objection to the reasonableness or amount of attorneys' fees plaintiffs' requested, but rather contended that he may not be held personally liable for the $43,684 in attorneys' fees "without a proper finding that there is an 'alter ego' and veil piercing can be appropriate" between him and his eponymous businesses, citing the fact that plaintiffs' motion to compel was made against, and only granted as to, his businesses and not Giuliani himself. Def.'s Obj. & Resp. Minute Order Re Attys' Fees ("Def.'s Obj.") at 2, ECF No. 91. Plaintiffs, in response, largely sidestepped the issue of alter-ego liability, instead asking that the July 26 Order be modified "to direct the Giuliani Businesses to comply with the July 26 Order and pay the Fees, which Defendant Giuliani [should be held] personally responsible for ensuring occurs" because Giuliani "failed to cause the Giuliani Businesses to comply with Plaintiffs'

---

[7]     With respect to the document requests from the Giuliani Businesses, plaintiffs request the following information from the Businesses relating to the quantification of damages: (a) "[m]aterials sufficient to show the viewership metrics for and revenue generated from podcast episodes and related social media posts, that included," false statements made by Giuliani concerning plaintiffs and (b) "[i]nformation on how the '*Common Sense*' podcast generates revenue, including through advertising agreements and distribution contracts." Pls.' Giuliani Businesses Mot. at 9. More details about the nature of the financial records and viewership metrics requested from the Giuliani Businesses are provided in plaintiffs' RFP Nos. 19 and 35. *See* Pls.' RFP Chart at 3 ("RFP No. 19: Documents sufficient to summarize viewer and listener metrics for All Your Statements on Social Media and your Podcast, Rudy Giuliani's Common Sense, from the date of original publication through today, including reach, count, page visits, posts, shares, time spent, impressions, and listener numbers."); *id.* at 5 ("RFP No. 35: Documents sufficient to show the number of online views and/or impressions of any of the Actionable Statements about Plaintiffs You made, as described in Amended Complaint at ¶¶ 57-101."). Giuliani has, to date, provided no records in response to these RFPs. *See* Pls.' Giuliani Businesses Mot. at 4 ("Additionally, [Giuliani] has not produced and claims to lack access to documents sufficient to show the viewer and listener metrics for *Common Sense*." (citing RFP Nos. 19, 35)).

subpoenas" as their "sole owner[.]"  Pls.' Resp. Def. Giuliani's Obj. & Resp. Minute Order

Regarding Attorneys' Fees ("Pls.' Resp.") at 2–4 & n.3, ECF No. 92.

### D.  Plaintiffs' Pending Motion for Sanctions and Giuliani's Stipulations

In view of Giuliani's deficient discovery compliance, and after Giuliani informed plaintiffs,

on July 10, 2023, through counsel, that he "did not agree with the key principles" of a potential

settlement agreement negotiated by his attorney, Pls.' Mot. at 14, plaintiffs filed the pending

motion "to sanction Defendant Rudolph W. Giuliani . . . for failure to preserve electronic

evidence[,]" seeking "severe sanctions[,]" including, *inter alia*, default judgment.  *Id.* at 1, 3, 31.

In response, Giuliani submitted a personally executed and unsworn stipulation that purports to

concede all factual elements of plaintiffs' claims "for the purposes of this litigation."  *See generally*

Giuliani Stip.[8]  At the same time, this stipulation contains the following caveats and limitations

undercutting the factual concessions, including that the stipulation (1) "does not affect . . . his

argument that his statements are constitutionally protected statements or opinions or [that

plaintiffs' claims are barred by] any applicable statute of limitations," Giuliani Stip. ¶¶ 3, 4; and

(2) is "subject to any retained affirmative defenses not expressly waived herein," *id.* ¶ 4.

---

[8]      Giuliani's response also included a declaration from Robert J. Costello, Giuliani's counsel in connection with
the FBI's seizure of his electronic devices, *see id.*, Decl. of Robert J. Costello ("Costello Decl."), ECF No. 84-1, which
along with casting aspersions at plaintiffs' counsel, attempts to rebut the contention that Giuliani intentionally
spoliated or destroyed evidence.  *Id.* ¶¶ 18, 22.  Illuminating in this declaration is the description of the review process
applied to the data extracted from Giuliani's seized devices: that extracted data was stored on the government's
electronic discovery vendor, called "PAE," *id.* ¶¶ 6-7, and then funneled for privilege review through a special master,
who would "contact [Costello] and inform [him] that she would provide and make preliminary claims of privilege for
any electronic document provided[,]" and those documents identified by the special master "would be provided
directly . . . to [Costello's] designated electronic discovery vendor, Trustpoint," *id.* ¶¶ 11-14.  This process, as
described in the Costello Declaration, suggests, for the first time that TrustPoint held merely a subset, rather than all,
of the records on Giuliani's seized electronic devices, which is inconsistent with Giuliani and his counsel's repeated
representations in this case that the TrustPoint dataset contains *all* data on his seized devices.  In any event, the Costello
Declaration indicates that of "more than the 95 percent of the electronic materials" reviewed on TrustPoint, Costello
cannot "recall any mention of either Plaintiff [sic] in all of the materials that [he] reviewed[,]" *id.* ¶ 16, though whatever
reassurance that is supposed to provide is severely undercut by the fact that the responsive information to the warrant
was limited in time to August 1, 2018 to December 31, 2019, many months prior to the events relevant to plaintiffs'
claims, *id.* ¶ 6.  When the devices were finally returned to Giuliani, the Costello Declaration repeats Giuliani's
assertion that all the devices "had been wiped clean by the vendor for the Government," *id.* ¶ 19, but without any
verification of this fact by any expert forensic examiner or even a professional information technology professional.

"Given the seemingly incongruous and certainly puzzling caveats contained in the Giuliani Stipulation," this Court directed Giuliani to provide a superseding stipulation, in which "he concedes, for purposes of this litigation, all factual allegations in plaintiffs' Amended Complaint as to his liability for plaintiffs'" claims and liability for punitive damages, and "concedes that entry of default judgment on liability is appropriate in this case[,]" or provides "an explanation for declining to submit the superseding stipulation[.]"  Minute Order (Aug. 4, 2023).  The Superseding Giuliani Stipulation remains nearly as puzzling as his first, however.  Again, Giuliani concedes "for purposes of this litigation only, all factual allegations in Plaintiffs' Amended Complaint as to his liability—but not for damages allegedly caused by him—for Plaintiffs' defamation, intentional infliction of emotional distress, and civil conspiracy claims, and his liability as to Plaintiffs' claim for punitive damages."  Superseding Giuliani Stip. ¶ 5.  Yet, Giuliani again asserts that he "believes he has legal defenses to this Complaint that he seeks to preserve[,]" including "his arguments that the statements complained of are protected and non-actionable opinion for purposes of the appeal." *Id.* at 1 & ¶¶ 5-6.

With the filing of plaintiffs' reply in support of their sanctions motion, *see* Pls.' Reply Supp. Mot. ("Pls.' Reply"), ECF No. 86, and in support of reimbursement of attorneys' fees and costs associated with the filing of plaintiffs' Giuliani Businesses Motion, *see* Pls.' Resp., these motions are now ripe for resolution.

## II.    APPLICABLE PROCEDURAL RULES

The Federal civil procedural rules authorize the imposition of sanctions for the failure by a party to a civil lawsuit to preserve ESI and to comply with a court's discovery orders.  *See* FED. R. CIV. P. 37(b) and (e). Both types of failure are implicated here.

24

A party to federal litigation that is either anticipated or pending is required to preserve potentially relevant evidence. When "[ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," a court may "order measures no greater than necessary to cure the prejudice." FED. R. CIV. P. 37(e)(1). "This misconduct, also known as spoliation, is 'the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Bethel v. Rodriguez*, No. CV 20-1940 (RC), 2022 WL 2157065, at *2 (D.D.C. Jun. 15, 2022) (quoting *Nunnally v. Dist. of Columbia*, 243 F. Supp. 3d 55, 73 (D.D.C. 2017)). Upon a finding "that the party acted with the intent to deprive another party of the information's use in the litigation," a court is empowered to impose serious sanctions, including "presum[ing] that the lost information was unfavorable to the party; . . . instruct[ing] the jury that it may or must presume the information was unfavorable to the party; or . . . dismiss[ing] the action or enter[ing] a default judgment." FED. R. CIV. P. 37(e)(2).

