**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RUBY FREEMAN and WANDREA' MOSS,

                    Plaintiffs,

    v.                                       No. 23-cv-3754-BAH

RUDOLPH W. GIULIANI,

                    Defendant.

**<u>PLAINTIFFS' MOTION FOR CIVIL CONTEMPT</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION ............................................................................................................ 1

BACKGROUND .............................................................................................................. 2

ARGUMENT ................................................................................................................... 6

    I.   Giuliani Has Violated the Clear and Unambiguous Terms of the Consent
        Injunction. .............................................................................................................. 6

    II.  The Court Should Enter Civil Contempt Sanctions to Ensure Future
         Compliance with the Consent Injunction. ............................................................. 9

CONCLUSION ................................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)................................................................................................................6

*In re Fannie Mae Sec. Litig.*,
    552 F.3d 814 (D.C. Cir. 2009) ............................................................................................9

*Freeman v. Giuliani*,
    691 F. Supp. 3d 32 (D.D.C. 2023) ......................................................................................2

*Freeman v. Giuliani*,
    No. 21-cv-3354 (BAH), 2024 WL 1616675 (D.D.C. Apr. 15, 2024)....................................2

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
    512 U.S. 821 (1994) .............................................................................................................9

*Landmark Legal Found. v. EPA*,
    272 F. Supp. 2d 70 (D.D.C. 2003) ......................................................................................9

*Salazar ex rel. Salazar v. District of Columbia*,
    602 F.3d 431 (D.C. Cir. 2010) ..........................................................................................10

*In re Sealed Case*,
    932 F.3d 915 (D.C. Cir. 2019) ............................................................................................6

*Shillitani v. United States*,
    384 U.S. 364 (1966).............................................................................................................6

*United States v. United Mine Workers of Am.*,
    330 U.S. 258 (1947).............................................................................................................9

Plaintiffs Ruby Freeman and Wandrea' Moss ("Plaintiffs") respectfully move for an order holding Defendant Rudolph W. Giuliani in contempt for violations of the Final Consent Judgment and Permanent Injunction, ECF No. 16 (the "Consent Injunction"), and imposing civil contempt sanctions.

## INTRODUCTION

In his latest act of defiance of court orders, and continued defamation of Plaintiffs, Defendant Rudolph W. Giuliani has clearly violated a permanent injunction—an injunction *to which he consented to* less than one year ago—prohibiting him from repeating his false and defamatory lies about Plaintiffs. Accordingly, the Court should hold him in contempt and enter civil contempt sanctions.

Nearly four years ago, Mr. Giuliani launched a defamatory campaign falsely accusing Plaintiffs of committing election fraud in connection with the 2020 election, the result of which was emotional and reputational harm so severe that a jury of Mr. Giuliani's peers awarded Plaintiffs $148 million in damages. In the aftermath of that verdict, Mr. Giuliani continued to repeat the same lies that had been adjudicated as false and defamatory. Plaintiffs brought this action to stop Mr. Giuliani from continuing this behavior, but Mr. Giuliani then filed for bankruptcy, which triggered an automatic stay of this case. While Mr. Giuliani's bankruptcy proceeding was ongoing, Mr. Giuliani continued to repeat his defamatory lies about Plaintiffs. Plaintiffs then brought an action in the Bankruptcy Court, and Mr. Giuliani ultimately agreed to resolve that action by lifting the bankruptcy stay and consenting to a permanent injunction in *this* Court barring him from making further claims that Plaintiffs had "engaged in wrong-doing in connection with the 2020 presidential election" or repeating the same or similar statements for which he had been held liable in the first litigation.

