**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RUBY FREEMAN AND WANDREA' MOSS,

      Plaintiffs,

v.

RUDY GIULIANI

      Defendant.

Case No. 23-cv-3754
Honorable Beryll Howell

**OPPOSITION TO PLAINTIFF'S MOTION FOR CIVIL CONTEMPT**

EDEN P. QUAINTON, ESQ.
QUAINTON LAW, PLLC
D.C. Bar No. NY0318
2 Park Ave., 20th Fl.
New York, New York 10016
Telephone: (212) 419-0575
Eden.quainton@quaintonlaw.net

JONATHAN S. GROSS, ESQ.
LAW OFFICES OF JONATHAN GROSS
D.C. Bar No. MD0126
2833 Smith Ave., Suite 331
Baltimore, MD 21209
Telephone: (443) 813-0141
jonathansgross@gmail.com

*Attorneys for Defendant Rudy Giuliani*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 1

LEGAL STANDARD............................................................................................... 4

LEGAL ARGUMENT .............................................................................................. 6

   I.    PLAINTIFFS HAVE NOT PRESENTED CLEAR AND CONVINCING EVIDENCE THAT GIULIANI VIOLATED A COURT ORDER ........................... 6

      A.   Plaintiffs' Examples of Alleged Violations Do Not Satisfy Their Burden.................... 7

         1.   Footnote 10. ................................................................................... 7

         2.   Footnote 11. ................................................................................... 9

         3.   Footnote 12. ................................................................................. 10

         4.   Additional "evidence.".................................................................. 10

   II.   GIULIANI HAS BEEN IN GOOD FAITH SUBSTANTIAL COMPLIANCE WITH THE CONSENT JUDGMENT................................................................. 13

      A.   Substantial Compliance. ..................................................................... 13

      B.   Good Faith. ........................................................................................ 16

   III.   TO THE EXTENT THE COURT BELIEVES THERE WAS A TECHNICAL VIOLATION OF THE CONSENT JUDGMENT, THE PROPER REMEDY AT THIS JUNCTURE IS TO ENTER A CONDITIONAL ORDER WITH A PENALTY IF PURGATION CONDITIONS ARE NOT MET.................................................. 17

CONCLUSION........................................................................................................ 18

# TABLE OF AUTHORITIES

## Cases

*Air Wisconsin Airlines Corp. v. Hoeper*,
    571 U.S. 237 (2014).................................................................................................... 9

*Arizona v. Ward, et al.*,
    CR 2024-006850............................................................................................................ 8

*Armstrong v. Exec. Office of the President*,
    1 F.3d 1274, 1289 (D.C.Cir.1993) ................................................................................ 4

*Balla v. Idaho State Bd. of Corrections*,
    869 F.2d 461 (9th Cir.1989) ......................................................................................... 5

*Black v. Nat'l Football League Players Ass'n*,
    87 F. Supp. 2d 1 (D.D.C. 2000) ................................................................................... 6

*Brown v. Collins*,
    402 F.2d 209 (D.C.Cir.1968) ................................................................................. 8, 16

*Casale v. Kelly*,
    710 F. Supp. 2d 347 (S.D.N.Y. 2010) ......................................................................... 5

*Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*,
    117 F. Supp. 3d 22 (D.D.C. 2015) ............................................................................... 5

*De Simone v. VSL Pharms., Inc.*,
    36 F.4th 518 (4th Cir. 2022) ........................................................................................ 5

*Emuveyan v. Ewing*,
    No. 2:19-CV-00616, 2022 WL 1211514 (D. Utah Apr. 25, 2022)............................... 5

*F.T.C. v. Lane Labs-USA, Inc.*,
    624 F.3d 575 (3d Cir. 2010*)*........................................................................................ 5

*Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*,
    774 A.2d 332, 338 (D.C.2001)................................................................................ 7, 16

*Freeman II* ................................................................................................................... 2, 3

*Freeman v. Giuliani*, 24-mc-353-LJL............................................................................ 15

*Freeman v. Giuliani*, Case No. 1:21-cv-3354 ..................................................... passim

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1974) ........................................................................................................ 8

*Hauck Mfg. Co. v. Astec Indus., Inc.,*
    No. 1:03-CV-166, 2004 WL 3396122 (E.D. Tenn. Oct. 14, 2004) ................................. 5

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.,*
    10 F.3d 693 (9th Cir. 1993) ........................................................................................... 5

*In re Giuliani*, 1:24-mc-353-LJL ........................................................................................... 15

*In re Giuliani,* No. 23-12055-SHL (Bankr. S.D.N.Y.) ............................................................ 2

*In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121 (D.C. Cir. 2020)
    .................................................................................................................................... 10

*In re Sealed Case,*
    77 F.4th 815 (D.C. Cir. 2023) ............................................................................... 4, 6, 17

*In re Smothers*,
    322 F.3d 438 (6th Cir. 2003) ....................................................................................... 18

*Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC,*
    736 F.Supp.2d 35 (D.D.C.2010) .................................................................................. 4, 5

*Johnson v. Metro. Direct Prop. & Cas. Ins. Co.*,
    No. CV 18-1715 (JEB), 2019 WL 176851 (D.D.C. Jan. 11, 2019) ................................. 6

*Langton v. Johnston,*
    928 F.2d 1206 (1st Cir. 1991) ......................................................................................... 5

