UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RUBY FREEMAN and WANDREA' MOSS,

Plaintiffs,

v.

RUDOLPH W. GIULIANI,

Defendant.

No. 23-cv-3754-BAH

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CIVIL CONTEMPT**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................................ii

ARGUMENT ...................................................................................................................................1

    I.    GIULIANI FAILS TO DEMONSTRATE THAT HE HAS COMPLIED WITH THE CLEAR AND UNAMBIGUOUS TERMS OF THE CONSENT INJUNCTION. ........................................................................................1

        A.    The Consent Injunction Is Clear and Unambiguous. ..................................1

        B.    There is Clear and Convincing Evidence That Giuliani Violated the Injunction. ....................................................................................................4

            1.    Giuliani's claims that the November 12 and 14 Statements are "repeating arguments he has made or will make on appeal" is disproven by the arguments he has actually made on appeal. .......................................................................................5

            2.    Giuliani's attempt to apply the elements of defamation injects an irrelevant legal standard....................................................8

            3.    This Circuit does not recognize Giuliani's "substantial compliance" test, and even if it did, Giuliani has not met it. .........11

    II.    GIULIANI ENDORSES AND DOES NOT CHALLENGE PLAINTIFFS' SUGGESTED SANCTION. ....................................................................................14

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Alexander v. Washington Gas Light Co.*,
 481 F. Supp. 2d 16 (D.D.C. 2006) ..................................................................................11

*Armenian Assembly of America, Inc. v. Cafesjian*,
 597 F. Supp. 2d 128 (D.D.C. 2009) ..................................................................................7

*Buckly v. Fitzsimmons*,
 509 U.S. 259 (2006) ..........................................................................................................7

*Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*,
 117 F. Supp. 3d 22 (D.D.C. 2015) ....................................................................................1

*In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 & 50 U.S.C. § 1705*, No. MC 18-175, 2019 WL 2182436 (D.D.C. Apr. 10, 2019),
 *aff'd sub nom. In re Sealed Case*, 932 F.3d 915 (D.C. Cir. 2019) ..........................9, 13

*Murphy v. Jefferson Pilot Comm'ns Co.*,
 657 F.Supp.2d 683 (D.S.C. 2008) ..................................................................................11

*New York Times v. Sullivan*,
 376 U.S. 254 (1964) ........................................................................................................11

*Nunes v. WP Co. LLC*,
 No. 1:21-CV-00506 (CJN), 2021 WL 3550896 (D.D.C. Aug. 11, 2021) .................4, 10

*Sands v. Runyon*,
 28 F.3d 1323 (2d Cir. 1994) .............................................................................................5

*In re Sealed Case*,
 77 F.4th 815 (D.C. Cir. 2023) ........................................................................................13

*Wolf v. Mehn*,
 No. 19-305 (RMC), 2019 WL 3753121 (D.D.C. Aug. 8, 2019) ......................................7

**Other Authorities**

21 Moore's Fed. Prac. Civ. § 328.22 (2024) ...............................................................................5

Plaintiffs Ruby Freeman and Wandrea' Moss ("Plaintiffs") respectfully submit this reply in support of their Motion for Civil Contempt (ECF No. 19 ("Motion" or "Mot.")) and in response to Defendant Rudolph W. Giuliani's Opposition to the Motion (ECF No. 34 ("Opposition" or "Opp.")).[1]

## ARGUMENT

**I.  GIULIANI FAILS TO DEMONSTRATE THAT HE HAS COMPLIED WITH THE CLEAR AND UNAMBIGUOUS TERMS OF THE CONSENT INJUNCTION.**

A.  The Consent Injunction Is Clear and Unambiguous.

Giuliani in his Opposition appears to concede that the Consent Injunction is clear and unambiguous. *See* Opp. at 12–19.[2] That concession is unsurprising. Giuliani *consented* to the Consent Injunction and could have sought modifications or clarifications to any of its terms at any time before its submission. Not only did he not object to the terms at the time of its entry—he never sought any modification after the fact based on his inability to comply. *See* ECF No. 14 ¶ 3; ECF No. 14-2 ¶ 3; *Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 117 F. Supp. 3d 22, 27 (D.D.C. 2015) (finding order unambiguous because "defendants have never sought clarification on any part of the order"). And Giuliani has cited no authority for the proposition that a party who knowingly and voluntarily agreed to a consent injunction can retroactively challenge the clarity of that injunction's terms.