Similarly serious sanctions and "just orders" are authorized "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a). . . ." FED. R. CIV. P. 37(b)(2)(A). The sanctions expressly authorized for such a violation including: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims[;] . . . (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey." *See* FED R. CIV. P. 37(b)(2)(A)(i)–(vii). Additionally, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was

substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

## III.   DISCUSSION

Plaintiffs contend that the sanction of entry of default is warranted for Giuliani's failures (1) to preserve ESI; (2) to respond fully to plaintiffs' RFPs; and (3) to pay plaintiffs' attorneys' fees and costs for their first motion to compel, as required by the Discovery Orders.  In considering whether this severe sanction of default is appropriate, under Rule 37, Giuliani's willingness to fulfill his discovery obligations is key.  Both Giuliani stipulations make crystal clear his choice not to provide further discovery.  Where the discovery deficiencies are, as here, significant, with no sign of improvement in the production of responsive information, which may be forever lost due to a failure to preserve ESI, the obvious unfairness to the plaintiffs in frustrating their ability to obtain relevant evidence both to support their claims and rebut any defenses proffered by Giuliani makes entry of default judgment necessary.

Additionally, plaintiffs' requested discovery relief from the Giuliani Businesses will be granted, and, as plaintiffs request—despite Giuliani's attestation that Giuliani Partners LLC has "No assets" and Giuliani Communications LLC has only media equipment assets, Third Giuliani Decl. ¶¶ 10-11—the Businesses themselves will be ordered to reimburse plaintiffs' attorneys' fees incurred in connection with the Businesses Motion, with Giuliani directed to ensure their compliance.

### A.   Rule 37(e) Sanctions

Spoliation sanctions under Rule 37(e) are warranted when "(1) [ESI] should have been preserved in the anticipation or conduct of litigation; (2) a party failed to take reasonable steps to preserve the ESI; (3) ESI was lost as a result; and (4) the ESI could not be restored or replaced by

additional discovery." *Doe v. Dist. of Columbia*, No. 1:19-CV-01173 (CJN), 2023 WL 3558038, at *12 (D.D.C. Feb. 14, 2023) (cleaned up); *accord Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, No. 21-13850, 2023 WL 4917108, at *12 (11th Cir. Aug. 2, 2023) (explaining that the preconditions for imposing Rule 32(e) sanctions are as follows: "(1) 'electronically stored information that should have been preserved in the anticipation or conduct of litigation' was 'lost because a party failed to take reasonable steps to preserve it' and (2) that information 'cannot be restored or replaced through additional discovery'") (quoting Fed. R. Civ. P. 37(e)); *Bethel*, 2022 WL 2157065, at *3; *Ball v. George Washington Univ.*, No. 17-cv-0507 (DLF), 2018 WL 4637008, at *1 (D.D.C. Sept. 27, 2018); *see also Borum v. Brentwood Vill.*, LLC, 332 F.R.D. 38, 43 (D.D.C. 2019) (noting that the party alleging spoliation bears the burden of proof).  As discussed below, plaintiffs have demonstrated that the four prerequisites for imposing Rule 37(e) sanctions are satisfied.

### 1. Giuliani Should Have Preserved Electronic Evidence in Anticipation of this Litigation by "Early 2021"

First, as plaintiffs correctly argue, Pls.' MTC at 17, Giuliani should have preserved his ESI well before the filing of this lawsuit.  "Once a party anticipates litigation, it must preserve potentially relevant evidence that might be useful to an adversary." *Borum*, LLC, 332 F.R.D. at 45; *accord Nunnally*, 243 F. Supp. 3d at 73; *Montgomery v. Risen*, 197 F. Supp. 3d 219, 245 (D.D.C. 2016); *Zhi Chen v. Dist. of Columbia*, 839 F. Supp. 2d 7, 12 (D.D.C. 2011).  Giuliani admits, in his Second Declaration, that he received "notice of potential litigation issues surrounding [his] involvement in contesting the 2020 Election in late 2020 or early 2021."  Second Giuliani Decl. ¶ 2.  His duty to preserve ESI relevant to plaintiffs' claims thus began at least by early 2021, well before plaintiffs filed suit in December 2021 and likely before the FBI seized his electronic devices in April 2021.  *See also* May 19 Hrg. Tr. at 67:23–68:1 ("I have about 20

preservation orders, much of which overlaps with theirs . . . So I started, you know, preserving from way before their case.").  Thus, Giuliani had a duty to preserve potentially relevant ESI on the Giuliani Devices and Giuliani Communications Accounts by at least early 2021.

### 2.  Giuliani Did Not Take Reasonable Steps to Preserve His ESI

Second, plaintiffs argue that Giuliani's efforts to preserve his ESI—turning off autodelete at some unidentified date on an unenumerated number of his Devices and Communications Accounts—were not reasonable.  Pls.' MTC at 17–19.  "The scope of a party's preservation obligation can be described as follows: Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."  *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003); *accord Borum*, 332 F.R.D. at 45 ("A party 'must . . . put in place a litigation hold to ensure the preservation of relevant documents' when it 'reasonably anticipates litigation.'") (alterations in original) (quoting *Nunnally*, 243 F. Supp. 3d at 73); *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 931 & n.41–42 (N.D. Ill. 2021) (collecting cases and scholarship).  With respect to preserving ESI on phones or other electronic devices, courts have normally held that litigants must prevent destruction of ESI on such devices by backing up the data to that device's cloud network.  *See, e.g.*, *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 344 (D. Ariz. 2022) ("By failing to back up her iPhone, Plaintiff failed to take reasonable steps to preserve the ESI contained on the phone."); *Youngevity Int'l v. Smith*, No. 3:16-cv-704-BTM-JLB, 2020 WL 7048687, at *2 (S.D. Cal. Jul. 28, 2020) ("The Relevant Defendants' failure to prevent destruction by backing up their phones' contents or disabling automatic deletion functions was not reasonable because they had control over their text messages and should have taken affirmative steps to prevent their destruction when they became aware of their potential relevance."); *Laub v.*

*Horbaczewski*, No. CV 17-6210-JAK (KS), 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020) (similar); *Paisley Park Enters., Inc. v. Boxill* ("*Paisley Park*"), 330 F.R.D. 226, 233 (D. Minn. 2019) (holding that defendants did not take reasonable steps to preserve ESI on their phones because they "could have taken advantage of relatively simple options to ensure that their text messages were backed up to cloud storage" but did not do so); *Brewer v. Leprino Foods Co., Inc.*, No. CV-1:16-1091-SMM, 2019 WL 356657, at *10 (E.D. Cal. Jan. 29, 2019) (similar).

Plaintiffs are right that Giuliani did not take reasonable efforts to preserve his ESI. Giuliani's summary of his preservation efforts amounted to turning off auto-delete at some time "in late 2020 or early 2021" on his unenumerated and unspecified "email, messaging, communication, or other document storage platforms" and refraining from manually deleting "any electronic documents or dispose[] of any paper files." Second Giuliani Decl. ¶ 2. Yet, Giuliani seems completely unable to provide any details, let alone confirmation, as to what precise steps he took and when, as to each of his individual Devices and Communications Accounts to preserve ESI. As plaintiffs correctly point out, Giuliani's representation in his Second Declaration "lacks the kind of details that would make it worthy of credit—he has not explained *which* of his accounts had auto delete functions on them, how he turned them off (if so) or when, whether he did so or tasked someone else to do so, and whether he sought to recover any records (from his various online accounts) confirming these changes." Pls.' MTC at 18 (emphasis in original). Nor has Giuliani clarified the scope of his preservation efforts in his opposition to plaintiffs' motion. *See generally* Def.'s Mot. Resp., ECF No. 84. Especially given the shifting descriptions of the contents in the TrustPoint dataset, *see supra* n.8, and the vague nature of the "manual" searches he performed in response to plaintiffs' RFPs, Giuliani's statement that he turned off auto-delete on his "email, messaging, communication, or other document storage platforms" lacks sufficient

corroborating detail to evince that he turned off all auto-delete functions on *each* of the Giuliani Devices and Communications Accounts.

Second, even viewing the Second Giuliani Declaration in its best light, merely turning off auto-delete on each of the Giuliani Devices and Giuliani Communications Accounts is also insufficient to comply with his Rule 37(e) obligations. Giuliani could have, but chose not to, take any other reasonable steps to preserve his ESI, such as backing up his iMessage communications on the Giuliani Devices to his iCloud account, downloading the contents of his other messaging and email applications enumerated in his list of Giuliani Communications Accounts onto an external storage device or confirming that the contents of communications on those platforms were preserved on the cloud, or otherwise engaging an expert to preserve the material that existed outside of his physical devices. *See* Pls.' Reply at 12 (making these observations); *see also Doe*, 2023 WL 3558038 at *14 (explaining that the non-moving party "failed to fulfill its obligations by a long shot" because it adduced "no evidence of preservation efforts beyond the partial distribution of litigation hold notices").