Mr. Giuliani is now brazenly violating that Consent Injunction. In two recent broadcasts of his nightly show, Mr. Giuliani claimed—unambiguously referring to Plaintiffs—that "they never let me show the tapes **that show them quadruple counting the the the ballots**," that his tapes showed Plaintiffs "**passing these little uh little hard drives that we maintain were used to fix the machines** right and they say it was candy. Well you look at it looks like a hard drive to me and they told me it was a hard drive and there's no proof that it was candy," and that "**you can see if you want uh in living color her quadruple counting votes** and the people uh thrown out of the Arena." These statements repeat the exact same lies for which Mr. Giuliani has already been held liable, and which he agreed to be bound by court order to stop repeating. They constitute unambiguous violations of the Consent Injunction. The Court should hold Mr. Giuliani in civil contempt and—following a hearing, if necessary—impose sanctions calculated to ensure Mr. Giuliani's compliance with the Consent Injunction.

## **BACKGROUND**

The background to this litigation has been summarized at length in the Court's prior opinions in this and the related case. *See, e.g.*, ECF No. 16; *Freeman v. Giuliani*, No. 21-cv-3354 (BAH), 2024 WL 1616675 (D.D.C. Apr. 15, 2024); *Freeman v. Giuliani*, 691 F. Supp. 3d 32 (D.D.C. 2023).[1] Here, Plaintiffs only briefly summarize the facts relevant to this motion.

Mr. Giuliani started lying about Plaintiffs in December of 2020, and refused to stop after repeatedly being told that his election-rigging conspiracy theory about Plaintiffs was baseless, malicious, and dangerous.[2] Given all that has transpired since then, one might have thought that Mr. Giuliani would have stopped, and moved on to other pursuits during his ample time online.

---

[1] *See also Freeman et al. v. Giuliani,* No. 21-cv-3354 (D.D.C.) ("*Freeman I*"), ECF Nos. 1, 22, 93, 94, 102, 103.

[2] Further, Plaintiffs assume familiarly with the factual background of *Freeman I*.

But even after Mr. Giuliani twice stipulated that the "actionable statements" challenged in *Freeman I* "were false" on July 25, 2023 and August 8, 2023[3]; after this Court entered default judgment on liability on August 30, 2023[4]; and after a jury returned an award of compensatory and punitive damages on December 15, 2023,[5] Mr. Giuliani continued to publish the same defamatory lies about Plaintiffs, necessitating the filing of this action. As though that were not enough, Mr. Giuliani continued the same behavior during his short-lived bankruptcy case. *Freeman I*, ECF No. 103-2 (detailing Mr. Giuliani's statements after July 25, 2023); *In re Giuliani*, 23-12055 (Bankr. S.D.N.Y.), ECF No. 218 (detailing Mr. Giuliani's statements between the verdict in *Freeman I* and the adversary complaint filed in the bankruptcy case). On May 21, 2024, Plaintiffs had reason to believe Mr. Giuliani's lies would permanently cease, because he "consent[ed] to entry of final judgment and permanent injunctive relief in favor of Plaintiffs" in this action. ECF No. 14 (the "Joint Stipulation") ¶ 3. He further agreed to be bound by a permanent injunction prohibiting him from repeating the same or similar statements to the statements adjudged to be false and defamatory in *Freeman I*. ECF Nos. 14-2 ¶ 3.

On May 22, 2024, this Court entered final judgment, including the permanent injunctive relief and permanently enjoined Defendant Giuliani from

> publishing, causing others to publish, and/or assisting in others' publication of (a) any statements that suggest that Plaintiffs, whether mentioned directly, indirectly, or by implication, engaged in wrong-doing in connection with the 2020 presidential election, or (b) any of the Actionable Statements adjudged false and defamatory in Freeman I, or any other statements conveying the same defamatory meaning.

---

[3] *Freeman I*, ECF Nos. 84-2, 90.

[4] *Freeman I*, ECF No. 94.

[5] *Freeman I*, ECF No. 135.