*Lewis v. Elliott,*
    628 F. Supp. 512 (D.D.C.1986) ................................................................................. 8, 16

*Marsh v. Hollander*,
    339 F. Supp. 2d 1 (D.D.C. 2004) .............................................................................. 7, 16

*Milkovich v. Lorain J. Co.*,
    497 U.S. 1 (1990) ............................................................................................................ 8

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) ........................................................................................................ 8

*Nunes v. WP Co. LLC*,
    No. 1:21-CV-00506 (CJN), 2024 WL 3504066 (D.D.C. June 14, 2024) ......................... 4

*Philadelphia Newspapers, Inc. v. Hepps*,
    475 U.S. 767, 777 (1986) ................................................................................................ 8, 11

*Pinder v. Crowther*,
    No. 2:16-CV-189-DN, 2019 WL 1059967 (D. Utah Mar. 6, 2019) ................................. 13

*Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*,
    803 F.2d 1170 (Fed.Cir.1986) ............................................................................................ 4

*Searcy v. Smith*,
    111 F4th 111 (D.C. Circuit 2024) ...................................................................................... 6

*Secord v. Cockburn*,
    747 F. Supp. 779 (D.D.C. 1990) ........................................................................................ 8

*Sturdivant v. Seaboard Serv. Sys., Ltd.*,
    459 A.2d 1058 (D.C.1983) ............................................................................................ 8, 16

*United States v. Barnett*,
    346 F.2d 99 (5th Cir. 1965) ................................................................................................ 5

*United States v. Concord Mgmt. & Consulting LLC*,
    No. 18-CR-32-2 (DLF), 2019 WL 7758635 (D.D.C. July 1, 2019) ............................ 17, 18

*United States v. Latney's Funeral Home, Inc.*,
    41 F. Supp. 3d 24 (D.D.C. 2014) ....................................................................................... 5

*United States v. Montague*,
    40 F.3d 1251 (D.C. Cir. 1994) ........................................................................................... 4

*United States v. Shelton*,
    539 F. Supp. 2d 259 (D.D.C. 2008) ................................................................................... 5

*Wiggins v. Equifax*,
    848 F.Supp. 213 (D.D.C.1993) .......................................................................................... 6

*Wycoff v. Hedgepeth*,
    34 F.3d 614 (8th Cir. 1994) ................................................................................................ 5

*X Corp. v. United States*,
    No. 23-1264, 2024 WL 4426628 (U.S. Oct. 7, 2024) ........................................................ 5

*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987). ............................... 17

## **Statutes**

11 U.S.C. § 362(a) ................................................................................................................... 2

## **Treatises**

50 Am. Jur. 2d, *Libel and Slander* § 282 ................................................................. 16

## PRELIMINARY STATEMENT

After Defendant Rudy Guliani ("Defendant" or "Giuliani") made a handful of comments totaling less than two minutes – out of a podcast output involving hundreds of hours of online video – Plaintiffs immediately seized on these comments as violations of the consent judgment entered in this case. Without adequately analyzing the comments at issue, and thus failing to present clear and convincing evidence of a violation, and without considering Giuliani's substantial compliance with the consent judgment since its entry and the availability of the litigation privilege as a defense against liability, Plaintiffs rushed to hold Giuliani in civil contempt and assess sanctions against him. But, carefully assessed, Giuliani's comments do not violate a fair reading of the consent judgment, with which Giuliani, a prolific media personality, has been in good faith substantial compliance. Sanctions would in any event be inappropriate here because the proper remedy, if a violation were to be found, would be the entry of a conditional order only followed by sanctions upon violation of that order. The U.S. Supreme Court and the D.C. Circuit advocate restraint in the application of the court's power to act as judge and jury in the exercise of its contempt power. Nowhere is restraint more warranted than here, where Giuliani has scrupulously avoided any mention of the *Freeman I* litigation, except for the limited and vague 90-seconds at issue in this proceeding made in the context of Defendant's articulation of his position on appeal and thus protected by the litigation privilege.

## FACTUAL AND PROCEDURAL BACKGROUND

This case stems from a defamation case in this court, *Freeman v. Giuliani,* Case No. 1:21-cv-3354 ("*Freeman I"),* alleging that the Defendant Mayor Giuliani made defamatory statements accusing the Plaintiffs Ruby Freeman and Wandrea' Moss of committing election fraud. On June 6, 2022, Giuliani moved to dismiss, arguing, *inter alia,* that the statements at

issues were "protected opinion." *Freeman I,* Dkt. 26-2, at 14. The Court denied his motion. Dkt. 31. As a result of the denial of the Motion to Dismiss, the case proceeded to discovery. During the course of discovery, Plaintiffs filed a motion for sanctions against Giuliani, accusing him of spoliating evidence. Dkt. 81. Giuliani denied the allegation, but proposed to resolve both the discovery issue and the question of liability with the following stipulation:

> Out of abundance of caution, and to avoid any potential controversy, Giuliani has agreed to stipulate to the factual aspects of liability as to Plaintiffs claims, except damages, as such discovery or information would be solely in possession of Plaintiffs. *See* Giuliani Stipulation attached. While Giuliani does not admit to Plaintiffs' allegations, he – for purposes of this litigation only – does not contest the factual allegations. *See id.*

*Freeman I,* Dkt. 84, at 6.