In his Opposition, Giuliani makes only one passing reference that is even arguably related to ambiguity: in a sentence at the bottom of page sixteen, he states that it is "not clear what is covered by" the prohibition that he not publish any statement "conveying the same defamatory

---

[1] This reply adopts the terms as defined in the Motion. All ECF reference refer to this matter's docket, unless otherwise noted. References to docket entries in *Freeman I* are noted as such.

[2] Citations to page numbers in the Motion and Opposition refer to the ECF stamped page numbers on the top of the page.

1

meaning" as "any of the Actionable Statements" adjudged false and defamatory in the Freeman Litigation (which refers to the second of the two prongs of the Consent Injunction). Opp. at 16; *see* ECF No. 14-2 ¶ 3 (prohibiting publication of "(a) any statements that suggest that Plaintiffs, whether mentioned directly, indirectly, or by implication, engaged in wrongdoing in connection with the 2020 presidential election" (hereinafter referred to as, "First Prong") or "(b) any of the Actionable Statements adjudged false and defamatory in the Freeman Litigation, or any other statements conveying the same defamatory meaning" (hereinafter referred to as, "Second Prong")). To the extent that the Court roots a finding of contempt in the First Prong, it can ignore Giuliani's "clarity" "argument" altogether since he does not challenge the clarity of that prong.

Regardless, Giuliani's "clarity" challenge to the Second Prong is baseless. The Consent Injunction unambiguously enjoins Giuliani from accusing Plaintiffs of the same accusations identified in the Actionable Statements, which the Court already found to be false and defamatory in *Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C.) ("*Freeman I*"), and that prohibition applies to statements that convey the same meaning even if they use different words or phrasing to convey the same substantive accusation. The Consent Injunction expressly defines the Actionable Statements, and includes the following statements accusing Plaintiffs of counting ballots multiple times, excluding observers, and passing hard drives (all of which, the evidence in discovery and at trial proved, never happened):

- "Election Official Ruby Freeman is seen surreptitiously & illegally **handing off hard-drives** ON CAMERA in the Georgia counting facility."

- "'Suitcase Gate' - Video of 'ballot stuffing' when 'suitcases' (container type) filled with ballots (approximately 6,000 in each container) were rolled out from under table at GA arena and placed in tabulation machines (**one batch repeatedly tabulated at least 3 times**) by [X number] of poll workers who remained AFTER all Poll Watchers (GOP and the like), press and all third parties were

2

- required to leave the premises per announcement at or about [AM] until [AM] in violation of election laws enacted by GA state legislature."

- "You have to be a naive child or a completely dishonest partisan not to realize that the ***observers are being thrown out of the room***. A phony excuse of a water main break was used. They still were thrown out of the room, didn't want to leave."

- "And then they're given out and very quickly are being ***counted, counted, counted, counted, there are times in which it appears that they were being counted more than one time—three, four, five, six, seven times, eight times***."

- "***They get everybody out***. They wait, they wait, they wait. They check, they check, they check, like they're gonna do a heist, and all of a sudden the crooks sprang into action. They go under a desk covered like a casket, and they start pulling ballots out. Tremendous numbers of ballots. And they bring them over to one counting stand, all the way over here, another counting stand, another—and they keep looking around to make sure there's nobody in the room! . . . ***Every once in a while, you look closely, you can them doing this—one ballot [gestures scanning a ballot multiple times]. You know what that does? That takes Biden and multiplies it by 5***."

- "What am I supposed to do, close my eyes and make believe that in Fulton County, Georgia, when they closed the doors, and ***they got rid of the public, and they started triple counting ballots*** and it ends up being 120,000 for, for Biden and 3,000 for Trump? They weren't cheating? Am I stupid?"

- "***They deliberately threw people out*** and counted the ballots in private, and there's videotape of it. That wasn't enough. I don't know what you've got to do to prove it. They committed the crimes on video. You can see them do it. They lied about it. Then ***you can see these same people handing off flash drives to each other***."

- "They were doing it surreptitiously. And, uh, handing 'em off, and doing it quickly, and ***occasionally you can see them multiple count a vote***. *Now you take the two women who ran that, there are other tapes of them earlier in the day, handing off—handing off small, hard drives and flash drives, those flash drives were used to put in the machines*—the machines that supposedly weren't, uh, accessible by internet, all of which were accessible by internet. So these women have gotten away scot-free."

3

- "***How about the videotape that I have where they're shoving the thing into the machine three and four times so they can be recounted by the same two women that earlier in the day were passing around hard drives or flash drives*** that supposedly can't be used in Dominion machines, but can."

- "So several days, if not weeks, after the election the, the, uh, company came forward with tapes of this very suspicious activity where the ***people were thrown out of the arena, the observers***."