The fact that Giuliani is a sophisticated litigant with a self-professed 50 years of experience in litigation—including serving as the U.S. Attorney for the Southern District of New York—only underscores his lackluster preservation efforts. *See* FED. R. CIV. P. 37 (advisory committee note to 2015 amendment) (noting that courts "should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts; some litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation"). Giuliani knew, by his own admission, that he would be facing litigation for his involvement in claiming election fraud to undermine the results of the 2020 presidential election, and yet, all he did was turn off the auto-delete function on unspecified

devices, without alerting the service providers of those platforms to do the same, Giuliani Dep. Tr. at 28:9–16 (Giuliani testifying that he does not "have any recollection" going "back to WhatsApp or Signal . . . to ask them for a pull of any of [his] data"), and taking any other efforts to preserve or retrieve ESI on those accounts or devices.  Accordingly, Giuliani failed to take reasonable steps to preserve potentially relevant ESI.

In opposition, Giuliani does not seriously contest that he failed to take reasonable preservation efforts.  Indeed, he fails to address, and therefore concedes, that he took no other steps to preserve his ESI on the Giuliani Devices and Giuliani Communications Accounts. *See generally* Def.'s Mot. Resp.  Citing the Costello Declaration, Giuliani instead lays blame at the feet of the government, arguing that, after the FBI seized Giuliani's electronic devices, a government vendor extracted data from those devices for uploading to PAE, and, in so doing, corrupted the data and also "wiped" any ESI on Giuliani's pre-April 2021 devices.  *See id.* at 3–4; *see also supra* n.8.

Giuliani's efforts to shift blame to the government does not withstand scrutiny.  The Costello Declaration suggests the following critical points: first, that the government's vendor, PAE, not TrustPoint, contains the full extractions, or images, of the Seized Devices and thus any pre-April 2021 ESI stored on those devices, *see* Costello Decl. ¶¶ 11-14; second, that data was only transferred to TrustPoint to facilitate Costello's review for potential privilege claims at the direction of the court-appointed special master, who identified responsive but potentially privileged information to the warrant, which was focused on potential FARA violations limited in time to August 1, 2018 to December 31, 2019, *id.* ¶ 6; and, finally, that the data transferred by PAE to TrustPoint was not, in fact, *all* corrupted since Costello states that he was able to "designate" certain communications that he "believed were covered by attorney client, work product or executive privilege" for the special master to review, *id.* ¶ 15.  These points made in

the Costello Declaration casts doubt on Giuliani's descriptions of the TrustPoint dataset, which Giuliani has steadfastly maintained contains the entire repository of his pre-April 2021 ESI. *See, e.g.,* Second Giuliani Decl. ¶ 4 ("The TrustPoint One documents consist of all documents that were extracted from the electronic devices taken by the DOJ in April 2021 when the DOJ seized those devices[.]"); Def.'s MTC Resp. at 4; Mar. 21 Hrg. Tr. 18:9–21.  In any event, even had the government corrupted, wiped, or otherwise lost his pre-April 2021 ESI stored on the Seized Devices, Giuliani's reliance on the government's execution of a search warrant as the most significant preservation effort taken to preserve his pre-April 2021 data only confirms that Giuliani did not, himself, engage in reasonable steps to preserve his pre-April 2021 ESI, such as backing-up this data in a manner to facilitate both preservation and searches for responsive records in this lawsuit.  Simply put, the government is not Giuliani's ESI preservation team, and the FBI's seizure of Giuliani's electronic devices did not obviate his obligation to take additional preservation efforts before and after the seizure.

The Costello Declaration undermines Giuliani's position in two other respects.  First, the Costello Declaration settles that, prior to plaintiffs' filing of this lawsuit, Giuliani and Costello knew the TrustPoint dataset—whether or not this dataset encompassed all his pre-April 2021 ESI on his Seized Devices and Giuliani Communications Accounts—contained some corrupted files but did not ever attempt to preserve or recover, or coordinate with PAE or TrustPoint or the platforms hosting the Communications Accounts to preserve or recover, any of that ESI.  Second, even if the government "wiped" Giuliani's Seized Devices as Giuliani and Costello assert, that assumption says nothing about Giuliani's Unseized Devices, and does not explain why Giuliani can no longer access ESI in the Giuliani Communications Accounts, since he would be able to access that data on the cloud networks for each Account had he taken reasonable steps to preserve

the ESI on those Accounts.  Given Giuliani's much-vaunted experience as an attorney, he plainly should have known better, and had he taken the proper steps prior to or even after the FBI's seizure of his devices, his potentially relevant ESI could have been preserved.  *See Doe*, 2023 WL 3558038, at *14 ("Had the District taken appropriate measures to protect ESI in this case, many lost text messages would still be available."); *DR Distribs.*, 513 F. Supp. 3d at 934 (explaining that if the spoliating party had taken reasonable steps to preserve ESI "when the duty to preserve arose, [the] ESI would more likely not have been deleted").

### 3.  Giuliani's ESI Is Now Irretrievable

Plaintiffs argue that the third requirement for a finding of spoliation is met because Giuliani's pre-April 2021 ESI is irremediably lost.  *See* Pls.' Mot. at 19–21.  Giuliani has conceded as much as to his Seized Devices, *see* Def.'s Mot. Resp. at 5 (indicating that his Seized Devices returned by the FBI were "wiped clean"), and, in any event, has stated that he need not produce any additional discovery because "he has conceded all aspects on liability on which discovery form him would be necessary."  Aug. 4. JSR at 10.  ESI is irretrievable when it "cannot be restored or replaced through additional discovery."  *Borum*, 332 F.R.D. at 46; *accord* FED. R. CIV. P. 37(e) (advisory committee's note to 2015 amendment) ("Because [ESI] often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere.").  In *Borum*, for example, an employee's emails were deemed "irremediably lost" because the company admitted it lost its own copies of the employee's emails, the employee likely sent emails to only external parties without copying another employee, and "no amount of discovery w[ould] confirm the extent to which information was lost."  332 F.R.D. at 46.  Similarly, Giuliani has repeatedly admitted that his ESI has either been "wiped" from the Seized Devices, or that he has lost access to his Communications Accounts that would contain potentially responsive

33

ESI.  *See* Giuliani Dep. Tr. at 391:23–392:11 (Giuliani explaining that the devices the government has given back to Giuliani "seems to be wiped out" and that he "can't get anything off" of those devices); May 19 Hrg. Tr. at 53:4–8, 95:17–97:8 (Giuliani noting that "90 to 95 percent of [his] communication is done on Apple, and it's backed up by the iCloud," but he does not "have access to [ ] the cloud" anymore, without explaining why); *see also id.* at 96:8–18 (Giuliani stating "Did they destroy it? I don't know," referring to the FBI).  Nor has Giuliani shown that any of his potentially responsive ESI on the Giuliani Devices and Giuliani Communications Accounts can be retrieved through alternative means, *see generally* Def.'s Mot. Resp., so his ESI may be deemed irretrievably lost.

### 4.  Rule 37(e)(2) Sanctions Are Warranted

Given that the threshold requirements of Rule 37(e) are satisfied, the only issue left to decide is whether sanctions under 37(e)(1) or (e)(2) are warranted.  Rule 37(e) authorizes district courts to (1) "order measures no greater than necessary to cure the prejudice," or (2) upon finding "that the party acted with the intent to deprive another party of the information's use in the litigation," then "presume that the information was unfavorable to the party;" "instruct the jury that it may or must presume the information was unfavorable to the party; or" "dismiss the action or enter a default judgment."  FED. R. CIV. P. 37(e); *see also Borum*, 332 F.R.D. at 46–47 ("Under Rule 37(e)(1), the Court may impose proportional sanctions upon the finding of prejudice. Under Rule 37(e)(2), the Court may impose more severe sanctions upon finding that the party that lost the information acted with the intent to deprive another party of the information's use in the litigation.").  Based on the record outlined above, Rule 37(e)(2) sanctions are warranted here.

#### a.  *Plaintiffs Have Been Prejudiced by Giuliani's Failure to Preserve ESI*

Plaintiffs argue that they have been severely prejudiced by Giuliani's failure to preserve his ESI by hampering their "ability to learn what he knew or did not know—including what information he received, and what he did or did not do in response to that information—when he published his defamatory claims."  Pls.' Mot. at 21–22.  "To evaluate prejudice from the loss of ESI, courts consider 'the information's importance in the litigation.'"  *Doe*, 2023 WL 3558038, at *14 (quoting Fed. R. Civ. P. 37(e)(1) (advisory committee's note to 2015 amendment)).  "The extent of prejudice in a given case 'ranges along a continuum from an inability to prove claims or defenses to little or no impact on the presentation of proof.'"  *Id.* (quoting *Borum*, 332 F.R.D. at 47).  Furthermore, "Rule 37(e) 'leaves judges with discretion to determine how best to assess prejudice in particular cases' and where to allocate the burden of proving prejudice."  *Id.* (quoting Fed. R. Civ. P. 37(e) (advisory committee's note to 2015 amendment)).