Consent Injunction at 5. The Court also retained jurisdiction to enforce the Consent Injunction. ECF No. 16. Mr. Giuliani agreed to the Joint Stipulation and "voluntarily, knowingly, and irrevocably waiv[ing] any right of appeal from entry" of the Consent Injunction, as well as "any challenge to the validity" of the Consent Injunction, *id.* at 4.

It took only six months for Mr. Giuliani to resume his defamatory campaign. As Plaintiffs continued their efforts to enforce this Court's judgment in the Southern District of New York, on November 12, 2024, Defendant Giuliani aired an episode of his livestream program *America's Mayor Live*, titled *America's Mayor Live (537): Live Coverage of Trump Transition 2024: Day 7*, and stated:

> Now if you wanted me to make out a check to pay my bills, I can't do it because of judge um [off screen voice: Liman] Judge Liman and and the Biden uh the Biden people who are **behind the case of the two women**…You didn't have $145 million in damages. **In fact there's, there's video of you doing what I said. We can play it for you if you want.** You framed me. You had a judge whose a bloodthirsty uh uh um January 6 sentencer, the biggest January 6 sentencer who told the other judges they weren't giving strong enough sentences. She figured out a way to manipulate it so I never got a trial on liability, I never got a trial on damages. You never proved damages and you got $145 million, so I'm appealing it. You would think that they wouldn't be allowed to take all my property until the thing was affirmed on appeal and **I got a chance to show them that they never let me show them the tapes that show them quadruple counting the the the ballots.** Oh they say the machine was uh was um blocked or or there was bad, but nobody comes to fix it. Anyway uh when you look at it I'm entitled to that interpretation. I mean that's one of the things it looks like. Okay I'm a lawyer I put it in evidence and I I can ask you to interpret it that way, that's the way I interpret it. **And then then another one is uh they're passing these little uh little hard drives that we maintain were used to fix the machines right** and they say it was candy. **Well you look at it looks like a hard drive to me and they told me it was a hard drive** and there's no proof that it was candy.

Declaration of M. Annie Houghton-Larsen ("Houghton-Larsen Decl.") ¶ 6, Ex. 1 at 1:16:24–1:19:12 (emphasis added). Later in the same episode, Defendant Giuliani seemed to acknowledge that he was further defaming Plaintiffs, stating:

"Right now now they they they want to take $145 million for **my telling the truth. I'm sorry they're going to sue me again for saying it but what am I going to do but tell the truth.**"

*Id.* at 1:27:12–1:27:29 (emphasis added) (collectively, the "November 12 Statements").[6]

Defendant Giuliani published this episode on multiple platforms, including but not limited to

Twitter/X and Facebook.[7]

On November 14, 2024, Defendant Giuliani aired another episode of *America's Mayor Live*, titled *America's Mayor Live (539): Live Coverage of Trump Transition 2024: Day 9*, where he again accused Plaintiffs of wrong-doing in the 2020 presidential election. Houghton-Larsen Decl. ¶ 7, Ex. 2. He said:

and **these women where you you can see if you want uh in living color her quadruple counting votes and the people uh thrown out of the Arena like I said**, and I can show you a doctor tape yet they got $145 million and I wasn't able to put in a defense to the damages. And 145 million **even if I had done what they said, which the video contradicts**, 145 million?"

---

[6] The November 12 Statements are not the first instance of Defendant Giuliani maligning Plaintiffs after the Court entered the Consent Injunction. In the month of November alone, Defendant Giuliani reposted the State Farm Arena Video twice. *See* Rudy W. Giuliani, (@RudyGiuliani) X (Nov. 12, 2024, 12:48 PM) (https://x.com/RudyCommon/status/1856393560192626709); Rudy W. Giuliani, (@RudyGiuliani) X (Nov. 12, 2024, 1:39 PM) (https://x.com/CPTCforSC/status/1856406601432797246). On November 7, 2024, he denied defaming Plaintiffs whatsoever when a reporter asked if Defendant had "any regrets about defaming Ruby Freeman and Shaye Moss," Defendant Giuliani replied: "No, I did not. First of all, I didn't defame them. I did not defame them." Molly Crane-Newman (@molcranenewman) X (Nov. 7, 2024 2:01 PM) (https://x.com/molcranenewman/status/1854600112733143298). On November 13, 2024, he reposted an X post that stated "Rudy needs help. He's facing political prosecution for uncovering facts about 2020. Allowing those individuals in Georgia to file for defamation when they should be imprisoned is insane." Rudy W. Giuliani, (@RudyGiuliani) X (Nov. 13, 2024 8:43 PM) (https://x.com/Stugotz_Returns/status/1856694278325506367).