The stipulation was filed on August 8, 2023. *Id.,* Dkt. 90. The Court was not swayed by Giuliani's stipulation.  On August 30, 2023, the Court granted Plaintiffs' motion for sanctions by imposing a default judgment on liability against Giuliani, leaving only the amount of compensatory and punitive damages to be tried by a jury. *Id.* Dkt. 94, at 56. After a five-day jury trial on damages concluding on December 15, 2023, the jury awarded to the Plaintiffs $148,206,113.00 in compensatory and punitive damages. On February 20, 2024, Giuliani filed a timely Notice of Appeal to the D.C. Circuit Court. *Id.* Dkt. 148.

Shortly after the jury trial concluded, on December 18, 2023, Plaintiffs filed the above-captioned lawsuit (hereafter *Freeman II*) seeking to enjoin Giuliani from repeating the statements about Plaintiffs that were at issue in *Freeman I.* At nearly the same time, on December 21, 2023, Giuliani filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York, which automatically stayed this action pursuant to 11 U.S.C. § 362(a). *In re Giuliani,* No. 23-12055-SHL (Bankr. S.D.N.Y.). On April 26, 2024, Giuliani filed a motion for relief from the automatic stay for the limited purpose of filing an appeal of this

Court's decision in *Freeman I. In Re Giuliani*, Dkt. 195-1. The Official Committee of Unsecured Creditors opposed Giuliani's motion. In addition to opposing the motion to lift the stay, on May 10, 2024, the *Freeman* I and II plaintiffs filed an adversary proceeding seeking to permanently enjoin Giuliani from repeating statements deemed defamatory in *Freeman I*, pending on appeal. *In re Giuliani*, Dkt. 218. On May 14, 2024, the Bankruptcy Court heard argument on Giuliani's motion to lift the stay and concluded that it was not in the best interests of moving the bankruptcy case forward to permit a lifting of the stay for purposes of perfecting the appeal. *In re Giuliani*, Dkt. 231 at 60. On May 21, Giuliani and the Freeman plaintiffs entered a joint stipulation terminating the adversary proceeding by means of the entry of a permanent injunction barring Giuliani from asserting that the *Freeman* plaintiffs had engaged in wrongdoing in connection with the 2020 election and repeating certain "Actionable Statements." *In re Giuliani*, Dkt. 229, Ex. B. On May 22, 2024, the *Freeman II* Plaintiffs then sought, and obtained, entry of a similar consent judgment before this court (hereafter, the "Consent Judgment"). Dkt. 16.[1]

Over the following five and a half months, Giuliani broadcast hundreds of hours of audio and video in three different podcasts, *America's Mayor Live*, the *Rudy Giuliani Show* and *Uncovering the Truth*, in undisputed full compliance with the Consent Judgment. On November 12, and November 14, 2024, during two separate hour and a half podcasts, Giuliani made a handful of comments, amounting to a total of 92 seconds, referencing his opinion that improper ballot counting had occurred at the State Farm Arena on election night, and his position on appeal that such opinion constitutes protected speech. On November 20, 2024, Plaintiffs filed

---

[1] On August 2, 2024, Giuliani's Chapter 11 bankruptcy case was dismissed, with a one-year bar on re-filing. *In re Giuliani*, Dkt. 309.

their Motion for Civil Contempt (the "Mot."), alleging that Giuliani's comments violated the Consent Judgment.

## LEGAL STANDARD

Courts have the inherent power to enforce compliance with their lawful orders through civil contempt. *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.,* 750 F. Supp. 2d 31, 34 (D.D.C. 2010). To prevail on a motion for contempt, the movant bears the burden of demonstrating that the alleged contemnor has violated a clear and unambiguous order with "clear and convincing evidence." *Guantanamera Cigar Co.,* 750 F. Supp. 2d at 34 (citations omitted); *see also N.L.R.B. v. Jackson Hosp. Corp.,* Misc. Action No. 07-549, 2011 WL 1833305, at *14 (D.D.C. May 13, 2011); *Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC,* 736 F.Supp.2d 35, 38 (D.D.C.2010) (citing *Armstrong v. Exec. Office of the President,* 1 F.3d 1274, 1289 (D.C.Cir.1993).

"Clear and convincing" evidence is evidence which permits the trier of fact to "reach a firm conviction of the truth on the evidence about which he or she is certain." *Nunes v. WP Co. LLC*, No. 1:21-CV-00506 (CJN), 2024 WL 3504066, at *5 (D.D.C. June 14, 2024), *dismissed,* No. 24-7107, 2024 WL 4455442 (D.C. Cir. Oct. 8, 2024) (citing *United States v. Montague*, 40 F.3d 1251, 1255 (D.C. Cir. 1994)). A court cannot hold a party in contempt if there is a "fair ground of doubt as to the wrongfulness of the [party's] actions." *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.,* 803 F.2d 1170, 1173 (Fed.Cir.1986).

The D.C. Circuit has not yet decided whether good faith substantial compliance constitutes a defense to the violation of a court order. *In re Sealed Case*, 77 F.4th 815, 834 (D.C. Cir. 2023), *cert. denied sub nom. X Corp. v. United States*, No. 23-1264, 2024 WL

4

4426628 (U.S. Oct. 7, 2024) (citing *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union,* 103 F.3d 1007, 1017 (D.C.Cir.1997)).