- "She stuffed the ballot – ***each ballot went three times***. They were showing here's ***ballot number one, here it is a second, third time, next ballot***."

- "[W]hy did they put the votes in three times? ***You know, they put them in three times***."

ECF 14-2 at 4–9 (emphasis added).  It would defeat the Consent Injunction's purpose if its prohibitions applied only to the literal repetition of the Actionable Statements word-by-word; were that the case, Giuliani could easily evade the Consent Injunction's terms with minor changes to phrasing while conveying precisely the same meaning.  The Second Prong of the Consent Injunction, therefore, applies to any statements that (falsely) accuses Plaintiffs of the same conduct that defamed them in the first place, i.e., that they engaged in election fraud by, *inter alia*, counting ballots multiple times, illegally excluding observers, and passing off a hard drive in order to alter the election results.  See *Nunes v. WP Co. LLC*, No. 1:21-CV-00506 (CJN), 2021 WL 3550896, at *4 (D.D.C. Aug. 11, 2021) ("gist" of the article conveyed same defamatory meaning).

B.    There is Clear and Convincing Evidence That Giuliani Violated the Injunction.

For the reasons stated in the Motion, there is clear and convincing evidence that Giuliani violated the Consent Injunction by publishing statements that falsely accuse Plaintiffs of engaging in wrongdoing in the 2020 Presidential Election.  Those statements also convey precisely the same defamatory meaning as the Actionable Statements—namely, that Plaintiffs engaged in "quadruple counting" of ballots, passing of "hard drives" to rig voting machines, and throwing observers out

4

of the State Farm Arena. ECF No. 16 at 7–13. The Court need only compare the text of the Consent Injunction, including the list of Actionable Statements, with the text of the November 12 and 14 Statements, to find a clear violation of the Consent Injunction's terms. The various arguments raised in the Opposition are wrong as a matter of fact and law and fail to provide any reason why this Court should excuse Giuliani's blatant defiance of its clear and unambiguous order. Mot. at 6 (citing cases); ECF No. 16 at 4–5.

> 1. *Giuliani's claims that the November 12 and 14 Statements are "repeating arguments he has made or will make on appeal" is disproven by the arguments he has actually made on appeal.*

Giuliani's Opposition claims that he "cannot be silenced from repeating arguments he has made or will make on appeal, and the specific relief he will be seeking" and that the November 12 and 14 Statements do not violate the Consent Injunction because they refer to "the relief Giuliani is seeking on appeal: he believes that the drastic remedy of a default judgment for discovery violations relating primarily to damages and not to liability was clearly erroneous and intends to make this argument on appeal." Opp. at 13;[3] *see also id*. at 15 ("summary of what his position on appeal will be"); *id*. at 15–16 ("summary of a legitimate, non-frivolous argument on appeal cannot be prohibited"); *id*. at 16 ("summary of an appellate argument"); *id*. at 17 ("one of the key questions on appeal, which is whether the drastic remedy of a default judgment for discovery violations deprived Giuliani of the benefit of the *Hepps* protections, namely, putting Plaintiffs to

---

[3] It is unclear why Giuliani in his Opposition refers to what his argument "will be" or what arguments he "intends to make" on appeal given that he *already* has filed his opening appellate brief and cannot introduce any new arguments in reply. *See Sands v. Runyon*, 28 F.3d 1323, 1332 (2d Cir. 1994) (holding that delay in citing key regulation until reply brief justified decision by circuit court to decline to construe regulation) (citing FED. R. APP. P. 28(f)); *see also* 21 MOORE'S FED. PRAC. CIV. § 328.22 (2024) ("Generally, issues raised for the first time in a reply brief will not be considered by the court.").

their burden of proving falsity and establishing fault");[4] *id.* at 17–18 ("unwarranted default judgment sanction"); *id.* at 22 ("discussion of his pending appeal"). But Giuliani *already has filed* his opening appellate brief, and he does not make *any* of these arguments. Contrary to the Opposition's assumption that Giuliani would challenge the underlying default judgment, Giuliani has **not** challenged this Court's default judgment sanction on appeal. *See* Appellant's Statement of Issues to be Raised, *Freeman v. Giuliani*, No. 24-7021 (D.C. Cir. Aug. 13, 2024), ECF No. 2069627 (statement of issues to be raised without mention of default judgment); Brief for Defendant-Appellant, *Freeman v. Giuliani*, No. 24-7021 (D.C. Cir. Oct. 2, 2024), ECF No. 2077789 (appeals brief, which only mentions default judgment in the context of its consequences on the operative legal standards). As Plaintiffs explained in their response to Giuliani's opening brief: "Strikingly, in this appeal, Giuliani does not challenge the District Court's imposition of a default judgment sanction, any of the District Court's other sanctions orders, or any of the District Court's factual findings underpinning those orders." Initial Brief for Plaintiffs-Appellees, *Freeman v. Giuliani*, No. 24-7021 (D.C. Cir. Dec. 16, 2024), ECF No. 2089832 at 2. Thus, even if the Court found legal merit to Giuliani's claim that he is entitled to violate the Consent Injunction so long as he is parroting his appellate arguments, that claim has no factual support.