Giuliani's ESI is relevant to all of plaintiffs' claims.  First, as explained in *Freeman*, if plaintiff Ruby Freeman is a limited-purpose public figure as Giuliani argued, she would have to show that Giuliani's statements about her were made with actual malice, which would require Freeman to prove that Giuliani published false statements concerning her "with knowledge that it was false or with reckless disregard of whether it was false or not."  2022 WL 16551323, at *9 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)).  Whether Freeman was a limited-purpose public figure was not resolved in that decision, but if she were, plaintiffs would have to prove that Giuliani made the false statements about her with an "awareness of falsehood," *Herbert v. Lando*, 441 U.S. 153, 170 (1979), meaning that they would have "to prove the defendant's state of mind through circumstantial evidence," *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989).  Without access to circumstantial evidence of Giuliani's state of mind—in the form of his messages and email communications with associates or other contemporaneous records

of his thoughts when he made the false statements against Freeman—plaintiffs are severely hampered in being able to refute Giuliani's defense that he made his statements about Freeman merely negligently.

Second, plaintiffs' claim for Intentional Infliction of Emotional Distress ("IIED") requires a preponderance of proof that Giuliani engaged in "(1) extreme and outrageous conduct . . . which (2) intentionally or recklessly (3) cause[d] [them to suffer] severe emotional distress." *Freeman*, 2022 WL 16551323, at *10 (quoting *Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1269 (D.C. 2015)).  Similar to Giuliani's public-figure defense to Freeman's defamation claim, plaintiffs will be severely hampered in proving that Giuliani acted intentionally or recklessly without access to circumstantial evidence of his state of mind when he made allegedly false statements about them.

Finally, to prevail on their civil conspiracy claim, plaintiffs must prove, *inter alia*, "(1) an agreement between two or more persons (2) to participate in an unlawful act," *id.* (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)).  Such proof rests on evidence that Giuliani worked with others to defame and inflict emotional distress on plaintiffs, but, due to Giuliani's failure to preserve and produce his communications with others concerning plaintiffs and the surrounding context, plaintiffs are, again, severely hampered in establishing this claim.

Plaintiffs have also shown, through discovery obtained from third parties, that had Giuliani properly satisfied his preservation and production obligations, he should be in possession of documentary evidence that goes to the heart of claims in this lawsuit.  For instance, plaintiffs received, not from Giuliani, but from third-party Christina Bobb, responsive records, including: (1) a text thread between Bobb and Giuliani discussing sending a video of plaintiffs to Rusty Bowers, then the Speaker of the Arizona House of Representatives, Pls.' Reply Supp. MTC, Decl.

36

of Meryl Governski, Ex. 2, December 4, 2020 Text Message Thread between Giuliani and Christina Bobb, ECF No. 56-3; (2) a direct message between Giuliani and Bobb on Instagram concerning plaintiffs, *id.*, Ex. 3, August 17, 2022 Instagram Message between Bobb and Giuliani, ECF No. 56-4; and (3) a text thread between Boris Epshteyn, an advisor to the 2020 Trump Campaign, and Giuliani and others, in which Epshteyn states, "Urgent POTUS request need best examples of 'election fraud' that we've alleged that's super easy to explain.  Doesn't necessarily have to be proven, but does need to be easy to understand[,]" to which Giuliani replies, "The security camera in Atlanta alone captures theft of a minimum of 30,000 votes which alone would change result in Georgia[.]  Remember it will live in history as the theft of a state if it is not corrected by State Legislature[,]" Gottlieb Decl., Ex. 11 at 2, 4, Dec. 7, 2020 Text Message Thread between Epshteyn, Giuliani, and Others, ECF No. 81-12.

Plaintiffs also received, not from Giuliani, but from third-party Christianne Allen, one of Giuliani's assistants, responsive records, including a December 7, 2020, email from a Fox News reporter to "press@giulianipartners.com," seeking a comment from Giuliani regarding the Georgia Secretary of State Chief Investigator's debunking of Giuliani's claim that plaintiffs were pulling suitcases filled with mystery ballots from under tables while tabulating the votes on election night, *see* Pls.' Opp'n, Decl. of M. Anne Houghton-Larson ("Houghton-Larson Decl."), Ex. 6, December 7, 2020 Email from Ronn Blitzer to "press@giulianipartners.com," ECF No. 64-7.

According to plaintiffs, none of these communications were produced by Giuliani, who has claimed no privilege over these communications.  Gottlieb Decl. ¶¶ 3-4.  Additionally, plaintiffs say they "have additional examples of relevant documents and communications obtained from third parties that were not produced by Defendant Giuliani."  *Id.* ¶ 5.[9]

---

[9]     Indeed, the U.S. House of Representatives' Select Committee to Investigate the January 6th Attack on the U.S. Capitol released a December 13, 2020, email from Giuliani to Epshteyn, in which Giuliani approved a draft

Testimony from Giuliani and third parties also suggests that responsive, but now either lost or certainly not produced, ESI should exist in the Giuliani Communications Accounts and on the Giuliani Devices.  For example, Giuliani testified that he "talked to many people" who said that poll observers were excluded from the State Farm Arena in Fulton County, Georgia on election night in 2020 and that "there were constant complaints about that."  Giuliani Dep. Tr. at 352:22–353:21.  Bobb similarly testified that Giuliani was "getting like 10,000 emails a day" during the time period in which Giuliani was challenging the results of the 2020 election, and that she was copied on certain incoming emails to ensure that those emails were brought to Giuliani's attention. *See* Gottlieb Decl., Ex. 5, May 16, 2023 Dep. Tr. of Christina Bobb at 40:16–41:21, ECF No. 81-6.  Additionally, Bernard Kerik, a key investigator for Giuliani, testified that Giuliani and his team were receiving reports of possible fraud from "a hundred different sources" during the November and December 2020 time period with "tons of information" coming to Giuliani and his team.  *Id.*, Ex. 6, Mar. 20, 2023 Dep. Tr. of Bernard Kerik at 47:12–48:7, ECF No. 81-7.  Little to none of those estimated thousands of emails from "a hundred different sources" have been produced to plaintiffs by Giuliani.

Giuliani's failure to preserve his ESI has significantly prejudiced plaintiffs' abilities to prove their claims because circumstantial evidence of Giuliani's knowledge of the falsity of his claims concerning plaintiffs likely would have existed in his lost ESI.  Unfortunately, as plaintiffs

---

statement from the Trump Legal Team that stated, "Georgia has video evidence of 30,000 illegal ballots cast after the observers were removed[,]" referencing Giuliani's false claim made about plaintiffs.  Pls. Reply Supp. MTC, Governski Decl., Ex. 6 at 3, Dec. 13, 2020 Email from Giuliani to Epshteyn, ECF No. 56-7.  Yet, Giuliani never produced that email to plaintiffs nor, as far as plaintiffs' counsel can discern, did he ever claim privilege over it.  Gottlieb Decl. ¶ 4. In defense, Giuliani argues that just because third parties, but not Giuliani, were able to produce responsive records "does not prove [he] had any access to those same materials and lost or destroyed them."  Def.'s MTC Resp. at 5.  To be sure, missing some responsive documents or communications does not in itself prove spoliation, but the record here, with multiple third parties all producing responsive communications with Giuliani that he failed to produce, certainly demonstrates the deficiencies in his preservation of ESI and/or search methodology.

point out, one "cannot accurately assess the full scope of the evidence that has been lost," Pls.'
Mot. at 38, but the third-party discovery and testimony from Giuliani, Bobb, and Kerik suggests
that evidence concerning when Giuliani obtained information relevant to his statements about
plaintiffs, how he investigated, verified, presented and characterized such information to others,
and how he pushed that information to others likely existed, even if not currently extant, on his
Devices and in his Communications Accounts.