[7] Rudy W. Giuliani, America's Mayor Live, *America's Mayor Live (537): Live Coverage of Trump Transition 2024: Day 7* (@RudyGiuliani) X (Nov. 12, 2024, 8:00 PM) (https://x.com/RudyGiuliani/status/1856502420861546679); Rudy W. Giuliani, America's Mayor Live, *America's Mayor Live (537): Live Coverage of Trump Transition 2024: Day 7*, Facebook (Nov. 12, 2024, 5:00 PM PT) (https://www.facebook.com/realrudygiuliani/videos/americas-mayor-live-537-live-coverage-of-trump-transition-2024-day-7/1590363961687730).

*Id.* at 1:00:50–1:01:32 (emphasis added) (the "November 14 Statement"). Defendant Giuliani also published this episode across multiple platforms, including but not limited to Twitter/X and Facebook.[8] As of the date of filing, both the November Statements remain available on Defendant Giuliani's various platforms.

## ARGUMENT

### I.    Giuliani Has Violated the Clear and Unambiguous Terms of the Consent Injunction.

Giuliani's November 12 and November 14 Statements are unambiguous violations of the Consent Injunction, and the Court should hold him in civil contempt. Inherent to this Court's authority is the power to enforce compliance with its own orders. "[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Civil contempt will lie where "the putative contemnor has violated an order that is clear and unambiguous, and the violation [is] . . . proved by clear and convincing evidence. *In re Sealed Case*, 932 F.3d 915, 939 (D.C. Cir. 2019).

Both standards are easily met here. The Consent Injunction defines the conduct it prohibits in "clear and unambiguous" terms: under the terms of the injunction, Giuliani may not publish, cause others to publish, or assist others in publishing (1) "any statements that suggest that Plaintiffs, whether mentioned directly, indirectly, or by implication, engaged in wrong-doing in connection with the 2020 presidential election;" or (2) "any of the Actionable Statements adjudged

---

[8] Rudy W. Giuliani, America's Mayor Live, *America's Mayor Live (539): Live Coverage of Trump Transition 2024: Day 9* (@RudyGiuliani) X (Nov. 12, 2024, 8:00 PM) (https://x.com/RudyGiuliani/status/1857227407377514557); Rudy W. Giuliani, America's Mayor Live, *America's Mayor Live (539): Live Coverage of Trump Transition 2024: Day 9*, Facebook (Nov.          14,          2024,          8:00          PM          ET) (https://www.facebook.com/realrudygiuliani/videos/1859534817913192).

false and defamatory in *Freeman I*—defined as "the statements set forth in Appendix A" to the parties' Joint Stipulation—"or any other statements conveying the same defamatory meaning." ECF No. 16 at 4–5.