However, District Courts in this circuit have assumed such a defense is available. *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 33 (D.D.C. 2014) ("good faith substantial compliance" can justify noncompliance with a court order and enable a party to avoid a civil contempt finding) (citing *Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC,* 736 F.Supp.2d 35, 40 (D.D.C.2010)); *see also Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 117 F. Supp. 3d 22, 26 (D.D.C. 2015); *United States v. Shelton*, 539 F. Supp. 2d 259, 263 (D.D.C. 2008) (in order to rebut a prima facie showing of civil contempt, the contemnor may assert the defense of good faith substantial compliance).

Most circuits addressing the issue have adopted some version of the good faith substantial compliance test. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993); *F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d 575, 591 and Note (3d Cir. 2010*); De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 530 (4th Cir. 2022); *United States v. Barnett*, 346 F.2d 99, 100 (5th Cir. 1965); *Wycoff v. Hedgepeth*, 34 F.3d 614, 616 (8th Cir. 1994*); Langton v. Johnston,* 928 F.2d 1206, 1220 (1st Cir. 1991) (citing) *Balla v. Idaho State Bd. of Corrections,* 869 F.2d 461, 466 (9th Cir.1989) ("Substantial compliance with a court order is a defense to an action for civil contempt."); *see also Casale v. Kelly*, 710 F. Supp. 2d 347, 359 (S.D.N.Y. 2010); *Hauck Mfg. Co. v. Astec Indus., Inc.,* No. 1:03-CV-166, 2004 WL 3396122, at *2 (E.D. Tenn. Oct. 14, 2004); *Emuveyan v. Ewing*, No. 2:19-CV-00616, 2022 WL 1211514, at *1 (D. Utah Apr. 25, 2022).

If the Court finds that an order has been disobeyed, it then issues "a conditional order finding the recalcitrant party in contempt and threatening to impose a specified penalty unless the recalcitrant party purges itself of contempt by complying with prescribed purgation conditions," with "exaction of the threatened penalty if the purgation conditions are not fulfilled." *In re Sealed Case*, 77 F.4th 815 at 834.

## **LEGAL ARGUMENT**

I.  **PLAINTIFFS HAVE NOT PRESENTED CLEAR AND CONVINCING EVIDENCE THAT GIULIANI VIOLATED A COURT ORDER**.

Plaintiffs first argue that Giuliani's statements that "he was telling the truth" and "they're going to sue me again for saying it" violates the Consent Judgment. Mot. at 7. However, these vague, contentless statements do not clearly violate a court order. The content of the "truth" Giuliani was stating is not specified and that he would be sued "again" does not necessarily mean he would be sued "again" for any particular statements. Were this a new defamation proceeding, Plaintiffs would not be able to surmount the pleading bar against imposing liability for such vague statements. *Johnson v. Metro. Direct Prop. & Cas. Ins. Co.*, No. CV 18-1715 (JEB), 2019 WL 176851, at *1 (D.D.C. Jan. 11, 2019) (granting motion to dismiss because of vagueness of allegation). *See Wiggins v. Equifax,* 848 F.Supp. 213, 223 (D.D.C.1993) (dismissing plaintiffs' claims as too vague and imprecise); *Black v. Nat'l Football League Players Ass'n*, 87 F. Supp. 2d 1, 6 (D.D.C. 2000), disagreed with on other grounds by *Searcy v. Smith*, 111 F4th 111 (D.C. Circuit 2024) (dismissing defamation complaint that did not set forth claims with specificity required to withstand a motion to dismiss). The Mot. then argues that the "Statements" again "falsely accuse" Plaintiffs of wrongdoing in the 2020 election, specifically counting the same ballots multiple times, using a hard drive to manipulate voting machines, and throwing people

and observers out of State Farm Arena while it served as a vote tabulating center. Mot at 7 and notes 10, 11 and 12.

    A.  <u>Plaintiffs' Examples of Alleged Violations Do Not Satisfy Their Burden.</u>

    Plaintiffs do not satisfy their burden of showing, with "clear and convincing evidence" that the referenced language in Giuliani's podcasts violates the Consent Judgment.

    1.  <u>Footnote 10</u>.  Note 10 references a six-second stretch of audio from the November 12, 2024 podcast in which Giuliani states, "Let me show the tapes that show them quadruple counting the ballots" and an eleven-second stretch of audio from the November 14, 2024 podcast, in which Giuliani states "and these women, were you can see, if you want, in living color, her quadruple counting votes."  Obviously, the *November 14, 2024* audio clip cannot be used as a basis to claim that the *November 12, 2024* clip violated the court order.  But with respect to the first statement, the introductory phrase "let me show" refers to the relief Giuliani is seeking on appeal: he believes that the drastic remedy of a default judgment for discovery violations relating primarily to damages and not to liability was clearly erroneous and intends to make this argument on appeal. Had the appeal already been filed and Giuliani were merely repeating the contents of a publicly filed document, that would not constitute a violation of the Consent Judgment under black letter law governing the litigation privilege. *Marsh v. Hollander*, 339 F. Supp. 2d 1, 6 (D.D.C. 2004) (statements made in the course of judicial proceedings are protected by absolute immunity from defamation suits.). Comments preliminary to an anticipated filing are also covered by the privilege. *Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.,* 774 A.2d 332, 338 (D.C. 2001) ("Along with the overwhelming majority of the States, the District of Columbia has long recognized an absolute privilege for statements made preliminary to, or in the course of, a judicial proceeding, so long as the

statements bear some relation to the proceeding."). *See also Sturdivant v. Seaboard Serv. Sys., Ltd.,* 459 A.2d 1058, 1059 (D.C.1983); *Brown v. Collins,* 402 F.2d 209, 212 (D.C.Cir.1968); *Lewis v. Elliott,* 628 F.Supp. 512, 516 (D.D.C.1986).