Apart from the factual deficiencies described above, Giuliani's attempt to shield himself with his pending appeal fails as a matter of law. The Consent Injunction is an order of the Court with the force of law, and it does not contain exemptions permitting Giuliani to repeat the defamatory statements simply because he is pursuing an appeal. Giuliani knew he was pursuing an appeal when he signed onto the Consent Injunction, yet did not ask for any exclusion to make

---

[4] Giuliani in his opening appellate brief does not mention *Hepps* and, further, he "admits the falsity of the publications" by virtue of that (unchallenged) default judgment. *See* Brief for Defendant-Appellant, *Freeman v. Giuliani*, No. 24-7021 (D.C. Cir. Oct. 2, 2024), ECF No. 2077789, at 24.

press statements about his appeal. And Giuliani cites no legal authority, from any jurisdiction, for the proposition that the plain terms of a Consent Injunction may be overridden by application of the "litigation privilege." Moreover, the "litigation privilege" does not extend to statements made outside of pleadings, testimony, or court filings, and courts have specifically exempted from the privilege statements made to non-participants to the litigation, such as the media or general public. *Buckly v. Fitzsimmons*, 509 U.S. 259 (2006) (holding that a state prosecutor was not absolutely immune for pre-indictment fabrication of evidence or false statements at press conference); *see Armenian Assembly of America, Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 140 (D.D.C. 2009) (finding judicial proceedings privilege inapplicable to press releases because it "does not apply to statements 'published to persons not having an interest in or connection to the litigation'"); *Wolf v. Mehn*, No. 19-305 (RMC), 2019 WL 3753121, at *3 (D.D.C. Aug. 8, 2019) (noting that the litigation privilege "may be lost if abused" and that under D.C. law, the privilege does not attach to publications of a complaint that formed the basis of a defamation action to the media that was gratuitous and bore "'no relevance whatsoever to the judicial proceedings.'") (citing *Newmyer v. Sidwell Friends School*, 128 A.3d 1023, 1042, (D.C. Cir. 2015), which held that a Plaintiff's publication of a complaint through hiring a communications firm to distribute it to several media organization did not fall within the litigation privilege)).

The fact that the Consent Injunction has no exception for press statements issued contemporaneously with appellate litigation does not, in the words of the Opposition, "bar Giuliani from making any public filings in connection with his appeal." Opp. at 16. Giuliani is free to publish, and in fact, has repeatedly published, statements criticizing the default judgment or explaining why he thinks he will win on appeal. *See* Mot. at 7 n.6. And as demonstrated by his expansive statement of Issues Presented for Review in his appellate brief, (Brief for Defendant-

7

Appellant, *Freeman v. Giuliani*, No. 24-7021 (D.C. Cir. Oct. 2, 2024), ECF No. 2077789 at 21–23), there is ample ground for Giuliani to engage in public advocacy regarding his *actual* appellate arguments without running afoul of the Consent Injunction. What Giuliani may not do, and what makes his November 12 and 14 Statements violate the Consent Injunction, is falsely accuse Plaintiffs of committing election fraud in the 2020 Presidential Election, including by repeating the specific misconduct described in the Actionable Statements. *Compare*, *e.g.*, November 12 Statement ("quadruple counting" and "passing these little uh little hard drives that we maintain were used to the fix machines"), *and* November 14 Statement ("quadruple counting votes" and "people uh thrown out of the Arena"), *with* ECF 14-2 at 4–9 (listing actual statements to include "handing off hard-drives," "one batch repeatedly tabulated at least 3 times," "observers are being thrown out of the room," "counted more than one time—three, four, five, six, seven times, eight times," "they got rid of the public, and they started triple counting ballots," "you can see these same people handing off flash drives to each other," "shoving the thing into the machine three and four times so they can be recounted by the same two women that earlier in the day were passing around hard drives or flash drives," "people were thrown out of the arena, the observers," "each ballot went three times."). In sum, there is no factual or legal support for Giuliani's claim that his pursuit of an appeal authorizes him to violate the Consent Injunction.