### b. Giuliani Intended Not to Take Reasonable Steps to Preserve His ESI

Finally, plaintiffs persuasively argue that the only reasonable explanation for Giuliani's
failure to take any reasonable preservation steps "is that he did so deliberately to deny Plaintiffs
(and the scores of other plaintiffs and government entities litigating and investigating his actions
during and after the 2020 Presidential Election) evidence that would be helpful to their case." Pls.'
Mot. at 29–30.  Despite repeated requests for details about his preservation efforts—by plaintiffs'
counsel on December 21, 2022 and February 6, 2023, and at Giuliani's deposition, *see* Giuliani
Dep. Tr. at 25:19–26:8, as well by this Court at both the March 21 and May 19 Hearings and in
the May 19 Order—Giuliani finally answered that the only preservation effort he took was to turn
off auto-delete on an unenumerated list of devices and possibly on his Communications Accounts.
Unlike large institutional or corporate defendants that may be responsible for the ESI of multiple
employees, *cf. Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) (explaining
that a corporate party's counsel must be "creative" to satisfy the party's preservation obligations
"given the size of a company or the scope of a lawsuit"), Giuliani was the only individual
responsible for preserving his ESI, and unlike other cases with unsophisticated litigants, Giuliani
has been a practicing attorney for "50 years" and admits that he "understand[s] the obligations,"
May 19 Hrg. Tr. at 67:21–68:6.  The only reasonable explanation for Giuliani's blatant disregard

for satisfying his preservation obligations—despite fully understanding them—is that he intentionally and willfully ignored them. *See Beck v. Test Masters Educ. Servs., Inc.*, 289 F.R.D. 374, 378 (D.D.C. 2013) (holding that party's failure "to make any serious effort to recover the data" was sufficient to demonstrate "a conscious disregard of [their] preservation obligations"). Accordingly, Giuliani's failure to preserve potentially relevant ESI warrants Rule 37(e)(2) sanctions, including entry of default against him.

### B. Rule 37(b) Sanctions

Giuliani has also failed to comply with other court-ordered discovery obligations. *See generally* Aug. 4 JSR. Rule 37(b)(2)(A) specifically authorizes district courts to "issue further just orders" "[i]f a party . . . fails to obey an order to provide or permit discovery," including "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims[;] . . . (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey." *See Parsi v. Daioleslam*, 778 F.3d 116, 130 (D.C. Cir. 2015) (explaining that courts also have the "inherent power" to impose sanctions for violating a court order, including "contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments") (citation omitted). "The rule 'requires the moving party to demonstrate . . . (1) [that] there is a discovery order in place, and (2) that the discovery order was violated.'" *Saravia v. Yuan Profit, Inc.*, No. CV 20-232 (RDM), 2023 WL 2585675, at *3 (D.D.C. Mar. 17, 2023) (alterations in original) (quoting *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 292 F.R.D. 53, 56 (D.D.C. 2013)); *see also Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) ("A district court may order sanctions, including a default judgment . . . for violation of a discovery order[.]"). As outlined above, *see supra* Section I.B, Giuliani's most flagrant violation

40

of this Court's Discovery Orders is that he has not, as required by the May 31 Order, "search[ed] and produce[d] all materials responsive to plaintiffs' RFPs, with the exception of RFPs 40 and 41, within the date ranges agreed to by the parties, with the assistance of a professional vendor, and produce a privilege log specifically tailored to the searches he has performed for materials responsive to plaintiffs' RFPs."  August 4 JSR at 7–8.  As discussed *infra* in Section III.C.3, Giuliani has also failed to comply with two other Discovery Orders: the June 22 Order, which denied his motion for reconsideration and directed him to produce fulsome responses to plaintiffs' RFPs. 40 and 41 regarding his financial records, and his obligation under the July 13 Order to pay plaintiffs' $89,172.50 in attorneys' fees and costs associated with their motion to compel.  *Id.* at 4–6, 17–18.  Giuliani never sought an accommodation or a stay of, or otherwise contested, his obligations under the June 22 and July 13 Orders.

Giuliani's only defense to his failure to comply with the May 31 Order is that "this point is moot since he has conceded all aspects of liability on which discovery from him would be necessary."  *Id.* at 10.  Yet, Giuliani has provided no authority for his position that filing a stipulation, conceding liability with one hand, while, on the other hand, still contesting such liability by reserving certain legal arguments for appeal and preserving all affirmative defenses, operates as an effective concession of liability or otherwise obviates his need to comply with the May 31 Order.

For the above reasons, Giuliani's discovery failures warrant severe sanctions under Rule 37(b)(2).

## C. Sanctions and Other Discovery Relief

Giuliani has failed to comply with his core obligations under Rules 26 and 37: preserve and produce relevant ESI.  Citing Giuliani's willful failure to preserve potentially relevant ESI,

and his knowing disregard for his discovery obligations, plaintiffs argue that default judgment is an appropriate sanction in this case. Pls.' Mot. at 31–32. Plaintiffs also seek attorneys' fees and costs associated with their instant motion as a sanction for his failure to preserve ESI, and further request that Giuliani be held in contempt for failing to comply fully with both the June 22 Order, which required production of responses to plaintiffs' RFPs 40 and 41, and the July 13 Order, which required reimbursement of plaintiffs' attorneys' fees and costs associated with their motion to compel filed on April 17, 2023, by July 25, 2023. Aug. 4 JSR at 4–6, 17–18. Apart from discovery sanctions, plaintiffs seek, with respect to the Giuliani Businesses, (1) production of the Businesses' requested records relevant to quantification of damages, (2) identification by Giuliani of a corporate representative on behalf of the Giuliani Businesses to sit for a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6), *id.* at 20, and (3) modification of the July 26 Order that would direct the Giuliani Businesses to pay plaintiffs' attorneys' fees in the amount of $43,684, and hold Giuliani directly liable only if his eponymous businesses do not comply, Pls.' Resp. at 2–3.

As explained in more detail below, plaintiffs are right that, under either or both Rules 37(e)(2) and (b)(2), entry of default judgment is the most appropriate sanction in this case. In addition, Giuliani's continued noncompliance, without excuse or explanation, with the June 22 Order directing his complete responses to RFPs 40 and 41, will be sanctioned by precluding him from relying on any assets or net worth documentation not turned over by September 20, 2023 and by issuance of adverse instructions at the trial on plaintiffs' damages.[10] Plaintiffs' request for

---

[10]       Plaintiffs urge that Giuliani be held in contempt and subject to a daily financial sanction, accruing interest, until he fully complies with the June 22 and July 13 Orders. Aug. 4 JSR at 5 & n.3, 18. Imposing escalating monetary fines on Giuliani, particularly when he has already shown a recalcitrance to comply with Court orders, will do little more than delay the resolution of this defamation case that heads to trial solely on the issue of damages. Moreover, such fines would also not be payable to plaintiffs but rather imposed as an escalating fine against Giuliani, payable to the Clerk of the Court, to secure his compliance, *see In re Sealed Case*, No. 23-5044, 2023 WL 5076091, at *12 (D.C. Cir. July 18, 2023) (outlining process for levying a civil contempt sanction to secure compliance with a court order),

attorneys' fees and costs associated with filing the instant motion will be granted, which fees and costs—in addition to the $89,172.50 Giuliani already owes plaintiffs for their first motion to compel, plus interest accrued since July 25, 2023—will be added onto the final judgment against Giuliani.  Finally, plaintiffs are entitled to the requested records from the Giuliani Businesses and a limited 30(b)(6) deposition from the Giuliani Businesses, and the July 26 Order will be modified to hold the Businesses liable for the attorneys' fees owed in connection with their Giuliani Businesses Motion, with Giuliani to be held directly liable should his eponymous businesses not comply.

### 1. Plaintiffs Are Entitled to Entry of Default Judgment under Rules 37(e)(2)(C) and (b)(2)(A)(vi)

Plaintiffs seek entry of default judgment against Giuliani for his violation of his discovery obligations.  Pls.' Mot. at 31–33.  "[T]hree basic justifications . . . support the use of dismissal or default judgment as a sanction for misconduct."  *Webb*, 146 F.3d at 971.  "First, the court may decide that the errant party's behavior has severely hampered the other party's ability to present his case," i.e., "that the other party 'has been so prejudiced by the misconduct that it would be unfair to require him to proceed further in the case.'"  *Id.* (quoting *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1074 (D.C. Cir. 1986)).  A second justification is "the prejudice caused to the judicial system when the party's misconduct has put 'an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay.'"  *Id.* (quoting *Shea*, 795 F.2d at 1075).  "[F]inally, the court may consider the need 'to sanction

---

meaning that civil contempt sanctions would not provide any compensation to plaintiffs.  The most expeditious way to allow plaintiffs to recover compensatory and punitive damages for which Giuliani is accountable is to impose adverse inferences as a sanction for Giuliani's discovery failures, as this Court has done, and reach final judgment, whereupon plaintiffs may execute that judgment against Giuliani and his assets, under Federal Rule of Civil Procedure 69 and applicable state law.

conduct that is disrespectful to the court and to deter similar misconduct in the future.'" *Id.* (quoting *Shea*, 795 F.2d at 1077).