The November 12 and November 14 statements clearly violate that "clear and unambiguous" order, and Giuliani knew it. *See* Rudy W. Giuliani, *America's Mayor Live*, *America's Mayor Live (539): Live Coverage of Trump Transition 2024: Day 9*, Facebook, at 1:27:12–1:27:29    (Nov.    14,    2024,    8:00    PM    ET) (https://www.facebook.com/watch/live/?ref=watch_permalink&v=1859534817913192) (declaring that he was "telling the truth," and that "*they're going to sue me again for saying it*") (emphasis added).[9] The statements (again) falsely accuse Plaintiffs of wrong-doing in the 2020 presidential election, specifically counting the same ballots multiple times,[10] using a hard drive to manipulate voting machines,[11] and throwing people and observers out of State Farm Arena while it served as a ballot tabulating center.[12] ECF No. 16 at 5. Further, to use Giuliani's own words, the November Statements accuse Plaintiffs of "doing what [he] said" in the Actionable Statements that he agreed to refrain from repeating, whether directly or indirectly by making statements "conveying the same defamatory meaning."[13] ECF No. 16 at 7–13.

Indeed, these latest statements merely regurgitate the same exact lies that Giuliani has been spreading for years, as summarized in the list of "Actionable Statements" that Giuliani agreed not

---

[9] Ex. 1 at 1:27:12–1:27:29.

[10] Ex. 1 at 1:18:24–1:18:30; Ex. 2 at 1:00:50–1:01:01.

[11] Ex. 1 at 1:18:56–1:19:04.

[12] Ex. 2 at 1:01:01–1:01:07.

[13] Ex. 1 at 1:17:38–1:17:42. *See also* Ex. 2 at 1:00:52–1:01:07 ("and these women where you you can see if you want uh in living color her quadruple counting votes and the people uh thrown out of the Arena *like I said*.") (emphasis added).

to repeat in the Consent Injunction. For years, Defendant Giuliani falsely claimed Plaintiffs counted ballots multiple times at State Farm Arena on Election Night 2020.[14] On November 12 and 14, 2024, he discussed the Plaintiffs—identified as women with a $145 million judgment against him[15]—and again falsely stated he that he possessed "the tapes that show them quadruple counting the the the ballots"[16] and that "you can see if you want uh in living color her quadruple counting votes[.]"[17] Likewise, Giuliani repeated the lie that Plaintiffs used a flash drive to infiltrate voting machines in State Farm Arena time and time again.[18] On November 12, 2024, Giuliani repeated this lie once more, saying "another one is uh they're passing these little uh little hard drives that we maintain were used to fix the machines[.]"[19] Finally, the Actionable Statements include multiple examples of Defendant Giuliani accusing Plaintiffs of throwing people— sometimes identified as election observers—out of State Farm Arena.[20] On November 14, 2024,

---

[14] ECF No. 16 at 7 ("it appears that they were being counted more than one time—three, four, five, six, seven times, eight times"); at 8 ("We can see them counting it four and five times"); and at 10 ("you can see them multiple count a vote"); ("they're shoving the thing into the machine three and four times so they can be recounted by the same two women").

[15] Ex. 1 at 1:17:00–1:17:35; Ex. 2 at 1:00:52–1:00:54; 1:01:10–1:01:13.

[16] Ex. 1 at 1:17:00–1:17:35; 1:18:24–1:18:30.

[17] Ex. 2 at 1:00:50–1:01:01.

[18] ECF No. 16 at 7 ("Election Official Ruby Freeman is seen surreptitiously & illegally handing off hard-drives ON CAMERA in the Georgia counting facility"), at 9–10 ("You can see them do it. They lied about it. Then you can see these same people handing off flash drives to each other…there are other tapes of them earlier in the day, handing off—handing off small, hard drives and flash drives, those flash drives were used to put in the machines") and at 10 ("two women that earlier in the day were passing around hard drives or flash drives that supposedly can't be used in Dominion machines, but can").

[19] Ex. 1 at 1:18:56–1:19:04.

[20] ECF No. 16 at 7 ("You have to be a naive child or a completely dishonest partisan not to realize that the observers are being thrown out of the room. A phony excuse of a water main break was used. They still were thrown out of the room"); at 8 ("We can see them throwing out the people"); at 9–110 ("They deliberately threw people out and counted the ballots in private, and there's videotape of it . . . that videotape is absurd because you can see them—you can see them throw the people out. And the law specifically says you can't count in private, so they threw the people

Defendant Giuliani made this false accusation again and claimed footage showed "these women…
in living color . . . and the people uh thrown out of the Arena *like I said*."[21] The evidence of
Giuliani's violations is not just "clear and convincing," it is overwhelming.