Giuliani has a sincere belief that there was multiple counting of ballots in the 2020 election and that the video evidence shows there was a reasonable basis for his belief that would preclude a finding that he acted with the degree of fault necessary to establish liability in a trial on the merits. *Secord v. Cockburn*, 747 F. Supp. 779, 783 (D.D.C. 1990) (public figure can prevail in defamation suit only by proving actual malice) (citing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974); *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964); *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (where statement involves a private figure on a matter of public concern, a plaintiff must show that the false connotations were made with some level of fault); *see also Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986) (in matters of public concern, Plaintiffs bear the burden of showing falsity). Giuliani cannot be silenced from repeating arguments he has made or will make on appeal, and the specific relief he will be seeking.

The November 14, 2024 podcast excerpt, standing alone, does not violate the court order because the context makes unclear what women specifically Giuliani is referring to. Just before the cited clip, Giuliani states, "I mean I'm under indictment in Georgia and Arizona." The focus of the Arizona indictment was the attempt by Trump allies to use so-called "fake electors" to vote against certification of the 2020 election. *Arizona v. Ward, et al.*, CR 2024-006850. However, the underlying issues in the Arizona election, and the allegedly false beliefs of the "fake electors" cited in the indictment also included sincerely held views that the tabulation and counting of ballots had been carried out fraudulently. *See, e.g.*, *Arizona v. Ward*, CR 2024-

006850, at 24 (complaints about electronic ballot counting). While Plaintiffs may sincerely believe they know exactly who Giuliani was referring to in his vague statements, an average listener, hearing the claim about quadruple counting in the context of indictments in Georgia and Arizona would have no means of knowing whether Giuliani was referring to alleged voter fraud in connection with Plaintiffs' claims or proceedings in an entirely different state, which also vitiates any "defamatory meaning" in Giuliani's statements. *See Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 252 (2014) (in defamation law, the reputational harm caused by a false statement is its effect on a reader's or listener's mind). Giuliani's vague statement, that does not name any particular individuals, and arises in the context of a complaint about multiple indictments in several different states where ballot irregularities had been alleged, does not constitute clear and convincing evidence that Giuliani specifically made any statements with a defamatory meaning in violation of the Consent Judgment.

      2.   <u>Footnote 11</u>. Note 11 identifies an eight-second clip in which Giuliani states, "And another one is they're passing these little hard drives that we maintain were used to fix the machines." Again, the context is Giuliani's pending appeal and his summary of what his position on appeal will be. "I never got a trial on liability. 1:18:08-9. . .So I'm appealing it. 1:18:15-16." "So, when you look at it, I'm entitled to that interpretation. I mean that's one of the things it looks like. 1:18:42-47." "I'm a lawyer. I put in evidence and I can ask you to interpret it that way. 1:18:48-52." Very clearly, Giuliani is not repeating as fact any of the Actionable Statements; rather he is stating his opinion that (a) he should have had an opportunity to present evidence to a jury and (b) that his opinion is that "one of the things it looks like" – not the only thing or the necessary thing – is that there was repeat ballot counting. The summary of a legitimate, non-frivolous argument on appeal cannot be prohibited under any fair interpretation

of the Consent Judgment. *See supra* at 6. Taken to an extreme, this view would bar Giuliani from making any public filings in connection with his appeal, which would run counter to the public's core First Amendment right of access to judicial documents. *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1123 (D.C. Cir. 2020) ("the public's right of access to judicial records is a fundamental element of the rule of law"). Plaintiffs have not presented clear and convincing evidence that the summary of an appellate argument referencing a sincerely held opinion violates the Consent Judgment.

        3.    <u>Footnote 12</u>. Note 12 references a six-second extract from the November 14 podcast. As noted, comments in the November 14 podcast cannot retroactively provide content to vague statements in the November 12 podcast, as the November 12 listener obviously did not know the future. The statement itself is a truncated portion of a sentence, "the people thrown out of the arena like I said," and omits the beginning of the sentence, "you can see"— again a clear reference to the argument that Giuliani intends to present on appeal and to the jury on remand, namely that his opinion is that "you can see" people being "thrown out of the arena," an opinion with which, he believes, a reasonable jury could concur, thus foreclosing a finding of actual malice (or an even lower standard, should actual malice not apply). In any event, like the other statements, these statements form part of a summary of an appellate argument and are absolutely privileged.