        2.    *Giuliani's attempt to apply the elements of defamation injects an irrelevant legal standard.*

Focusing solely on the Second Prong of the Consent Injunction (specifically the "same defamatory meaning" language), Giuliani attempts to impose a requirement that Plaintiffs prove with "clear and convincing" evidence that the November 12 and 14 statements are defamatory as a matter of law. *See, e.g.*, Opp. at 20 (referring to "defamatory violations of the Consent

Judgment").[5]  As described above, Giuliani does not appear to dispute that the November 12 and 14 Statements accuse Plaintiffs of engaging in wrongdoing in the 2020 election, which establishes a violation of the First Prong of the Consent Injunction, and thereby obviates the need to consider Giuliani's defamation-based arguments.  But even if this Court were to consider Giuliani's argument, it fails because Plaintiffs have no burden to prove the elements of defamation in order to substantiate a violation of either the First or Second Prong.

The operative question before the Court is whether Giuliani violated an order of this Court, not whether he also committed the tort of defamation in so violating that order.  The applicable legal standard when considering contempt sanctions is whether there exists (1) a clear and unambiguous order that (2) an individual violated based on clear and convincing evidence.  *In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 & 50 U.S.C. § 1705*, No. MC 18-175, 2019 WL 2182436, at *3 (D.D.C. Apr. 10, 2019), *aff'd sub nom. In re Sealed Case*, 932 F.3d 915 (D.C. Cir. 2019) (Howell, J.).  Here, the Consent Injunction prevents Giuliani from accusing Plaintiffs of engaging in wrongdoing relating to the 2020 election *or* repeating statements with the same defamatory meaning as the meaning of the Actionable Statements, without any requirement that the statements meet the legal elements of defamation.  There can be no reasonable or colorable dispute that the November 12 and 14 Statements do not violate the Consent Injunction, irrespective of whether they meet the legal definition of defamation.

---

[5] Giuliani argues that Plaintiffs "presented even less evidence, let alone clear and convincing evidence, that Giuliani's statements meet any relevant test of defamation, whether with respect to the specificity of the statements or the degree of fault with which they were uttered." *See* Opp. at 18; *see also id.* 12 ("would not be able to surmount the pleading bar against imposing liability for such vague statements."); *id*. at 13 ("litigation privilege"); *id*. at 14 ("actual malice"); *id*. at 14–15 (of and concerning argument); *id*. at 15 ("he is stating his opinion"); *id*. at 16 ("foreclosing a finding of actual malice" and "absolutely privileged"); *id*. at 16–17 ("opinion" and "actual malice or some level of fault"); *id*. at 17 ("sincerely held opinion" and "would not make it past a motion to dismiss"); *id*. at 20 ("reputational harm").

To the extent that Giuliani is arguing that the Consent Injunction requires Plaintiffs to meet the elements of defamation based on its use of the term "defamatory meaning," that is inconsistent both with its text and defamation law. A statement carries a "defamatory meaning" when it makes its target "appear odious, infamous, or ridiculous" or tends to injure him "in his trade, profession or community standing, or lower him in the estimation of the community[.]". *Nunes*, 2021 WL 3550896, at *4 (citations omitted). Whether a statement carries a "defamatory meaning" is *a single element* of defamation, and one that this Court can easily find where, as here, the offending statements expose Plaintiffs to the same infamy as did the original Actionable Statements.

Even if Plaintiffs had the burden to demonstrate that the November 12 and 14 Statements constitute defamation, they have met it here. Both the November 12 and 14 Statements accuse Plaintiffs of engaging in election fraud, including by counting ballots multiple times, illegally excluding observers, and passing a hard drive to manipulate voting machines. *Freeman I* already established that such accusations are false and defamatory as a matter of law. ECF Nos. 31, 94, 137, 138, 144, *Freeman I*. For example, the portions of *Freeman I* deposition transcripts that the Court directed Plaintiffs to file on this case's docket include the following uncontested testimony demonstrating falsity:[6]

- Michele Branton testified about her experience at State Farm Arena during the 2020 election, and confirmed that she was not told to leave State Farm Arena on Election Day in 2020 (including because of any water leak). **Exhibit 1**.