"A default judgment is inappropriate unless the litigant's misconduct is accompanied by 'willfulness, bad faith, or fault.'" *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv.* ("*WMATC*"), LLC, 776 F.3d 1, 4 (D.C. Cir. 2015) (quoting *Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1458 (D.C. Cir. 1986)).  Accordingly, the grant of default judgment must be based upon a finding of "clear and convincing evidence of misconduct" and accompanied by "a specific, reasoned explanation for rejecting lesser sanctions, such as fines, attorneys' fees, or adverse evidentiary rulings." *Shepherd*, 62 F.3d at 1478.

### a. The Webb *Justifications Support Entry of Default*

Each *Webb* justification applies forcefully here, where Giuliani has not only failed to preserve potentially relevant ESI but compounded that failure by failing to produce any meaningful discovery.  First, Giuliani's deliberate failure to preserve his ESI and his failure otherwise to comply with the May 31 Order by producing records responsive to plaintiffs' RFPs have severely hampered plaintiffs' ability to prove each of their claims.  *See supra* at Section III.A.4.a, III.B; *accord Guarantee Co. of N. Am. USA v. Lakota Contracting Inc.* ("*Guarantee Co.*"), No. CV 19-1601 (TJK), 2021 WL 2036666, at *4 (D.D.C. May 21, 2021) (finding that first *Webb* factor supported entry of default judgment because the plaintiff "received no discovery from Defendants[,]" and defendants "made it all but impossible for Plaintiff to present its case").

Second, Giuliani's failure to preserve his ESI forced plaintiffs to waste time by wading through thousands of pages of gibberish derived from the TrustPoint dataset in search of some potentially relevant evidence, while his concomitant failure to produce any meaningful discovery has similarly brought this litigation to a standstill.  *See Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C.

Cir. 2005) (affirming default judgment under Federal Rule of Civil Procedure 55 where "the adversary process has been halted because of an essentially unresponsive party") (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)); *U.S. Bank Nat'l Ass'n v. Poblete* ("*Poblete*"), No. CV 15-312 (BAH), 2017 WL 598471, at *6 (D.D.C. Feb. 14, 2017) (finding second *Webb* factor satisfied when the defendant's "failure to respond to discovery and penchant for instead filing irrelevant documents with the Court [ ] stalled [the] litigation").  Giuliani has also forced the expenditure of judicial resources to assess and ensure compliance with the most basic of discovery obligations, including consideration of two discovery motions, two discovery hearings, close monitoring of progress through the parties' submission of status reports, and issuance of multiple orders to secure Giuliani's and his businesses' compliance with discovery rules—generally without the result of improved discovery compliance by Giuliani.  *See Guarantee Co.*, 2021 WL 2036666, at *4 (finding the second element because the "[t]ime and resources the Court has had to spend on defendants' contumaciousness can never be recovered and applied toward resolving other matters").

Third, despite Giuliani's 50 years of experience as an attorney, he repeatedly flaunted his discovery obligations.  *See Poblete*, 2017 WL 598471, at *6 (finding third element met where defendant "demonstrated utter disrespect for the Court's deadlines and a need to deter further noncompliance" by employing tactics "plainly intended to do nothing more than delay the resolution of this matter").  With respect to his preservation obligations, Giuliani took six months and two court hearings to detail his *de minimis* preservation efforts.  With respect to the May 31 Order, Giuliani was given reprieve after reprieve to comply with the Order: He was first granted a two-week extension to comply from June 16 to June 30, 2023, *see* Minute Order (June 16, 2023), and then, even after Giuliani apparently failed to comply with the May 31 Order by June 30, 2023,

he was afforded another 35 days to comply without even having filed a motion for extension of time, *see* July 13 Order.  His choice to make no effort to comply with the May 31 Order, or even file his two Stipulations *prior* to the June 30, 2023 compliance deadline, can be seen as nothing else than ignoring court orders.

Giuliani's only defense for his willful discovery violations is that he stipulated to all the factual elements of plaintiffs' claims and thereby obviated his discovery obligations.  Def.'s Mot. Resp. at 1.  Putting aside the fact that Giuliani so stipulated only in response to plaintiffs' motion for sanctions—while still under court-ordered obligations to produce responsive records—Giuliani's Stipulations are simply not effective concessions to liability for plaintiffs' claims.  *See* Giuliani Superseding Stip. at 1, ¶¶ 5-6.

Giuliani would like to have his proverbial cake and eat it too: He wants to bypass his discovery obligations now with stipulations that would leave him, somehow, free to raise his affirmative defenses to plaintiffs' claims on appeal, with a record predicated on deficient discovery.  This discovery shortcut is simply unfair and will not be permitted here.  Rather than granting entry of default based on Giuliani's stipulations, with their various carve-outs and reservations, default is entered here as a straight-up sanction for his discovery failures.

### b.   *Lesser Sanctions Will Not Deter the Conduct*

Default judgment is warranted as a sanction when "the party typically has engaged in a pattern of disobedience or noncompliance with court orders . . . and the noncompliance most often has prejudiced the opposing party, so that the court concludes that no lesser sanction is warranted." *Poblete*, 2017 WL 598471, at *6 (alterations in original) (quoting Charles Alan Wright *et al*., 6A FEDERAL PRACTICE AND PROCEDURE § 1531 (3d ed. 2016) (discussing Federal Rule of Civil Procedure 16(f))).  The seriousness of Giuliani's multiple discovery violations over the course of

this litigation, coupled with his concession that he is "desirous to avoid unnecessary expenses in litigating what he believes to be unnecessary disputes" and that "liability in this case . . . should be treated as though there is default liability," Giuliani Superseding Stip. at 1 & ¶ 6, make plain that Giuliani has no interest in participating in discovery and that an entry of default is warranted.  *See Sec. & Exch. Comm'n v. Hollywood Trenz, Inc.*, 202 F.R.D. 3, 7 (D.D.C. 2001) ("In those cases where a court orders a dismissal or enters a default judgment, the party typically has engaged in a pattern of disobedience or noncompliance with court orders[.]"); *see also WMATC*, 776 F.3d at 4 (holding that default judgment is appropriate if the litigant's misconduct is accompanied by "willfulness, bad faith, or fault") (citation omitted).  Accordingly, default judgment is the only appropriate sanction against Giuliani.

### 2.  Plaintiffs Are Entitled to Attorneys' Fees and Costs for Bringing the Instant Motion

In addition to seeking default judgment, plaintiffs also move for an award of attorneys' fees and costs associated with bringing the instant motion pursuant to Rule 37(e)(1).  Pls. Mot. at 37.  Although Rule 37(e) does not expressly provide that attorneys' fees be awarded to the party successfully alleging spoliation, Judges on this Court have awarded attorneys' fees and costs against the non-moving party when granting (either in part or in full) the moving party's motion for sanctions for failing to preserve discoverable material under Rule 37(e).  *See, e.g.*, *Doe*, 2023 WL 3558038, at *16 (awarding attorneys' fees and costs to the party moving for spoliation sanctions and explaining that "[s]ince the 2015 amendment [to Rule 37(e)] . . . '[m]any courts have imposed monetary sanctions under Rule 37(e).'") (second alteration in original) (quoting *Paisley Park*, 330 F.R.D. at 237–38); *Zhi Chen*, 839 F. Supp. 2d at 16–17 (similar).  Considering that plaintiffs' relief has been granted in full, an award of attorneys' fees and costs is entirely appropriate here and is accordingly granted.

47

**3. Sanctions for Giuliani's Failure to Comply with Court-Orders to Produce Discovery Related to Damages and Reimburse Plaintiffs' Fees of $89,172.50**

Aside from requesting entry of default judgment for liability on their claims, plaintiffs request that, for failing to comply with the June 22 Order's directive to produce fulsome responses to plaintiffs' RFPs 40 and 41 and to satisfy his obligation under the July 13 Order to pay plaintiffs' $89,172.50 in attorneys' fees and costs associated with their motion to compel, Giuliani be held in contempt and be subject to "to a daily financial sanction, accruing interest, until he fully complies with the Orders."  Aug. 4 JSR at 5–6 & n.3, 18.

Giuliani has plainly failed to comply with the June 22 and July 13 Orders.  First, Giuliani failed to produce "full and complete responses to plaintiffs' requests for financial information in RFP Nos. 40 and 41[,]" even though the June 22 Order directed him to produce all responsive documents to those requests by June 30, 2023.  *Id.* at 4–5.  Second, Giuliani has still not reimbursed plaintiffs' $89,172.50 in attorneys' fees and costs in connection with plaintiffs' motion to compel, as required by the July 13 Order, *id.* at 17–18, which fees were required to be paid by July 25, 2023.  Plaintiffs' request that Giuliani be held in contempt and sanctioned accordingly is not an unreasonable request in these circumstances.  *See In re Sealed Case*, 2023 WL 5076091, at *12 (affirming district court's procedure for imposing a contempt sanction when the recalcitrant party disobeyed a "clear and unambiguous court order" to timely produce records in response to a search warrant).