## II.  The Court Should Enter Civil Contempt Sanctions to Ensure Future Compliance with the Consent Injunction.

The Court should exercise its inherent power to enforce compliance with the Consent
Injunction by finding Defendant Giuliani in contempt and entering appropriate civil contempt
sanctions—after a hearing, if necessary. Civil contempt sanctions are appropriate to "coerce the
defendant into compliance with the court's order, or compensate the complainant for losses
sustained." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994)
(cleaned up); *see In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 823 (D.C. Cir. 2009) ("The sanction
was a proper exercise of the district court's contempt power because it coerced compliance with
the stipulated order and compensated the individual defendants for the delay they suffered."). A
court may also award attorneys' fees and expenses. *Landmark Legal Found. v. EPA*, 272 F. Supp.
2d 70, 86 (D.D.C. 2003).

Here, the Court should impose a civil contempt sanction "calibrated to coerce compliance"
with the Consent Injunction. *In re Fannie Mae Sec. Litig.*, 552 F.3d at 823; *see United States v.
United Mine Workers of Am.*, 330 U.S. 258, 304 (1947) (in fixing a civil contempt sanction, the
Court should "consider the character and magnitude of the harm threatened by continued
contumacy, and the probable effectiveness of any suggested sanction in bringing about the result
desired."). In particular, the Court should enter an order that "put[s] [Giuliani] on notice that [he]

---

out"); and at 11 ("tapes of this very suspicious activity where the people were thrown out of the
arena, the observers.").

[21] Ex. 2 at 1:00:50–1:01:07 (emphasis added).

[will] be fined for any such conduct that occur[s]" in the future, and fixes amounts for such fines that are tailored to that purpose. *Salazar ex rel. Salazar v. District of Columbia*, 602 F.3d 431, 438 (D.C. Cir. 2010).

Fixing the appropriate sanction—particularly fixing an amount sufficiently "calibrated" to coerce Giuliani's compliance with the Consent Injunction, in light of his demonstrated willingness to repeatedly violate court orders—may require factfinding by this Court after an evidentiary hearing. Plaintiffs therefore propose that the Court hold Mr. Giuliani in contempt for his indisputable violations of the Consent Injunction, and schedule a prompt hearing to determine the appropriate civil contempt sanction. In advance of such a hearing, Plaintiffs will be prepared to submit evidence relevant to the appropriate civil contempt sanction, including but not limited to evidence relating to Mr. Giuliani's financial condition, as well as evidence of judgment-proof assets that has emerged since the Court last confronted this case.

## CONCLUSION

The Court should hold Mr. Giuliani in civil contempt for violating the clear and unambiguous terms of the Consent Injunction, and hold a hearing to determine the appropriate civil contempt sanction to coerce Mr. Giuliani's compliance with the Consent Injunction going forward.

Dated: November 20, 2024

Respectfully submitted,

By: */s/ Michael J. Gottlieb*
Michael J. Gottlieb (974960)
Meryl C. Governski (1023549)
**WILLKIE FARR & GALLAGHER LLP**
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan (1047269)
M. Annie Houghton-Larsen*
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8904
anathan@willkie.com
mhoughton-larsen@willkie.com

Rachel Goodman*
**UNITED TO PROTECT DEMOCRACY, INC.**
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
rachel.goodman@protectdemocracy.org

Von A. DuBose*
**DUBOSE MILLER LLC**
75 14th Street NE, Suite 2110
Atlanta, Georgia 30309
Tel: (404) 720-8111
dubose@dubosemiller.com

*Admitted pro hac vice*

***Counsel for Plaintiffs***