        4.    <u>Additional "evidence."</u> Plaintiffs then shift their argument to a broad assertion that Giuliani has violated the Consent Order that prohibits him from, directly or indirectly, making statements "conveying the same defamatory meaning" as that of the Actionable Statements. It is not clear what is covered by this prohibition. The notion of "defamatory meaning" necessarily references defamation law, which does not, indeed *cannot*,

10

prohibit, the expression of an opinion made without actual malice or some level of fault. *See supra* at 7. Plaintiffs attempt an end run around the Constitution by repeatedly (and falsely) characterizing Giuliani's opinions as "lies." Mot. at 1, 2, 7.  A sincerely held opinion, however wrongheaded, is not a "lie." Plaintiffs' rhetoric is designed to elide one of the key questions on appeal, which is whether the drastic remedy of a default judgment for discovery violations deprived Giuliani of the benefit of the *Hepps* protections, namely, putting Plaintiffs to their burden of proving falsity and establishing fault.[2]

In support of their claim that Giuliani has made statements with the same "defamatory meaning" as that of the Actionable Statements, Plaintiffs cite two six-second extracts from Giuliani's multi-hour podcasts. First, Plaintiffs cite to Giuliani's statement, "there, there's a video of you doing what I said." The average listener would have no idea what this refers to: the "video" is not identified, and "you" is not specified. On a stand-alone basis, were a defamation case brought based on a vague statement like this, it would not make it past a motion to dismiss. *See supra* at 5-6. Moreover, as noted above, Plaintiffs again ignore the appellate context in which Giuliani is making his remarks. *See supra* at 7. Giuliani's argument is that a video exists that supports his sincerely held opinion as to what occurred at State Farm Arena and that he should

---

[2] As Justice Brennan observed, on matters of public concern, it should not matter whether a defendant is formally a member of the media. *Hepps*, 475 U.S. at 780 (Brennan, J., concurring) ("'[t]he inherent worth of ... speech in terms of its capacity for informing the public does not depend upon the identity of the source, whether corporation, association, union, or individual.") (internal citations omitted).

have had an opportunity to present the video to a jury, an opportunity he believes was foreclosed by an unwarranted default judgment sanction.[3]

Second, Plaintiffs repurpose footnotes 11 and 12 (which repeat the language in the second reference in footnote 13) for their more general claim that Giuliani has made statements with "defamatory meaning." Here they have presented even less evidence, let alone clear and convincing evidence, that Giuliani's statements meet any relevant test of defamation, whether with respect to the specificity of the statements or the degree of fault with which they were uttered. By this logic, even the vaguest expression of any belief that wrongful election ballot counting occurred in Georgia would have the same "defamatory meaning" as the Actionable Statements. Such a standard would have a chilling effect on any challenge to the propriety of the conduct of election officials, a particularly ironic standard today as the nation mourns the passing of Jimmy Carter, who made his name in his early career by challenging allegedly fraudulent Georgia ballot procedures.[4]

Moreover, instead of "clear and convincing" evidence, the Mot. essentially repeats the same points over and over, hoping that sheer repetition will do what analysis cannot do. *Compare* Footnote 19 (citing the November 12 podcast at 1:18:56 – 1:19:04) *with* Footnote 11 (containing identical citation); Footnote 17 (citing November 14 podcast at 1:00:50 – 1:01:01) *with* Footnote 10 (containing identical citation); *see also* Footnote 15 citing November 14 podcast at 1:00:52-54 (already covered by Footnotes 11 and 17); and Footnote 16 (citing and

---

[3] The absence of ESI obviously did not hinder Plaintiffs ability to present their damages case, as they received the largest damages award ever handed out in a defamation case against an individual in the D.C. Circuit by many orders of magnitude.

[4] *See, e.g.*, https://bit.ly/4gC5XOO ("The county boss stuffed the ballot box in favor of my opponent. 126 people voted alphabetically. A third of them were either dead or in prison. They were not qualified to vote but they cast ballots anyway," Carter recounted.).

November 12 podcast at 1:18:24-30 (already cited in Footnote 10). For good measure, the Mot.

cites the November 14 podcast language from Footnote 11 a ***third*** time in Footnote 21, again

leaving out the appellate context and non-defamatory nature of Giuliani's opinion. The Mot. then

intersplices these allegedly new "defamatory" statements with previous statements made by

Giuliani not at issue here, *see* Mot. at 8, Notes, 14, 18, 20, to create the impression of a huge

volume of new defamatory utterances, when in fact, Giuliani's challenged statements amount to

less than two minutes of content out of hundreds and hundreds of hours of broadcast since the

date of the Consent Judgment. Sheer repetition does not constitute clear and convincing

evidence. *See, e.g.*, *Pinder v. Crowther*, No. 2:16-CV-189-DN, 2019 WL 1059967, at *8 (D.

Utah Mar. 6, 2019) (mere repetition does not meet the "clear and convincing evidence"

standard). Plaintiffs have not met their threshold burden, and their motion should be denied.

## II.    GIULIANI HAS BEEN IN GOOD FAITH SUBSTANTIAL COMPLIANCE WITH THE CONSENT JUDGMENT.

### A.    Substantial Compliance.

From the entry of the Consent Judgment on May 22, 2024, until the date of the allegedly

violative statements, Giuliani has broadcast hundreds of hours of video on his podcasts,

America's Mayor Live, the Rudy Giuliani Show and Uncovering the Truth, with 123 one and a

half hour episodes of America's Mayor alone airing from May 22 to November 12, 2024. During

these podcasts, Giuliani has touched on almost all the "hot button" issues on the right of the

political spectrum, including the Hunter Biden judicial imbroglios, the conflicts in the Middle

East and Ukraine, the Presidential debates, the Harris campaign, and the election of Donald

Trump as the nation's 47th president. During all this time, despite legal proceedings resulting

from the *Freeman I* decision that have spawned an array of entangled cases of great complexity,

and despite being himself subjected to extensive and damaging publicity in connection with