- Frank Braun testified about the investigation in which he participated as part of the Georgia Secretary of State's division tasked with evaluating Giuliani's allegations against Plaintiffs, and the conclusions that there was no truth to them, including the statements that Plaintiffs scanned

---

[6] No later than tomorrow, Plaintiffs separately will file the materials and summary as directed by the Court, but includes reference to them herein and attaches the cited transcripts given the relevance to the issues raised in the Opposition. As Plaintiffs will explain in that filing, Giuliani, via his counsel, was aware of all of the depositions but chose not to attend any of them.

- ballots multiple times, told or forced anyone to leave State Farm Arena, or that there were hidden suitcases of ballots. **Exhibit 2**.

- Francis Watson, who served as the Chief Investigator with the Georgia Secretary of State and oversaw the Georgia investigation into Giuliani's claims about Plaintiffs, testified that there was no truth to them, including the statements that Plaintiffs scanned ballots multiple times, kicked observers out of the State Farm Arena (including because of any water leak), or had a hidden suitcase of ballots. **Exhibit 3**.

Giuliani is foreclosed from arguing facts otherwise established in *Freeman I*, including by attempting to recycle the same arguments he made (and lost) on a motion to dismiss, such as "that a video exists that supports his sincerely held opinion as to what occurred at State Farm Arena." Opp. at 17; *see Alexander v. Washington Gas Light Co.*, 481 F. Supp. 2d 16, 35–36 (D.D.C. 2006); *see also Murphy v. Jefferson Pilot Comm'ns Co.*, 657 F.Supp.2d 683, 694–99 (D.S.C. 2008).[7] Moreover, Giuliani's decision to publish new statements accusing Plaintiffs of the same conduct that he knows is not true by virtue of *Freeman I* does not evince a "sincerely held opinion," it demonstrates a subjective reckless disregard for the truth (i.e., actual malice). *New York Times v. Sullivan*, 376 U.S. 254, 279–92 (1964).

> 3. *This Circuit does not recognize Giuliani's "substantial compliance" test, and even if it did, Giuliani has not met it.*

Attempting to invoke the doctrine of "good faith substantial compliance," Giuliani calls any violation of the Contempt Injunction a "technical" and *de minimus* one because he "has broadcast hundreds of hours of video" on all sorts of "'hot button' issues" but "has spoken for less

---

[7] As far as Giuliani's repeated claims that "he should have had an opportunity to present the video to a jury," one wonders why Giuliani deliberately chose *not* to present the video *at any time* during discovery in the matter below. Opp. at 18. Giuliani declined, for example, to depose either of the Plaintiffs, and did not participate in any of the third party depositions (though he was invited to do so) of actual fact witnesses who could have been questioned about said video. *See, e.g.*, *Freeman I*, Trial Transcript (D.D.C. Dec. 14, 2024), ECF No. 156 at 119:20–120:4.

than two minutes on the alleged ballot counting irregularities." Opp. at 19–21 ("almost completely refrained from any discussion of the *Freeman I* case"). Giuliani provides no factual support for his claim that the November 12 and 14 Statements represent the sum of his statements about Plaintiffs or *Freeman I*. They are not. As the Motion itself references, Giuliani has published other statements about the case and this Court. Mot. At 8 n.6.[8] But even if it were true that the November 12 and 14 Statements comprise a small percentage of all of Giuliani's public statements, that would not excuse his violation of the Consent Injunction as a matter of law.[9]

---

[8] The statements cited in the Motion are not the only statements Giuliani has published about the case. For example, on December 14, 2024, Mr. Giuliani posted on his account on X that: "The media is either stupid or deliberately lies. Judge Beryl Howell did not allow me a trial and gave me a default judgment." @RudyGiuliani, X (Dec. 14, 2024, 2:14 AM), https://x.com/RudyGiuliani/status/1867830448795033626. On December 22, 2024, Giuliani posted a tweet about "The Consequences of Political Persecution: Willkie Farr & Gallagher LLP's Miscalculation in the Era of Trump 47" that cites to a manifesto accusing undersigned counsel of "participating in what many view as a politically motivated campaign to discredit and silence one of the most prominent Trump advocates, the firm has aligned itself with forces that sought to undermine not just Giuliani, but the broader conservative movement." @RudyGiuliani, X (Dec. 22, 2024, 1:09 PM), https://x.com/RudyGiuliani/status/1870894534835507317.