None of Giuliani's attempts to explain away these unambiguous failures to comply with these court orders are persuasive.  First, with respect to his failure to comply with the June 22 Order, Giuliani claims he (1) "is unclear, at this point, as to whether the scope of documents the Court ordered produced is still in play given that the reasoning of the Court was that the documents could be relevant to a financial (actual malice motive) which Giuliani now concedes[,]" and (2)

"he has sufficiently complied in this regard (he provided testimony of his net worth in relatively recent proceedings) and is prepared to provide a declaration of net worth, obviating the need for any further production of documents that pertain to net worth," August 4 JSR at 6–7.  Regardless of whether he believes his stipulations obviated his obligations to follow court orders—which they did not—the June 22 Order required Giuliani to produce fulsome responses to the entirety of plaintiffs' RFPs 40 and 41, and he did not do so by the date of compliance, June 30, 2023.  In any event, Giuliani's objection to producing fulsome responses to RFPs 40 and 41 is not obviated by an entry of default because discovery on defendant's net worth remains relevant in the jury's assessment of the amount, if any, of punitive damages to which plaintiffs are entitled.  *See* June 22 Order (making this point); *see also U.S. Sec. & Exch. Comm'n v. China Infrastructure Inv. Corp.*, 189 F. Supp. 3d 118, 128 (D.D.C. 2016) (Howell, C.J.) (noting that "[a] defaulting defendant concedes all well-pleaded factual allegations as to liability, though the court may require additional evidence concerning damages") (quoting *Al-Quraan v. 4115 8th St. NW, LLC*, 123 F. Supp. 3d 1, 1 (D.D.C. 2015)).  Moreover, Giuliani's alternative suggestion that he file a declaration in the place of producing records responsive to RFPs 40 and 41 is patently insufficient on its face. Plaintiffs are not required to take Giuliani at his word as to his summary net worth instead of being able to scrutinize documentary records of the same and make their own analysis for presentation to a jury at the trial on any damages they may be owed.

Second, Giuliani's only excuse for his failure to reimburse plaintiffs $89,172.50, in compliance with the July 13 Order, is he "would like to file a motion for leave to seek a deferment on the payment of the fees" because "he is having financial difficulties and would like the payment of fees to be tolled until the case is resolved." *Id.* at 18.  Yet, Giuliani has filed no such motion, let alone provided any evidence about his inability to reimburse plaintiffs, which evidence would

come, perhaps, in the form of responses to RFPs 40 and 41.  Giuliani's claim that he cannot afford to reimburse plaintiffs is especially dubious considering that (1) he was previously able to "cure[] [his] arrearage with TrustPoint," Second Giuliani Decl. ¶ 5, estimated to be "over $320,000.00," Giuliani Decl. ¶ 5; (2) he has apparently recently listed his three bedroom apartment in New York City for $6.5 million, *see* J. Newsham & M. Schwartz, *Rudy Giuliani Puts Luxury Manhattan Apartment on the Block for $6.5 Million*, Business Insider (Aug. 7, 2023), https://perma.cc/8M6X-EM7M; and (3) when recently traveling to the Fulton County Jail in Atlanta, Georgia, in connection with criminal proceedings against him, Giuliani is reported to have flown "on a private plane," D. Hakim, M. Haberman, & R. Fausset, *Giuliani Surrenders at Jail In Georgia Election Case*, The New York Times (Aug. 23, 2023), https://perma.cc/F53X-MDWM.  In short, based on the current record, Giuliani has failed to show that he cannot pay the reimbursement fees he owes.

Additionally, a combination of other sanctions will be imposed on Giuliani, pursuant to Rule 37(b)(2)(A)(i) and (ii), to secure Giuliani's compliance with RFPs 40 and 41 and address his continuing failure to timely reimburse plaintiffs' attorneys' fees and costs.  This rule permits the Court to "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" or "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" for failing to comply with a discovery order.  FED. R. CIV. P. 37(b)(2)(A)(i), (ii).  First, Giuliani is precluded from relying on any evidence relating to his net worth that he has failed to produce, by September 20, 2023, to plaintiffs in records responsive to RFPs 40 and 41.  Second, as a sanction for failing to comply with, and instead ignoring, the June 22 and July 13 Orders, the jury will be instructed that they *must*, when determining an appropriate sum of punitive damages, infer that Giuliani is intentionally trying to hide relevant discovery about his financial

assets for the purpose of artificially deflating his net worth.  *See Motorola Credit Corp. v. Uzan*, 509 F.3d 74, 84 (2d Cir. 2007) (upholding district court's issuance of adverse inference against defendant that refused to turn over net worth discovery).

While "[c]ase law overwhelmingly favors using a permissive rather than mandatory instruction," in special circumstances "a stronger inference" may be warranted.  *Beck*, 289 F.R.D. at 380 (collecting cases).  In *Beck v. Test Masters Educational Services, Inc.*, for example, a permissive rather than mandatory adverse evidentiary inference was imposed for the defendant's spoliation of evidence because "the Court [did] not find intentional misconduct, but only gross negligence or recklessness on the part of" the defendant.  *Id.* at 379–80.  By contrast, Giuliani's willful withholding of relevant financial records provides the "special circumstances counseling for a stronger inference" because the only conclusion that could be drawn from this discovery deficiency is that Giuliani is intentionally trying to hide information about his net worth.  *See id.* at 380.

For these reasons, Giuliani's failure to comply with the June 22 and July 13 Orders will result in a mandatory instruction about his concealment of his net worth, though should he provide fulsome responses to plaintiffs' RFPs 40 and 41 by September 20, 2023, the mandatory instruction may be converted to permissive.  Giuliani will still be precluded from relying on any evidence responsive to RFPs 40 and 41 that he fails to turn over to plaintiffs by September 20, 2023.

### 4.  Plaintiffs Are Entitled to Certain Discovery, Limited 30(b)(6) Depositions, and Attorneys' Fees from the Giuliani Businesses

Even with entry of default against Giuliani, plaintiffs maintain that their entitlement to discovery and 30(b)(6) depositions from the Giuliani Businesses, which relief was requested in their granted-as-conceded Businesses Motion but reserved pending resolution of plaintiffs' instant motions for sanctions.  *See supra* Section I.C.

First, plaintiffs assert that they are entitled to the "documents showing metrics and income generated from [Giuliani's podcast] *Common Sense*, particularly those episodes that contain" false statements made against plaintiffs by Giuliani "because such evidence 'is probative of . . . the quantification of damages.'"  Aug. 4 JSR at 20 (second alteration in original) (quoting Pls.' Giuliani Businesses Mot. at 9); *see also supra* n.7.  This requested documentation of viewership metrics and income generated are plainly relevant to the quantification of punitive damages because the "pressure to produce sensationalistic or high-impact stories with little or no regard for their accuracy would be probative of actual malice." *Tavoulareas v. Piro*, 817 F.2d 762, 796–97 (D.C. Cir. 1987) (emphasis omitted).  Giuliani's viewership and revenue information, particularly for episodes containing false statements concerning plaintiffs, may show that Giuliani purposefully spread false claims about plaintiffs to enrich himself, evincing the type of outrageous conduct that would justify a significant award of punitive damages.  *See Chatman v. Lawlor*, 831 A.2d 395, 400 (D.C. 2003) (explaining that punitive damages are warranted when the defendant engaged in "outrageous conduct which is malicious, wanton, reckless, or in willful disregard for another's rights") (quoting *Vassiliades v. Garfinckel's, Brooks Brothers, Miller & Rhoades, Inc.*, 492 A.2d 580, 593 (D.C. 1985)).  Giuliani's only objection to this additional discovery is that "discovery from the Businesses is now moot" because of his stipulation conceding liability on punitive damages, Aug. 4 JSR at 20, but this is a misfire since the quantification of a punitive damages award will turn on an assessment of the willfulness of Giuliani's conduct.  Plaintiffs are thus still entitled to these records from the Giuliani Businesses.

Second, plaintiffs still seek "30(b)(6) depositions of the Giuliani Businesses, for which to date Defendant Giuliani has failed to identify a corporate representative." Aug. 4 JSR at 20; *accord* Pls.' Giuliani Businesses Motion at 9.  Under applicable procedural rules, entities, such as the

Giuliani Businesses, when served with a Rule 30(b)(6) subpoena, "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." FED. R. CIV. P. 30(b)(6). "Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination." *Id.*; *see Alexander v. FBI*, 186 F.R.D. 137, 140 (D.D.C. 1998) ("Under Rule 30(b)(6), once plaintiffs noticed the deposition and described the subject matter to be inquired upon with reasonable particularity, a number of duties were triggered that must be met by" the defendant, including to designate a deponent). Plaintiffs filed their Giuliani Businesses Motion only after serving the Giuliani Businesses with Rule 30(b)(6) deposition subpoenas and receiving no reply from either business. *See* Pls.' Giuliani Businesses Motion at 1–2. Accordingly, the Giuliani Businesses will be required to designate corporate representative(s) to sit for Rule 30(b)(6) deposition(s), though the topics will now be limited to those concerning the quantification of damages, given entry of default as to Giuliani's liability for plaintiffs' claims and punitive damages.