Plaintiffs' efforts to satisfy their judgment, *see infra* at 15, Guiliani has spoken for less than two minutes on the alleged ballot counting irregularities on the State Farm Arena in Georgia. Put in context, this amounts to less than a small fraction of one percent of Giuliani's commentary on matters of public concern. Even in these limited comments, Giuliani has scrupulously avoided mentioning the names of the Plaintiffs and has, as noted, referenced the Georgia ballot counting irregularities in connection with his other legal issues, including a pending indictment in Arizona. An average listener would have no idea whether Guliani was referring to the named Plaintiffs in *Freeman I* and thus there cannot be any reputational harm from these extremely limited comments. Giuliani's limited and vague references to events that occurred on the night of November 3-4, 2020, if they constituted defamatory violations of the Consent Judgment did so only in a technical manner and not because there was a clear and unambiguous accusation of wrongdoing an uninitiated listener could plausibly connect to the named Plaintiffs. If Giuliani were bent on violating the Consent Judgment, Plaintiffs and their army of lawyers would have found more than the handful of statements they themselves concede only "indirectly" relate to Plaintiffs. *See* Mot. at 7. In the overall context of Giuliani's substantial podcast output, the few seconds Giuliani has devoted to his opinions on the *Freeman I* case represent, if anything, a *de minimis* violation, that does not detract from the substantial compliance demonstrated in the hundreds of hours of audio-visual material Giuliani has posted since the entry of the Consent Judgment.

Giuliani's substantial compliance can be more fully appreciated by considering the parallel New York turnover proceeding, where Plaintiffs have placed on the public docket – with ensuing dissemination to the national media audience of CNN, Newsweek, and Bloomberg – the identification of personal items belonging to Giuliani that are not part of any turnover order and

"before and after" photographs of Giuliani's residence in New York in a manner that reveals features, such as the placement of an air conditioner, that permits the identification of Giuliani's 10th floor apartment from the exterior, which would place Giuliani and his family at risk if the apartment ultimately reverts back to him. While this risk may be remote, it is not fanciful. Giuliani has faced death threats in the past,[5] and the recent rooftop sniper attack on the president-elect indicates that knowing the precise location of Giuliani's apartment would be valuable to bad actors.[6]

Despite the flood of negative news stories, Giuliani has almost completely refrained from any discussion of the *Freeman I* case or any of his sincerely held beliefs as to what transpired in

---

[5] https://www.nytimes.com/1999/10/06/nyregion/death-threats-against-mayor-said-to-rise.html.
[6] On August 5, 2024, a turnover action was initiated in the Southern District of New York to enforce the Judgment from *Freeman I. In re Giuliani*, 1:24-mc-353-LJL. In connection with the turnover action, on October 22, 2024, the Southern District ordered Giuliani to deliver the shares to his New York Coop and other specifically identified property to a receiver. 24-mc-353, Dkt. 62 at 16-18. On August 30, 2024, Plaintiffs filed a separate action in the Southern District of New York, 24-cv-6563, seeking recovery of additional property, notably Giuliani's Florida residence, which Giulian claimed was exempt from recovery under the Florida Homestead exemption. Trial of this issue, as well as the contested issue of ownership of three World Series rings otherwise subject to the turnover action, is set for January 16, 2025. *Freeman v. Giuliani*, 24-mc-353-LJL, Dkt. 184; 24-cv-6563-LJL, Dkt. 150. On October 31, 2024, Plaintiffs' attorneys visited Giuliani's New York City apartment which had served as his personal residence, "for the purposes of assessing the transportation and storage needs for the receivership property contained therein." 24-mc-353, Dkt. 81, at 1. Plaintiffs' attorneys advised the Court that Giuliani's apartment appeared to have been emptied of its contents and that Giuliani appeared to be still using a Mercedes that was subject to the Turnover Order, with a glossy color photo of Giuliani in his car on the first page of a letter to the Court. 24-mc-353. Dkt. 85. Plaintiffs' attorneys also placed on the public docket photographs revealing the interior of Mr. Giuliani's apartment after Giuliani had allegedly emptied the apartment of its contents. Dkt. 91-1. These photographs revealed previously unpublished views of the interior of the apartment, including the location of the air conditioner in the room, which permitted identification of the apartment from the exterior of the building. *Id*. Plaintiffs' disclosures generated significant press attention in November, 2024, and numerous outlets republished the previously unpublished photographs of the interior of Giuliani's apartment. *See, e.g.*, https://bit.ly/3DFR2V8; https://bit.ly/4h1hmHx; https://bit.ly/403Ja7o; https://bit.ly/4a6cJK7.

the State Farm Arena on election night. Any violations of the Consent Judgment were technical and inadvertent and should not result in contempt sanctions.