[9] Giuliani in his Opposition continues his habit of launching ad hominem attacks against Plaintiffs' counsel, this time by claiming that certain material filed in the related enforcement proceedings "reveals features" of his New York City apartment that could subject him to risk (notwithstanding that Giuliani has moved out of, and consented to the sale to third parties of, that apartment), similar to "the recent rooftop sniper attack" on Trump. Opp. at 20–21. If Giuliani had sincere concerns about the pictures (most of which had already been made public) in that filing, it is curious why those concerns were *never* communicated to Plaintiffs *at any time* in the enforcement proceedings; nor did Giuliani make any request or submission to the enforcement court to seal or otherwise redact such information from public filings. Plaintiffs respectfully submit that had Mr. Giuliani identified this issue to them in the New York proceedings, they could and would have addressed that issue in a timely and appropriate manner. Given that Giuliani never previously raised such concerns, and has done so only here in response to the Motion for Contempt, the argument appears to be pretextual, meant for an audience other than this Court, and worthy of little (if any) weight. In all events, this charge appears to have been made with no sense of irony—on November 20, 2024, Mr. Giuliani's current counsel in the enforcement action held a live press conference outside of the front doors of the current New York City office of Willkie Farr & Gallagher LLP during which he announced the address of the office, and then gave a lengthy speech about the purported persecution of his client, including a series of attacks about the motives and conduct of the firm and undersigned counsel, without any apparent concern for the safety or security of the staff or attorneys who work in that building. FORBES, *JUST IN: The Attorney For Rudy Giuliani Assails*

As the Opposition acknowledges, the "D.C. Circuit has not yet decided whether good faith substantial compliance constitutes a defense to the violation of a court order." Opp. 10–12 (citing *In re Sealed Case*, 77 F.4th 815, 834–35 (D.C. Cir. 2023)).  There is no reason to do so here.  What Giuliani ignores (including as described in the very case he cites) is that even where a "substantial compliance" defense to contempt "is available, it requires a contemnor to 'demonstrate that it 'took all reasonable steps within [its] power to comply with the court's order.'" *In re Sealed Case*, 77 F.4th at 834 (alterations in original).  Giuliani does not claim that he took any steps, let alone "all reasonable steps" within his power, to comply with the Consent Injunction, nor can he because he alone possesses the power to not utter statements about Plaintiffs that he agreed not to utter.[10]  This Court has rejected similar attempts to avoid contempt, explaining that arguing "good faith" based solely on engaging in conduct that already was "expected" legally "sets far too low a bar to constitute substantial compliance." *In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 & 50 U.S.C. § 1705*, No. MC 18-175, 2019 WL 2182436, at *4 (D.D.C. Apr. 10, 2019), *aff'd sub nom. In re Sealed Case*, 932 F.3d 915 (D.C. Cir. 2019) ("Preserving the subpoenaed documents is expected.  Accordingly, even assuming good faith substantial compliance is a defense to contempt, no bank meets that standard.").  So too here.

None of Giuliani's claims of "good faith" demonstrate that he exhibited substantial compliance.  He references one of the stipulations he proffered in *Freeman I* to avoid a default

---

*'Unconstitutional' Judgment Against Former NYC Mayor*, YOUTUBE (Nov. 20, 2024), https://www.youtube.com/watch?v=yF4mvBuOAGc .

[10] Giuliani claims that he has "scrupulously avoided mentioning the names of the Plaintiffs," but provides no examples of such efforts.  Plus, the Consent Injunction prohibits making any statements suggesting Plaintiffs engaged in wrongdoing "whether mentioned directly, indirectly, or by implication," which his November 12 and 14 Statements undoubtedly did.  In any event, his supposed efforts only show that he understands the scope of the Consent Injunction, and has the capacity to abide by its terms.

13

judgment that "expressly reserved the right to repeat statements in the context of an appeal." Opp. at 22. It is unclear why including such a reservation evinces good faith here, especially since the Consent Injunction post-dated that "stipulation" and expressly did not include any such provision. If anything, the presence of such a caveat earlier but not in the Consent Injunction shows that Giuliani could have asked for a similar limitation in the Consent Judgment, but chose not to do so. The only other "good faith" argument Giuliani proffers is the same contention that "his sincerely held beliefs about the 2020 election constitute protected opinion." Opp. at 22. Whether or how "sincere" his "beliefs" may be about the 2020 election, or even about Plaintiffs, is inapposite to whether he made a "good faith" effort to comply with the Consent Injunction by having the self-control not to accuse Plaintiffs of criminal misconduct after he agreed, under the supervision of this Court, not to do so. Giuliani's disproven theories about what may have happened in the 2020 election (even if he describes them as "sincere") do not permit him to violate a Court order.