Third, with respect to attorneys' fees owed to plaintiffs under the July 26 Order, plaintiffs agree with Giuliani that the corporate veil between Giuliani and his businesses need not be pierced, *see* Giuliani Obj. at 2 (noting that Giuliani "objects to the imposition of any attorneys' fees or sanctions against him for the discovery conduct of his eponymous entities"); Pls.' Resp. at 2, and request that the July 26 Order be modified to direct the Giuliani Businesses to pay the $43,684 in attorneys' fees owed, with Giuliani held "personally responsible" only if his eponymous businesses do not comply. Pls.' Resp. at 2–3. Given the parties' agreement on this point, the July 26 Order will be so amended and direct the Giuliani Businesses to reimburse plaintiffs for the $43,684 in attorneys' fees owed. *See id.* at 2–4. Plaintiffs believe that the Businesses likely have

sufficient funds to reimburse plaintiffs for the fees owed because the *Common Sense* podcast, which is operated by Giuliani Communications, derives compensation based on advertising on a "per-view basis" and the reach of this podcast is, according to Giuliani, "over a million people[.]" Pls. Giuliani Businesses Mot., Revised Decl. of Meryl Governski, Ex. 5, March 1, 2023 Giuliani Dep. Tr. at 31:23–33:25, ECF No. 70-7.[11]  The July 26 Order will thus be amended to require the Businesses to reimburse plaintiffs for these attorneys' fees.

Giuliani will be directed to ensure his businesses fulfill their court-ordered discovery obligations.  As plaintiffs correctly point out, Pls.' Resp. at 2–4 & n.2, 3, courts have routinely directed a corporation's officers to obey court orders and imposed sanctions on those officers when their entities failed to comply.  *See, e.g., Secs. & Exch. Comm'n v. Diversified Growth Corp*, No. 81-0084, 1984 WL 21134, at *1 (D.C. Cir. Sept. 24, 1984) (affirming district court's holding of non-party corporate officer in contempt for violating a court order directed at the corporate party "because appellant is an officer of a party corporation receiving actual notice of the order, who has personally abetted that party and has had his day in court") (citation omitted); *Fed. Trade Comm'n v. Leshin*, 618 F.3d 1221, 1236 (11th Cir. 2010) (holding individual officers jointly and severally liable, along with defendant corporation, for violating an injunction); *In re Special Couns. Investigation*, 374 F. Supp. 2d 238, 241–42 (D.D.C. 2005) (observing that that the corporate defendant "as well as its controlling officers, have no legal right to defy a final court order, and an officer failing to take steps to have the corporation comply could be punished by contempt").  In his position as the sole owner of the Giuliani Businesses, Third Giuliani Decl. ¶¶ 2-3, which have just two other employees apart from Giuliani, *id.* ¶¶ 6-7, Giuliani is directed, on behalf of his

---

[11]      Notwithstanding plaintiffs' belief, whether the Giuliani Businesses themselves have sufficient assets to cover plaintiffs' owed attorneys' fees remains to be seen since Giuliani maintained in his Third Declaration that his eponymous businesses have no assets other than media equipment.  Third Giuliani Decl. ¶¶ 10-11.

Businesses, by September 20, 2023, to produce the requested records from his Businesses and designate one or more corporate representatives on behalf of each of the Giuliani Businesses to sit promptly for deposition(s).  For the same reasons, Giuliani will also be directed, by September 20, 2023, to ensure his eponymous businesses reimburse plaintiffs the $43,684 in attorneys' fees they owe.  Should he fail to make his Businesses timely pay their fees owed, however, Giuliani will be sanctioned, pursuant to Rule 37(b)(2)(A), by being held personally liable for the $43,684 in attorneys' fees owed, which amount will be added onto the final judgment against him, plus interest accrued from September 20, 2023 until the date of final judgment.  *See* FED. R. CIV. P. 37(b)(2)(A) ("If a party *or a party's officer, director, or managing agent* . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.") (emphasis added); *see also Wisconsin Laborers Health Fund v. Final Result LLC*, No. 12-CV-129-JPS, 2013 WL 587467, at *1 (E.D. Wis. Feb. 13, 2013) (holding the defendant's corporate representative "personally liable for any attorneys['] fees and costs incurred by the plaintiffs" because "[c]ontempt by a corporation is chargeable to the officers responsible for the contempt").[12]

For these reasons, the Giuliani Businesses must, by September 20, 2023, produce responsive discovery concerning viewership metrics and income generated, designate corporate representative(s) to sit for Rule 30(b)(6) deposition(s), which must occur promptly, and reimburse

---

[12]     Giuliani cites the Fourth Circuit's decision in *Life Technologies Corp. v. Govindaraj*, 931 F.3d 259 (2019), for the proposition that he should not be held liable for attorneys' fees owed by his eponymous businesses without a finding that the corporate veil between him and his businesses should be pierced, Def.'s Obj. at 2, but this non-binding circuit decision is distinguishable and unpersuasive for several reasons.  In *Life Technologies Corp.*, the Fourth Circuit reversed the district court's decision to hold a non-party corporate officer personally liable for the corporate defendant's trademark infringement after piercing the corporate veil between the two because the non-party officer "was not named as a party in the case, and he was not personally served with process[,]" so he was not given "adequate notice of [his] potential exposure" and "the opportunity to defend against personal liability." *Id.* at 265.  By contrast to the non-party officer in *Life Technologies Corp.*, not only is Giuliani a party to the case and was given adequate notice of his potential exposure here, but Giuliani will only be held personally responsible if his Businesses do not timely pay the fees they owe as a sanction under Rule 37(b)(2)(A), not under a theory of alter-ego liability.

plaintiffs the $43,684 in attorneys' fees owed under the July 26 Order, with Giuliani specifically directed to ensure the Businesses' compliance with each of these three directions.

## IV.    CONCLUSION

For the above reasons, plaintiffs' motion for sanctions for failure to preserve ESI is granted, and default judgment against Giuliani on plaintiffs' claims is imposed, as a sanction under both Federal Rules of Civil Procedure 37(e)(2)(C) and 37(b)(2)(A)(vi).  Before final judgment may be entered reflecting the amount of compensatory and punitive damages, if any, to be awarded to plaintiffs, a trial on such damages is required, *see* FED. R. CIV. P. 55(b)(2)(B), and the parties will be directed to confer and propose three dates for the damages trial by early 2024.

In preparation for a trial on damages, Giuliani and his eponymous businesses will be directed, again, to produce, by September 20, 2023, records relevant to the quantifications of damages that they were required, but still have failed, to produce.  First, Giuliani is directed to produce complete responses to plaintiffs' requests for financial documents, set out in plaintiffs' RFPs 40 and 41.  *See supra* n.4.  Second, Giuliani is directed to ensure the Giuliani Businesses produce complete responses to plaintiffs' requests for financial documents and viewership metrics, inclusive of records responsive to RFPs 19 and 35.  *See supra* n.7.  Third, Giuliani is directed, on behalf of his businesses, to confer with plaintiffs regarding the designation of one or more corporate representatives on behalf of the Giuliani Businesses to sit promptly for Rule 30(b)(6) deposition(s) on topics concerning the quantification of damages.  Finally, Giuliani's failure to comply with the June 22 and July 13 Orders will result in a mandatory instruction about his concealment of his net worth, though should he provide, by September 20, 2023, fulsome responses to plaintiffs' RFPs 40 and 41, the mandatory instruction may be converted to permissive.

With respect to Giuliani's obligations to reimburse plaintiffs' attorneys' fees and costs, Giuliani is directed: (1) to reimburse such fees and costs associated with plaintiffs' successful first motion to compel discovery, in the amount totaling $89,172.50, with interest on that amount from July 25, 2023; (2) to reimburse such attorneys' fees and costs associated with plaintiffs' motion for sanctions, pursuant to Rule 37(e); and (3) to ensure the Giuliani Businesses reimburse such fees and costs associated with plaintiffs' successful motion to compel discovery from the Businesses, in the amount totaling $43,684. Should the Giuliani Businesses fail to timely reimburse plaintiffs the $43,684, Giuliani will bear that cost as a sanction under Rule 37(b)(2)(A), with interest on that amount to accrue from September 20, 2023.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: August 30, 2023

**BERYL A. HOWELL**
United States District Judge