B. Good Faith.

As discussed above, Giuliani's comments were made in the context of a discussion of his pending appeal of the judgments on liability and damages against him. *See supra* at 7-8. Even if some exception to the litigation privilege were found to apply, Giuliani certainly had a good faith belief that his comments were protected. *See Marsh*, 339 F. Supp. 2d at 6; *Finkelstein,* 774 A.2d 338 (D.C.2001); *Sturdivant,* 459 A.2d at 1059; *Brown v. Collins,* 402 F.2d at 209; *Lewis v. Elliott,* 628 F. Supp. 512, 516 (D.D.C.1986); *see also*, 50 Am. Jur. 2d, *Libel and Slander* § 282. Moreover, Giuliani himself, in *Freeman I*, had proffered a stipulation that expressly reserved the right to repeat statements in the context of an appeal. *See supra* at 2; Dkt. 90 ¶ 6 ("Giuliani specifically preserves his arguments that the statements complained of are protected and non-actionable opinion for purposes appeal"). While the Court was not impressed with this stipulation, Dkt. 94 at 5, and believed Giuliani's argument had already been rejected in its ruling on his motion to dismiss, *id.*, Giuliani is entitled to appeal the denial of the motion to dismiss together with the entry of the default judgment and to believe – until the entry of a final non-appealable judgment by the highest court with jurisdiction – that his sincerely held beliefs about the 2020 election constitute protected opinion. Giuliani's belief that the Consent Judgment was not violated by the challenged statements – which did not name the defendants, were deliberately vague, combined references to Georgia and Arizona, and arose in the context of a pending appeal – has a reasonable and defensible basis. Giuliani acted with the good faith belief that his comments did not violate the Consent Judgment and he should not be subject to contempt sanctions.

### III.  TO THE EXTENT THE COURT BELIEVES THERE WAS A TECHNICAL VIOLATION OF THE CONSENT JUDGMENT, THE PROPER REMEDY AT THIS JUNCTURE IS TO ENTER A CONDITIONAL ORDER WITH A PENALTY IF PURGATION CONDITIONS ARE NOT MET.

If, notwithstanding movant's failure to bring forward clear and convincing evidence of a violation of the Consent Judgment, and the countervailing evidence of Giuliani's good faith substantial compliance, the Court finds that the Consent Judgment has been disobeyed, the appropriate remedy is the issuance of a conditional order finding Giuliani in contempt and threatening to impose a specific penalty if certain actions are not taken. *See In re Sealed Case*, 77 F.4th at 834. This could include clarification that any statements made on the November 12 and November 14 podcasts relating to alleged illegal ballot counting at the State Farm Arena in Fulton County, Georgia on the night of November 3 to November 4 represent Giuliani's opinion only and were made for purposes of clarifying the position Giuliani will take on appeal. Plaintiffs' request, Mot. at 9-10, that the Court proceed immediately to impose sanctions in the event it finds a violation has occurred, does not comport with the procedure set forth by the D.C. Circuit and should not be followed by the Court.

The underlying reason for the three-step approach (assessment of violation, conditional order, exaction of penalty) outlined by the D.C. Circuit, as opposed to the two-step approach advocated by Plaintiffs (assessment of violation, imposition of sanctions) derives from the "least possible power rule" that operates to restrain a court's exercise of its contempt power. *See United States v. Concord Mgmt. & Consulting LLC*, No. 18-CR-32-2 (DLF), 2019 WL 7758635, at *5 (D.D.C. July 1, 2019) (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793–801 (1987). As this Court observed in *Concord Mgmt.*, in exercising their discretion to impose contempt sanctions, courts "must keep in mind that the judicial contempt power is 'shielded from democratic controls' and hence should be exercised with restraint and discretion."

17

*Concord Mgmt.*, 2019 WL 7758635, at *6 (citing *In re Smothers*, 322 F.3d 438, 442 (6th Cir.

2003) (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980)). Before reaching for

the criminal contempt power, "courts should be aware of the options available to them" and keep

in mind that, "in situations where a criminal contempt order may be too strong, courts still have

other means to maintain the dignity of the court and respect for all parties present." *Concord*

*Mgmt.,* 2019 WL 7758635, at *6. As Justice Scalia observed, contempt proceedings can give rise

to "a situation in which judges in effect make the laws, prosecute their violation, and sit in

judgment of those prosecutions, and in which we permit a judge to promulgate a rule of

behavior, prosecute its violation, and adjudicate whether the violation took place." *Young*, 481

U.S. at 799 and Note 8. Such a situation should be avoided if possible. If the Court feels

compelled to act, it should state unambiguously whether and to what extent Giuliani is permitted

to comment on his pending appeal, upon penalty of contempt for any future violation of this

conditional order, in accordance with the D.C. Circuit Court's guidance.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Civil Contempt should be denied in its

entirety. If the Court nonetheless believes a violation occurred, it should enter a conditional order

clarifying the scope of any permissible commentary on Giuliani's pending appeal before any

penalty is imposed.

**[SIGNATURES ON THE FOLLOWING PAGE]**

Dated: January 2, 2025
New York, NY

Respectfully Submitted,

/s/ Eden P. Quainton
EDEN P. QUAINTON, ESQ.
QUAINTON LAW, PLLC
D.C. Bar No. NY0318
2 Park Ave., 20th Fl.
New York, New York 10016
Telephone: (212) 419-0575
Eden.quainton@quaintonlaw.net

/s/ Jonathan S. Gross
JONATHAN S. GROSS, ESQ.
LAW OFFICE OF JONATHAN GROSS
D.C. Bar No. NY0126
2833 Smith Ave., Suite 331
Baltimore, MD 21209
Telephone: (443) 813-0141
jonathansgross@gmail.com

*Attorneys for Defendant Rudy Giuliani*

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on January 2, 2025, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Plaintiffs Ruby Freeman and Wandrea' Moss.

*/s/* Jonathan Gross

*Attorney for Defendant Rudy Giuliani*

19