## II. GIULIANI ENDORSES AND DOES NOT CHALLENGE PLAINTIFFS' SUGGESTED SANCTION.

The parties agree that the Court should enter an order that puts Giuliani on notice that he will face fines for any similar conduct that occurs in the future, and fixes amounts for such fines that are tailored to that purpose. *Compare* Mot. at 12–13, *with* Opp. at 23 (asking for a "conditional order finding Giuliani in contempt and threatening to impose a specific penalty if specific penalty if certain actions are not taken"). Giuliani also does not challenge, and therefore concedes, that it would be within the Court's power to choose fines as the specific penalty and to fix the amount. The Court can and should adopt Plaintiffs' suggested contempt sanction, or exercise its discretion to determine an appropriate one.

As for the "sanction" Giuliani suggests—requiring he issue "clarifications" that the November 12 and 14 Statements were only for the purpose of "clarifying the position Giuliani will

14

take on appeal"—there is no authority cited for such a sanction, nor does Giuliani explain how such a penalty would do anything to remedy the harm he has caused. Opp. at 23. As discussed earlier, the November 12 and 14 Statements were *not* about positions that Giuliani took in his already filed appeal and, more importantly, such a "sanction" would permit Giuliani to repeat statements that are violative of the Contempt Injunction. Plaintiffs also disagree that this Court should "state unambiguously whether and to what extent Giuliani is permitted to comment on his pending appeal." The Contempt Injunction is sufficiently clear and unambiguous as written—Giuliani already understands that he cannot repeat any statements about Plaintiffs (by name, reference, or implication) accusing them of engaging in *any* misconduct in the 2020 Presidential Election—that is why he predicted that Plaintiffs would take legal action in response to the statements at issue here. ECF No. 19-2 at 1:27:12–1:27:29 ("Right now now they they they want to take $145 million for my telling the truth. **I'm sorry they're going to sue me again** for saying it but what am I going to do but tell the truth." (emphasis added)). The problem is not with the language of the Consent Injunction, it is entirely a product of Giuliani's ongoing refusal to accept that the rule of law applies to him.

15

Dated: January 7, 2024　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　By: */s/ Michael J. Gottlieb*
　　　　　　　　　　　　　　　　　　　Michael J. Gottlieb (974960)
　　　　　　　　　　　　　　　　　　　Meryl C. Governski (1023549)
　　　　　　　　　　　　　　　　　　　**WILLKIE FARR & GALLAGHER LLP**
　　　　　　　　　　　　　　　　　　　1875 K Street NW
　　　　　　　　　　　　　　　　　　　Washington, DC  20006
　　　　　　　　　　　　　　　　　　　Tel: (202) 303-1000
　　　　　　　　　　　　　　　　　　　mgottlieb@willkie.com
　　　　　　　　　　　　　　　　　　　mgovernski@willkie.com

　　　　　　　　　　　　　　　　　　　Aaron E. Nathan (1047269)
　　　　　　　　　　　　　　　　　　　M. Annie Houghton-Larsen*
　　　　　　　　　　　　　　　　　　　**WILLKIE FARR & GALLAGHER LLP**
　　　　　　　　　　　　　　　　　　　787 Seventh Avenue
　　　　　　　　　　　　　　　　　　　New York, NY  10019
　　　　　　　　　　　　　　　　　　　Tel: (212) 728-8904
　　　　　　　　　　　　　　　　　　　anathan@willkie.com
　　　　　　　　　　　　　　　　　　　mhoughton-larsen@willkie.com

　　　　　　　　　　　　　　　　　　　Rachel Goodman*
　　　　　　　　　　　　　　　　　　　**UNITED TO PROTECT DEMOCRACY, INC.**
　　　　　　　　　　　　　　　　　　　82 Nassau Street, #601
　　　　　　　　　　　　　　　　　　　New York, NY  10038
　　　　　　　　　　　　　　　　　　　Tel: (202) 579-4582
　　　　　　　　　　　　　　　　　　　rachel.goodman@protectdemocracy.org

　　　　　　　　　　　　　　　　　　　Von A. DuBose*
　　　　　　　　　　　　　　　　　　　**DUBOSE MILLER LLC**
　　　　　　　　　　　　　　　　　　　75 14th Street NE, Suite 2110
　　　　　　　　　　　　　　　　　　　Atlanta, GA  30309
　　　　　　　　　　　　　　　　　　　Tel: (404) 720-8111
　　　　　　　　　　　　　　　　　　　dubose@dubosemiller.com

　　　　　　　　　　　　　　　　　　　**Admitted pro hac vice*

　　　　　　　　　　　　　　　　　　　**Counsel for Plaintiffs**